**No. 06-748C**
**(JUDGE WHEELER)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**MARJORIE MURTAGH COOKE,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION TO DISMISS

---

**PETER D. KEISLER**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**KATHRYN A. BLEECKER**
**Assistant Director**

**MEREDYTH D. COHEN**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tel: (202) 353-7978**
**Fax: (202) 514-8624**

**Attorneys for Defendant**

**Of Counsel:**

**KATHLEEN SILBAUGH**
**Office of General Counsel**
**National Transportation Safety Board**

**March 15, 2007**

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

ISSUE PRESENTED . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 1

I. Nature Of The Case . . . . . . . . . . 1

II. Statement Of Facts . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . 5

I. Legal Standard Pursuant To RCFC 12(b)(1) . . . . . . . . . . 5

II. Pursuant To 28 U.S.C. § 1500, Ms. Cooke's FLSA Retaliation Claim, Filed Simultaneously In The United States District Court For The District Of Columbia, Divests This Court Of Jurisdiction . . . . . . . . . . 5

A. Pursuant To 28 U.S.C. § 1631, Ms. Cooke's FLSA Retaliation Claim In The District Court And Her Equal Pay Act Claim In This Court Were Pending At The Same Time . . . . . . . . . . 7

B. Ms. Cooke's Equal Pay Act Claim Arises From The Same Facts And Seeks The Same Relief As Her Claim Before The District Court . . 9

CONCLUSION . . . . . . . . . . 12

APPENDIX . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### CASES

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . 5

Bailey v. United States,
46 Fed. Cl. 187 (2000) . . . . . . . . . . 6

Davis v. Scherer,
468 U.S. 183 (1984) . . . . . . . . . . 5

De Leon v. United States,
69 Fed. Cl. 336 (2005) . . . . . . . . . . 6, 9

Harbuck v. United States,
378 F.3d 1324 (Fed. Cir. 2004) . . . . . . . . . . 5-10

Harbuck v. United States,
58 Fed. Cl. 266 (2003) . . . . . . . . . . 5-9

Johns-Manville Corp. v. United States,
855 F.2d 1556 (Fed. Cir. 1988) . . . . . . . . . . 9

Keene Corp. v. United States,
508 U.S. 200 (1993) . . . . . . . . . . 6-9, 11

Lewis v. United States,
32 Fed. Cl. 59 (1994) . . . . . . . . . . 5

Loveladies Harbor, Inc. v. United States,
27 F.3d 1545 (Fed. Cir. 1994) . . . . . . . . . . 6, 7, 9, 10

McNutt v. Gen. Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . 5

Rocovich v. United States,
933 F.2d 991 (Fed. Cir. 1991) . . . . . . . . . . 5

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . 5

United States v. County of Cook,

170 F.3d 1084 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

UNR Industries, Inc. v. United States,
962 F.2d 1013 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Vaziburd v. United States,
46 Fed. Cl. 309 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES**

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-9, 11

28 U.S.C. § 1631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

29 U.S.C. § 206(d), et. seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6

29 U.S.C. § 215(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARJORIE MURTAGH COOKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-748C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint for lack of subject matter jurisdiction. As we establish below, the Court lacks subject matter jurisdiction over plaintiff's Equal Pay Act claim pursuant to 28 U.S.C. § 1500. In support of this motion, we rely upon the complaint, the following memorandum of law, and the attached appendix.

ISSUE PRESENTED

Whether this Court, pursuant to 28 U.S.C. § 1500, lacks jurisdiction over plaintiff's Equal Pay Act claim where her Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3), retaliation claim based upon the same facts and seeking the same relief was filed simultaneously in the United States District Court for the District of Columbia.

STATEMENT OF THE CASE

**I. Nature Of The Case**

Plaintiff, Marjorie Murtagh Cooke, brings this action pursuant to the Equal Pay Act, 29 U.S.C. § 206(d), et. seq. This action was originally filed in the United States District Court for the District of Columbia. Ms. Cooke claims that while employed as a director by the National Transportation Safety Board ("NTSB"), the NTSB failed to justly compensate her when it paid

other male directors higher salaries and compensation. Compl. ¶ 1.

## II. Statement Of Facts[1]

On April 28, 2006, Ms. Cooke filed a complaint against Mark Rosenker, Acting Chairman of the NTSB, in the United States District Court for the District of Columbia, Case No. 1:06-cv-00788-PJF. A1-11.[2] Ms. Cooke alleged violations of the Equal Pay Act, 29 U.S.C. § 206(d), et seq., and the FLSA, as amended, 29 U.S.C. § 215(a)(3), et. seq. Id.

In her complaint before the district court, Ms. Cooke alleged that the NTSB "failed to justly compensate [her] in violation of the Equal Pay Act (EPA), as amended 29 U.S.C. § 206(d) et. seq., when it paid other similarly situated NTSB male directors larger salaries and compensation than [her] for similar work performed." A 2. Ms. Cooke further alleged that the NTSB "retaliated against her in violation of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 215(a)(3) et. seq." A 2. Specifically, Ms. Cooke alleged that, in her position as Director of the Office of Marine Safety, she was the only one of three safety office directors without Senior Executive Service ("SES") status, and that as a result, she was paid significantly less than the other directors, all of whom were male. A 4. She further alleged that, in early 2005, her position was advertised as having SES status, she applied for the position, but was not granted an interview. A 7. In June 2005, Ms. Cooke was transferred to the Office of Safety Recommendations and Communication. A 8. In October 2005, she was transferred to the Office of the Managing Director. A 8. Ms. Cooke alleged that she had not received a performance evaluation for the period ending in 2005, thus precluding any opportunity for an award for her

---

[1] For the purposes of this motion only, we assume that the facts stated in the complaint are true.

[2] "A__" refers to the appendix attached to this motion to dismiss.

performance in 2005 and that she had not been issued new performance standards for 2006, precluding any opportunity to improve her career status or obtain awards for 2006. A 8. Count I of the district court complaint alleged the Equal Pay Act violation and requested relief "including, but not limited to" reinstatement, promotion, economic damages including front and back pay, reasonable attorney's fees and costs, liquidated damages, and "[a]ny other relief that this Court deems just and equitable." A 9. Count II alleged FLSA retaliation and requested relief "including, but not limited to" reinstatement, promotion, economic damages including front and back pay, reasonable attorney's fees and costs, compensatory damages, liquidated damages, and "[a]ny other relief that this Court deems just and equitable." A 10.

On October 9, 2006, Ms. Cooke filed an amended complaint in the district court. A 12-20. The factual allegations contained in the amended complaint were virtually identical to those contained in the original complaint.[3] As for the legal allegations, the amended complaint included only the Equal Pay Act claim, and made no reference to the FLSA retaliation claim.[4] On October 11, 2006, Ms. Cooke moved to transfer her case to the United States Court of Federal Claims. A 21-23. The district court granted that motion and the case was transferred to this Court on October 26, 2006.

---

[3] A side-by-side comparison of the original and amended complaints reveals that, other than slight rewording of certain paragraphs (e.g., referring to plaintiff as "Cooke" rather than "Ms. Cooke"), the only differences in the "Factual Allegations" sections were the deletion of the original paragraphs 38 and 48 through 50, concerning Ms. Cooke's transfer to the Office of the Managing Director and the performance evaluation/standards for 2004, 2005, and 2006, and the addition of a new paragraph 46, stating that Ms. Cooke retired from the NTSB in July 2006.

[4] The amended complaint did not include the original paragraph 2 or the original paragraphs 56 through 60, all of which concerned the FLSA retaliation claim.

On November 14, 2006, Ms. Cooke filed an amended complaint in this Court, alleging the same facts contained in her original district court complaint. Compare Compl. ¶¶ 5-45 with A 3-8. Ms. Cooke's complaint before this Court is virtually identical to the original complaint filed in district court.[5] The complaint in this Court makes almost exactly the same factual and legal assertions as the original district court complaint. The complaint in this Court requests the same relief: reinstatement, promotion, economic damages including front and back pay, reasonable attorney's fees and costs, liquidated damages, and "[a]ny other relief that this Court deems just and equitable."[6] The only significant difference between the two is that the complaint in this Court does not contain a FLSA retaliation claim.

## SUMMARY OF ARGUMENT

Pursuant to 28 U.S.C. § 1500, this Court lacks jurisdiction over this action. Ms. Cooke filed her Equal Pay Act claim at the same time as her FLSA retaliation claim in district court. Although her district court claims are no longer pending, 28 U.S.C. § 1500 applies at the time of filing, and at the time of filing, the FLSA retaliation claims were pending in district court. Because her complaint in district court and her complaint in this Court arise from the same facts and seek the same relief, the district court claims, filed simultaneously with Ms. Cooke's Equal Pay Act claim, divest this Court of jurisdiction.

---

[5] A side-by-side comparison reveals that the complaint filed in this Court is virtually identical to the amended complaint filed in district court. The only differences are that this complaint is brought against the United States, not Mr. Rosenker, and the jurisdictional bases asserted are different. As set forth above, the district court amended complaint was virtually identical to the original complaint filed in district court.

[6] In the original district court complaint, the FLSA retaliation claim included the exact same requests for relief, plus compensatory damages.

## ARGUMENT

## I. Legal Standard Pursuant To RCFC 12(b)(1)

The plaintiff bears the burden of establishing jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998). When deciding a motion to dismiss based upon lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). If the undisputed facts reveal any possible basis upon which the non-moving party might prevail, the Court must deny the motion. Id. If, however, the motion challenges the truth of the jurisdictional facts alleged in the complaint, the Court may consider relevant evidence in order to resolve the factual dispute. Harbuck v. United States, 58 Fed. Cl. 266, 267 (2003) (citing Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991); Lewis v. United States, 32 Fed. Cl. 59, 62 (1994)), aff'd, 378 F.3d 1324 (Fed. Cir. 2004).

## II. Pursuant To 28 U.S.C. § 1500, Ms. Cooke's FLSA Retaliation Claim, Filed Simultaneously In The United States District Court For The District Of Columbia, Divests This Court Of Jurisdiction

Ms. Cooke filed her Equal Pay Act and FLSA retaliation claims simultaneously in the United States District Court for the District of Columbia on April 28, 2006. Although her district court FLSA retaliation claim is no longer pending,[7] because the FLSA retaliation and

[7] That is, the FLSA retaliation claim is no longer pending in the original action filed in district court on April 28, 2006. However, on November 13, 2006, Ms. Cooke filed a new complaint in the United States District Court for the District of Columbia, Case No. 1:06-cv-01928-JDB, reasserting her FLSA retaliation claim. A 24-33. This complaint is virtually identical to the April 28, 2006 district court complaint, except that it excludes any reference to the Equal Pay Act claim.

Equal Pay Act claims were filed simultaneously, this Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1500.

This Court possesses jurisdiction to entertain suits founded upon the Equal Pay Act, 29 U.S.C. § 206, pursuant to the Tucker Act, 28 U.S.C. § 1491. Harbuck, 58 Fed. Cl. at 267. The subject matter jurisdiction of this Court, however, is narrowed by 28 U.S.C. § 1500, which creates an exception to the general Tucker Act jurisdiction. De Leon v. United States, 69 Fed. Cl. 336, 339-40 (2005); Harbuck, 58 Fed. Cl. at 268. Section 1500 of Title 28 of the United States Code provides that "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . ." 28 U.S.C. § 1500; see also Keene Corp. v. United States, 508 U.S. 200 (1993); Loveladies Harbor, Inc. v. United States, 27 F.3d 1545 (Fed. Cir. 1994) (en banc). The policies underlying § 1500 are to "force plaintiffs to choose between pursuing their claims in the Court of [Federal] Claims or in another court," Harbuck, 378 F.3d at 1328, and to "protect the United States from having to defend two lawsuits over the same matter simultaneously," United States v. County of Cook, 170 F.3d 1084, 1090-91 (Fed. Cir. 1999) (citations omitted). See also Bailey v. United States, 46 Fed. Cl. 187, 193 (2000) ("[T]he purpose of section 1500 is to prohibit the filing and prosecution of the same claims against the United States at the same time.").

In determining whether § 1500 bars jurisdiction over a claim, this Court must conduct a two-prong inquiry to determine: "(1) whether a claim in this court is pending at the same time as a claim in another court, and (2) whether the claims are essentially the 'same claims' because [they] arise out of the same operative facts and seek the same relief." De Leon, 69 Fed. Cl. at 339 (citing Harbuck, 378 F.3d at 1328-29).

**A. Pursuant To 28 U.S.C. § 1631, Ms. Cooke's FLSA Retaliation Claim In The District Court And Her Equal Pay Act Claim In This Court Were Pending At The Same Time**

Pursuant to the transfer statute, 28 U.S.C. § 1631,

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . ., and the action . . . shall proceed as if it had been filed in . . . the court to which it was transferred on the date upon which it was actually filed in . . . the court from which it is transferred.

28 U.S.C. § 1631 (quoted in United States v. County of Cook, 170 F.3d 1084, 1087 (Fed. Cir. 1999)) (emphasis added). Section 1631 was "designed to remedy the situation in which a litigant has mistakenly filed an action in a court that lacks jurisdiction." County of Cook, 170 F.3d at 1089.

In County of Cook, the court of appeals considered how claims filed simultaneously in district court, where one claim is later transferred to the Court of Federal Claims pursuant to 28 U.S.C. § 1631, affect the Court of Federal Claims' jurisdiction pursuant to 28 U.S.C. § 1500. The court determined that § 1500 analysis "'depends upon the state of things at the time of the action brought.'" Id. at 1090 (quoting Keene, 508 U.S. at 207). The court held "that the 'filing' of the same claim simultaneously in district court and the Court of Federal Claims by operation of § 1631 deprives the latter court of jurisdiction pursuant to § 1500." Id. at 1091. See also Harbuck, 378 F.3d at 1328 ("The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed. . . ." (quoting Loveladies Harbor, 27 F.3d at 1548)).

The facts of Ms. Cooke's case are similar to those in Harbuck, 58 Fed. Cl. 266 (2003), which was affirmed by the Court of Appeals for the Federal Circuit. In that case, on February

27, 2001, the plaintiff filed a complaint against the Government in district court alleging an Equal Pay Act violation as well as Title VII claims. Id. at 267. Plaintiff moved to transfer the Equal Pay Act claim to the Court of Federal Claims and that motion was granted. Id. Plaintiff filed an amended complaint in this Court on December 18, 2002, alleging the Equal Pay Act violation. Id. Plaintiff's Title VII claims remained with the district court, and on June 19, 2003, the district court rendered judgment, granting defendant's motion for summary judgment. Id. The Government moved to dismiss plaintiff's Equal Pay Act claim for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500. Id. This Court granted the Government's motion to dismiss, finding that although final judgment had been rendered upon the claims in district court, the relevant date for § 1500 purposes "is not today but plaintiff's date of filing." Id. at 268 (citing UNR Industries, Inc. v. United States, 962 F.2d 1013, 1021 (Fed. Cir. 1992) (en banc)). This Court cited County of Cook for the proposition that the filing of plaintiff's Title VII claims and Equal Pay Act claim at the same time by operation of 28 U.S.C. § 1631, deprived the Court of Federal Claims of jurisdiction pursuant to 28 U.S.C. § 1500. Id. at 269 (citing County of Cook, 170 F.3d at 1091).

Likewise, Ms. Cooke's Equal Pay Act claim before this Court, which was transferred pursuant to 28 U.S.C. § 1631, is deemed filed at the same time as her FLSA retaliation claim in district court – April 28, 2006. Even though her original FLSA claim is no longer pending before the district court, the timing for § 1500 analysis is the time of filing.[8] See Keene, 508 U.S. at 207. Thus, Ms. Cooke's FLSA retaliation claim, filed simultaneously in district court

[8] The fact that the FLSA claim was voluntarily dismissed by virtue of the filing of an amended complaint, as opposed to dismissed by the court as in Harbuck, makes no difference. All that matters is that the FLSA claim was pending when the lawsuit was originally filed; the reason that it is no longer pending is irrelevant.

with her Equal Pay Act claim, was "pending" within the meaning of 28 U.S.C. § 1500 when this case was filed. See De Leon, 69 Fed. Cl. at 340.

**B. Ms. Cooke's Equal Pay Act Claim Arises From The Same Facts And Seeks The Same Relief As Her Claim Before The District Court**

"Where claims are filed simultaneously . . . '§ 1500 requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit.'" Harbuck, 58 Fed. Cl. at 268 (quoting Keene, 508 U.S. at 210). Under this second prong of the § 1500 analysis, this Court must determine whether Ms. Cooke's FLSA retaliation and Equal Pay Act claims arise out of the same operative facts and seek the same relief. De Leon, 69 Fed. Cl. at 339-41; see Harbuck, 378 F.3d at 1328; Loveladies Habor, 27 F.3d at 1551. "'Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court.'" Loveladies Harbor, 27 F.3d at 1550 (quoting Johns-Manville Corp. v. United States, 855 F.2d 1556, 1567 (Fed. Cir. 1988)). The operative facts need only be substantially the same, not exactly the same. See Loveladies Harbor, 27 F.3d at 1557 (citing Keene, 508 U.S. at 212). The court of appeals has noted that the reason for this rule is that "'section 1500 was enacted for the benefit of the government and was intended to force an election where both forums could grant the same relief, arising from the same operative facts.'" Id. (quoting Johns-Manville, 855 F.2d at 1564). "[I]t is 'operative facts' and not legal theories by which claims may be distinguished under § 1500 when the same relief–money damages–is sought." Harbuck, 378 F.3d at 1329 (citing Loveladies Harbor, 27 F.3d at 1549). Accordingly, for the Court of Federal Claims to be precluded from hearing a claim because the same claim is pending in another court, the claim pending in another court must arise from the same operative facts, and must seek the same relief. Id. at 1328 (citing

Loveladies Harbor, 27 F.3d at 1551).

A comparison of Ms. Cooke's original complaint filed in district court and her complaint filed in this Court reveals that, not only do the claims arise from the same operative facts, they allege the same facts and seek the same relief. The factual allegations of both complaints are identical, except for the paragraphs concerning performance standards/evaluations. Compare Compl. ¶¶ 5-45 with A 3-8. Both complaints pertain to the time between the naming of Ms. Cooke as Director of the Office of Marine Safety in 1997 and shortly before her retirement from the NTSB in 2006.[9] Compare Compl. ¶¶ 11-45 with A 4-8. Both complaints allege that Ms. Cooke was the only director without SES status, and that as a result, she was paid significantly less than the other directors, all of whom were male. Compare Compl. ¶¶ 15-21 with A 4-5. Both complaints further allege that, in early 2005, her position was advertised as having SES status, she applied for the position, but was not granted an interview. Compare Compl. ¶¶ 36-37 with A 7. Both complaints allege that in June 2005, Ms. Cooke was transferred to the Office of Safety Recommendations and Communication. Compare Compl. ¶ 44 with A 8. Both the Equal Pay Act claim and the FLSA retaliation claim arise from these same operative facts. That is, both claims are supported by the allegations that Ms. Cooke received disparate pay and monetary awards, filed a sexual discrimination complaint concerning the allegedly disparate pay, was denied an interview (and was subsequently not selected) for the Director of Office of Marine Safety when it became an SES level position, and was transferred to the Office of Safety Recommendations and Communication. While the allegations in the district court complaint concerning performance standards/evaluations are absent from the complaint in this Court, these

[9] The district court complaint does not specifically mention her retirement, presumably because it was filed a few months prior to her retirement.

allegations are such an insignificant part of the overall factual scenario pertinent to both claims. Accordingly, these minor differences in the factual allegations do not mean that the Equal Pay Act and FLSA retaliation claims arise from different sets of operative facts. On the contrary, it is clear that they arise from substantially the same set of operative facts.

A review of Ms. Cooke's complaints also makes clear that she is requesting identical relief in both cases: reinstatement, promotion, economic damages including front and back pay, reasonable attorney's fees and costs, liquidated damages, and "[a]ny other relief that this Court deems just and equitable." Compare Compl.¶ 50 with A 10. While the district court complaint also requests compensatory damages in the section pertaining to the FLSA retaliation claim, A 10, this additional request does not change the fact that the same relief - monetary damages - is requested in both complaints. For § 1500 to apply, there only needs to be some overlap in the relief requested. Keene, 508 U.S. at 212. Here, there is not only some overlap, but almost complete overlap in the relief requested.

"The Federal Circuit has made it clear that a party cannot separate the same operative facts into two different theories which seek the same relief . . . even if it is uncertain which legal theory fits." Vaziburd v. United States, 46 Fed. Cl. 309, 311 (2000). Because Ms. Cooke's claims in both courts are based upon the same facts and were filed simultaneously, and because she seeks the same relief in both courts, 28 U.S.C. § 1500 divests this Court of jurisdiction. By bringing her claim in this Court, Ms. Cooke hopes to pursue, in two courts, different legal theories based upon the same facts and seeking the same remedy. Section 1500 prohibits jurisdiction in such a case.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss the complaint

for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ KATHRYN A. BLEECKER
KATHRYN A. BLEECKER
Assistant Director

/s/ MEREDYTH D. COHEN
MEREDYTH D. COHEN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-7978
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:
KATHLEEN SILBAUGH
Office of General Counsel
National Transportation Safety Board

March 15, 2007

# APPENDIX

TABLE OF CONTENTS

April 28, 2006 district court complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

October 9, 2006 amended district court complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

October 11, 2006 motion to transfer venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

November 13, 2006 district court complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARJORIE MURTAGH COOKE**<br>**8475 Sylvan Way**<br>**Clifton, VA 20124**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MARK ROSENKER, ACTING CHAIRMAN, NATIONAL TRANSPORTATION SAFETY BOARD**<br><br>**Defendant.**<br><br>**Serve:**<br><br>**UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA**<br>**Attn: Civil Process Clerk**<br>**United States Attorney's Office**<br>**555 4th Street, NW**<br>**Washington, DC 20530**<br>***-Via Certified Mail***<br><br>**UNITED STATES ATTORNEY GENERAL**<br>**10th & Pennsylvania Avenue, NW**<br>**Washington, DC 20530**<br>***-Via Certified Mail***<br><br>**MARK ROSENKER**<br>**490 L'Enfant Plaza, SW**<br>**Washington, D.C. 20594**<br>***-Via Certified Mail***<br><br>**NATIONAL TRANSPORTATION SAFETY BOARD**<br>**Office of General Counsel**<br>***-Via Certified Mail***<br><br>**490 L'Enfant Plaza, SW**<br>**Washington, D.C. 20551**<br>***-Via Certified Mail*** | **Case No. ____________** |

**CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY**

1. This action arises out of the Defendant National Transportation Safety Board's unlawful employment actions against the Plaintiff Marjorie Murtagh Cooke. Specifically, Ms. Murtagh Cooke alleges that the National Transportation Safety Board failed to justly compensate Ms. Murtagh Cooke in violation of the Equal Pay Act (EPA), as amended 29 U.S.C. § 206(d) *et seq*., when it paid other similarly situated NTSB male directors larger salaries and compensation than Ms. Murtagh Cooke for similar work performed.

2. Ms. Murtagh Cooke also alleges that the National Transportation Safety Board retaliated against her in violation of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 215(a)(3) *et seq*., when the NTSB denied Ms. Murtagh Cooke an interview for the Office of Marine Safety Director position (and hired an alternate candidate), denied Ms. Murtagh Cooke the opportunity to review her evaluation for 2004, withdrew an offer for a senior level position, denied her an evaluation for 2005, denied her the opportunity for monetary awards, transferred Ms. Murtagh Cooke to the Office of Safety Recommendations and Communication, subsequently transferred her to the Office of the Managing Director, and denied her performance standards for her current position, for complaining about disparate pay and filing a sexual discrimination complaint.

**Parties**

3. Plaintiff Marjorie Murtagh Cooke ("Ms. Cooke" or "Plaintiff") is resident of the city of Clifton, County of Fairfax, in the State of Virginia.

4. Defendant Mark Rosenker is the Acting Chairman of the National Transportation Safety Board and is the delegated administrator of the National Transportation Safety Board ("NTSB" or "Defendant") and is responsible for the lawful administration of the

Agency. As such, Acting Chairman Rosenker is the proper defendant in this action pursuant to 29 U.S.C. § 203(d).

**Jurisdiction and Venue**

5. This Honorable Court has jurisdiction over the claims presented herein pursuant to 29 U.S.C. § 216(b), as it asserts a claims that arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and specifically under the provisions of the Equal Pay Act (EPA), 29 U.S.C. § 206(d), and the FLSA, 29 U.S.C. § 215(a)(3).

6. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(c) because the Defendant has its principal office in the District of Columbia and under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to Ms. Cooke's claims occurred in the District of Columbia.

**Factual Allegations**

7. In 1994, Ms. Cooke was the Chief of the Marine Division, a unit under the NTSB's Office of Surface Transportation Safety.

8. Beginning in 1997, and ending in 1998, the NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS").

9. Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status.

10. Each surface office had similar responsibilities, with the exception of OMS, which had two additional responsibilities: conducting accident investigations involving

military and commercial vessels, and conducting international accident investigations. The latter was similar to the additional responsibility handled by the Office of Aviation Safety. The Office of Aviation Safety had an additional senior level (SL) position to handle international investigations.

11. In 1997, during this restructuring Ms. Cooke was named the Director of OMS.

12. Soon after the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"). Bob Chipkevich ("Chipkevich") became the Director of ORPH.

13. In 2000, when the NTSB was reviewing an available SES slot, the Managing Director, Dan Campbell ("Campbell") suggested to then Agency Chairman, James Hall ("Hall") that Chipkevich be given the SES slot.

14. Campbell suggested that Chipkevich be given the SES slot because Chipkevich had supposedly the most seniority of the three directors and because ORPH was the most complex of the three offices.

15. Hall agreed with Campbell's suggestion, and Chipkevich, the Director of ORPH, applied, interviewed, and was awarded SES status.

16. In early 2003, the NTSB was once again reviewing an available SES slot. The Agency's leadership, then Chairman Ellen Engleman-Conners and then Managing Director Campbell assigned this SES slot to Joe Osterman ("Osterman"), the Director of OHS.

17. After Osterman was awarded the SES slot, Ms. Cooke became the only Director of the three safety offices without SES status.

18. Ostensibly because Ms. Cooke's Director Position did not have SES status, Ms. Cooke was paid significantly less than her male counterparts, John Clark ("Clark"), who was the new Director OAS, Osterman and Chipkevich.

19. Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872, and Chipkevich received a salary of $142,022, Ms. Cooke received a salary of $121,583.

20. In addition, in 2004, while Clark received a salary of $142,022 Osterman received a salary of $140,797 and Chipkevich received a salary of $142,022, Ms. Cooke received a salary of $126,963.

21. Ostensibly because Ms. Cooke's Director Position did not have SES status, Ms. Cooke was granted lower monetary awards than her male counterparts, Clark, Osterman and Chipkevich.

22. Specifically, in 2003, while Clark received an award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Ms. Cooke received an award of $5,400.

23. In addition, in 2004, while Clark received an award of $17,000, Osterman received an award of $9,500 and Chipkevich received an award of $16,000, Ms. Cooke received an award of $3,400.

24. Ms. Cooke, in her position as Director of OMS, performed work substantially equal to Clark in his position as Director of OAS, Chipkevich in his position as Director of OPHRMS and Osterman in his position as Director of OHS.

25. Ms. Cooke performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of OPHRMS and Osterman performed his work as Director of OHS.

26. Due to this inequality, in April of 2004, Ms. Cooke met with the then NTSB Chairman Ellen Engelman-Conners ("Conners") and informed Conners that she was the only Director of the four modal investigation offices without SES status.

27. Further, Ms. Cooke informed Conners that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

28. Ms. Cooke explained to Conners that her concern was not the SES status *per se*, but rather she wanted equitable pay for similar work.

29. Conners responded by telling Ms. Cooke that if the NTSB acquired another SES slot, the slot would be assigned to the Director of OMS. However, Conners also stated that when the OMS Director position received SES status, the position would be advertised and that Ms. Cooke would have to apply and compete for the position.

30. Ms. Cooke suggested to Conners that she be allowed to receive overtime pay as one option for reducing the gap between her salary and that of the three male modal safety Directors.

31. Conners replied that she was not aware if that was a possible solution, but told Ms. Cooke she would look into it.

32. After the meeting Ms. Cooke met with Lisa Love ("Love") from Human Resources. Love confirmed for Ms. Cooke that she could receive overtime pay; however she needed approval from Conners, the NTSB Chairman.

33. After meeting with Love, Ms. Cooke made several attempts to meet with Conners to seek her approval for overtime pay.

34. Despite Ms. Cooke's efforts Conners refused to meet with her to discuss this subject.

35. Thus, Ms. Cooke continued to work as Director of OMS, doing substantially similar work to Clark, Osterman and Chipkevich, the other three Directors, and making significantly less money.

36. In July, 2004 the OMS Director position was advertised as having SES status.

37. As instructed by Conners, Ms. Cooke applied for this position, but the advertisement was cancelled; she was not granted an interview.

38. In January, 2005 when Ms. Cooke had not yet received an evaluation for the performance period ending in 2004, she requested a meeting with then Chairman Engleman-Conners. Conners refused to meet with her to discuss Ms. Cooke's performance evaluation.

39. Finally, in early 2005, the OMS Director position was re-advertised as having SES status.

40. Ms. Cooke applied for this position, but she was not granted an interview.

41. In response to years of unequal pay for similar work to that of her male counterparts, and not even being granted an interview for a position she held for eight years, Ms. Cooke filed a sexual discrimination complaint with the NTSB EEO Director on February 7, 2005, using the established NTSB protocol for lodging formal complaints of Equal Pay Act violations.

42. In her complaint, Ms. Cooke alleged that she received unequal pay as the Director of OMS because of her gender.

43. Ms. Cooke's discrimination complaint was investigated from August of 2005 through December of 2005.

44. In May, 2005 the new Managing Director, Joe Osterman ("Osterman"), notified Ms. Cooke of her non-selection for the Director of OMS position. Ms. Cooke noted that she had not been paid for the position during her tenure as Director, OMS. Osterman then offered her an SL position to compensate if she would submit bulleted responsibilities for a position description.

45. NTSB has used SL positions in the past to compensate senior level employees for pay over the GS-15 salary level.

46. In response, Ms. Cooke submitted the requested document. Osterman subsequently informed her that Chairman Engleman-Conners and Executive Director Dan Campbell would not permit him to use an SL position for her.

47. Instead, NTSB transferred Ms. Cooke to the Office of Safety Recommendations and Communication in June 2005.

48. In October, 2005, Ms. Cooke was transferred to the Office of the Managing Director.

49. Ms. Cooke has not received an evaluation for the performance period ending in 2005, thus precluding any opportunity for an award for her performance in 2005.

50. Ms. Cooke has not been issued new performance standards for her current position thus precluding any opportunity to improve her career status or to obtain awards for 2006.

**Count I**
**The Equal Pay Act (EPA)**
**29 U.S.C. § 206(d)**
**Unequal Pay**

51. Plaintiff incorporates the allegations in paragraphs 1 through 50 as though alleged herein.

52. Plaintiff is a an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

53. Defendant failed and/or refused to compensate Plaintiff comparable to employees who were of the opposite sex, worked in the same "establishment" as Plaintiff,

performed work that was equal to the work performed by Plaintiff, and retained positions that required equal skill, effort, responsibility and was performed under similar conditions as compared to Plaintiff.

54. As the direct and proximate result of Defendant's violation of 29 U.S.C. § 206(d), Plaintiff was caused to suffer damages.

55. For violations of 29 U.S.C. § 206(d), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

a. Reinstatement;
b. Promotion;
c. Economic damages including front and back pay;
d. Reasonable attorney's fees and costs;
e. Liquidated Damages; and
f. Any other relief that this Court deems just and equitable.

**Count II**
**Fair Labor Standards Act (FLSA)**
**29 U.S.C. § 215(a)(3)**
**Retaliation**

56. Plaintiff incorporates the allegations in paragraphs 1 through 55 as though alleged herein.

57. Plaintiff is an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

58. Defendant has limited, segregated, and classified the Plaintiff in a way which deprives her of employment opportunities and otherwise adversely affects her status as an employee because of Plaintiff's complaints of unequal pay and sexual discrimination.

59. As a direct and proximate result of the Defendant's conduct, Plaintiff was caused to suffer damages.

60. For violations of 29 U.S.C. § 215(a)(3), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

g. Reinstatement;
h. Promotion;
i. Economic damages including front and back pay;
j. Reasonable attorney's fees and costs;
k. Compensatory Damages;
l. Liquidated Damages; and
m. Any other relief that this Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, Ms. Cooke prays this Honorable Court for Judgment against the Defendant, in the amount of economic damages and compensatory damages to be determined at trial, plus attorneys' fees, costs of this action, equitable relief (including upgrading Plaintiff's employment status) and any other relief this Honorable Court deems just and proper to award.

Marjorie Murtagh Cooke
By Counsel

R Scott Oswald /BJB

R. Scott Oswald, D.C. Bar No. 458859
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**Jury Demand**

Plaintiff Cooke demands a jury for all issues proper to be so tried.

R. Scott Oswald /JB
R. Scott Oswald

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division**

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,** <br> **Plaintiff,** <br> **v.** <br> **MARK ROSENKER, CHAIRMAN, NATIONAL TRANSPORTATION SAFETY BOARD** <br> **Defendant.** | **Civil Action No. 1:06-cv-00788-PJF** |

**AMENDED CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY**

1. This action arises out of the Defendant National Transportation Safety Board's ("NTSB") unlawful employment actions against the Plaintiff Marjorie Murtagh Cooke ("Cooke"). Specifically, Cooke alleges that the National Transportation Safety Board failed to justly compensate her in violation of the Equal Pay Act (EPA), as amended 29 U.S.C. § 206(d) *et seq.*, when it paid other similarly situated NTSB male directors larger salaries and compensation than Cooke for similar work performed.

**Parties**

2. Plaintiff Cooke is resident of the city of Clifton, County of Fairfax, in the State of Virginia.

3. Defendant Mark Rosenker ("Rosenker") is the Chairman of the National Transportation Safety Board and is the delegated administrator of the National Transportation

Safety Board and is responsible for the lawful administration of the Agency. As such, Rosenker is the proper defendant in this action pursuant to 29 U.S.C. § 203(d).

**Jurisdiction and Venue**

4. This Honorable Court has jurisdiction over the claims presented herein pursuant to 29 U.S.C. § 216(b), as it asserts a claim that arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and specifically under the provisions of the EPA, 29 U.S.C. § 206(d).

5. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(c) because Defendant has its principal office in the District of Columbia and under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to Cooke's claims occurred in the District of Columbia.

**Factual Allegations**

6. In 1994, Cooke was the Chief of the Marine Division, a unit under the NTSB's Office of Surface Transportation Safety.

7. Beginning in 1997, and ending in 1998, the NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS").

8. Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status.

9. Each surface office had similar responsibilities, with the exception of OMS, which had two additional responsibilities: conducting accident investigations involving military and commercial vessels, and conducting international accident investigations. The latter was similar to the additional responsibility handled by the Office of Aviation Safety. The Office of Aviation Safety had an additional senior level (SL) position to handle international investigations.

10. In 1997, as the result of a restructuring, Cooke was named the Director of OMS.

11. Soon after the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"). Bob Chipkevich ("Chipkevich") became the Director of ORPH.

12. In 2000, when the NTSB was reviewing an available SES slot, the Managing Director, Dan Campbell ("Campbell") suggested to then Agency Chairman, James Hall ("Hall") that Chipkevich be given the SES slot.

13. Campbell suggested that Chipkevich be given the SES slot because Chipkevich had supposedly the most seniority of the three directors and because ORPH was the most complex of the three offices.

14. Hall agreed with Campbell's suggestion, and Chipkevich, the Director of ORPH, applied, interviewed, and was awarded SES status.

15. In early 2003, the NTSB was once again reviewing an available SES slot. The Agency's leadership, then Chairman Ellen Engleman-Conners ("Conners") and then Managing Director Campbell assigned this SES slot to Joe Osterman ("Osterman"), the Director of OHS.

16. After Osterman was awarded the SES slot, Cooke became the only Director of the three safety offices without SES status.

17. Ostensibly because Cooke's Director Position did not have SES status, Cooke was paid significantly less than her male counterparts, John Clark ("Clark"), who was the new Director of OAS, Osterman and Chipkevich.

18. Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872, and Chipkevich received a salary of $142,022, Cooke received a salary of $121,583.

19. In addition, in 2004, while Clark received a salary of $142,022 Osterman received a salary of $140,797 and Chipkevich received a salary of $142,022, Cooke received a salary of $126,963.

20. Ostensibly because Cooke's Director Position did not have SES status, Cooke was granted lower monetary awards than her male counterparts, Clark, Osterman and Chipkevich.

21. Specifically, in 2003, while Clark received an award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Cooke received an award of $5,400.

22. In addition, in 2004, while Clark received an award of $17,000, Osterman received an award of $9,500 and Chipkevich received an award of $16,000, Cooke received an award of $3,400.

23. Cooke, in her position as Director of OMS, performed work substantially equal to Clark in his position as Director of OAS, Chipkevich in his position as Director of OPHRMS and Osterman in his position as Director of OHS.

24. Cooke performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of OPHRMS and Osterman performed his work as Director of OHS.

25. Due to this inequality, in April of 2004, Cooke met with the Conners and informed Conners that she was the only Director of the four modal investigation offices without SES status.

26. Further, Cooke informed Conners that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

27. Cooke explained to Conners that her concern was not the SES status *per se*, but rather she wanted equitable pay for similar work.

28. Conners responded by telling Cooke that if the NTSB acquired another SES slot, the slot would be assigned to the Director of OMS. However, Conners also stated that when the OMS Director position received SES status, the position would be advertised and that Cooke would have to apply and compete for the position.

29. Cooke suggested to Conners that she be allowed to receive overtime pay as one option for reducing the gap between her salary and that of the three male modal safety Directors.

30. Conners replied that she was not aware if that was a possible solution, but told Cooke she would look into it.

31. After the meeting Cooke met with Lisa Love ("Love") from Human Resources. Love confirmed for Cooke that she could receive overtime pay; however she needed approval from Conners, the NTSB Chairman.

32. After meeting with Love, Cooke made several attempts to meet with Conners to seek her approval for overtime pay.

33. Despite Cooke's efforts Conners refused to meet with her to discuss this subject.

34. Thus, Cooke continued to work as Director of OMS, doing substantially similar work to Clark, Osterman and Chipkevich, the other three Directors, and making significantly less money.

35. In July, 2004, the NTSB advertised the OMS Director position with SES status.

36. As instructed by Conners, Cooke applied for this position, but the advertisement was cancelled and she was not granted an interview.

37. In early 2005, the OMS Director position was re-advertised as having SES status.

38. Cooke applied for this position, but she was not granted an interview.

39. In response to years of unequal pay for similar work to that of her male counterparts, and not even being granted an interview for a position she held for eight years, Cooke filed a sexual discrimination complaint with the NTSB EEO Director on February 7, 2005, using the established NTSB protocol for lodging formal complaints of Equal Pay Act violations.

40. In her complaint, Cooke alleged that she received unequal pay as the Director of OMS because of her gender.

41. Cooke's discrimination complaint was investigated from August of 2005 through December of 2005.

42. In May, 2005, the new Managing Director, Joe Osterman ("Osterman"), notified Cooke of her non-selection for the Director of OMS position. Cooke noted that she had not been paid for the position during her tenure as Director of OMS. Osterman then offered her an SL position to compensate if she would submit bulleted responsibilities for a position description.

43. NTSB has used SL positions in the past to compensate senior level employees for pay over the GS-15 salary level.

44. In response, Cooke submitted the requested document. Osterman subsequently informed her that Chairman Engleman-Conners and Executive Director Dan Campbell would not permit him to use an SL position for her.

45. In June, 2005, the NTSB transferred Cooke to the Office of Safety Recommendations and Communication.

46. In July, 2006, Cooke retired from the NTSB.

**Count I**
**The Equal Pay Act (EPA)**
**29 U.S.C. § 206(d)**
**Unequal Pay**

47. Plaintiff incorporates the allegations in paragraphs 1 through 46 as though alleged herein.

48. Plaintiff is a an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

49. Defendant failed and/or refused to compensate Plaintiff comparable to employees who were of the opposite sex, worked in the same "establishment" as Plaintiff, performed work that was equal to the work performed by Plaintiff, and retained positions that required equal skill, effort, responsibility and was performed under similar conditions as compared to Plaintiff.

50. As the direct and proximate result of Defendant's violation of 29 U.S.C. § 206(d), Plaintiff was caused to suffer damages.

51. For violations of 29 U.S.C. § 206(d), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

a. Reinstatement;
b. Promotion;
c. Economic damages including front and back pay;

d. Reasonable attorney's fees and costs;
e. Liquidated Damages; and
f. Any other relief that this Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, Cooke prays this Honorable Court for Judgment against the Defendant, in the amount of economic damages and compensatory damages to be determined at trial, plus attorneys' fees, costs of this action, equitable relief (including upgrading Plaintiff's employment status) and any other relief this Honorable Court deems just and proper to award.

Marjorie Murtagh Cooke
By Counsel

/s/

R. Scott Oswald, D.C. Bar No. 458859
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**Jury Demand**

Plaintiff Cooke demands a jury for all issues proper to be so tried.

/s/
R. Scott Oswald

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of October, 2006, the foregoing Plaintiff's Amended Complaint was served via electronic mail delivery, upon:

Kathleen Konopka
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W.
Washington, D.C. 20530

/s/
R. Scott Oswald

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division**

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,** **Plaintiff,** v. **MARK ROSENKER, CHAIRMAN, NATIONAL TRANSPORTATION SAFETY BOARD** **Defendant.** | **Civil Action No. 1:06-cv-00788-PJF** |

**PLAINTIFF'S *UNOPPOSED* MOTION TO TRANSFER VENUE**

Plaintiff Marjorie Murtagh Cooke ("Plaintiff"), respectfully submits the following motion to transfer venue as to Plaintiff's Equal Pay Act, 29 U.S.C. § 206(d) ("EPA") claim to the U.S. Court of Federal Claims. Defendant Mark Rosenker, the Chairman and delegated administrator of the National Transportation Safety Board ("Defendant"), has indicated that he does not oppose this motion.

In support of this motion, Plaintiff states as follows:

On October 10, 2006, Plaintiff filed her amended complaint with this Court in which she asserts her claim that Defendant failed to justly compensate her in violation of the EPA when Defendant paid other similarly situated National Transportation Safety Board male directors larger salaries and compensation than Plaintiff for similar work performed between 2003 and 2004. *See* Amended Complaint at paras. 16 - 22. Defendant has not yet filed a responsive pleading in this case.

As alleged in the complaint, the difference in salary between Plaintiff and her peers was greater than $10,000. Therefore, Plaintiff is seeking damages in excess of $10,000. Pursuant to 28 U.S.C. § 1491, the U.S. Court of Federal Claims has exclusive jurisdiction over any claim against the United States that exceeds $10,000 and that does not sound in tort. It is apparent then that this Court lacks subject matter jurisdiction over Plaintiff's EPA claim and Plaintiff moves this Court to transfer this action to the Court of Federal Claims. *See, e.g., Schrader v. Tomlinson*, 311 F.Supp. 2d 21, 26 n.4 (D.D.C., 2004) (upon request by a party, the court will transfer venue for the EPA claim to the Court of Federal Claims where it appears as if the total damages and fees will surpass $10,000).

Pursuant to 28 U.S.C. § 1631,

> [w]henever a civil action is filed in a court… and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

*Id.*

WHEREFORE, Plaintiff moves this Court to grant this *Unopposed* Motion to Transfer to the U.S. Court of Federal Claims.

Marjorie Murtagh Cooke
By Counsel

/s/

R. Scott Oswald, D.C. Bar No. 458859
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of October, 2006, the foregoing Plaintiff's Motion to Transfer Venue was served via the Court's electronic case filing system, upon:

Kathleen Konopka
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W.
Washington, D.C. 20530

/s/
R. Scott Oswald

FILED

NOV 13 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**MARJORIE MURTAGH COOKE**
**8475 Sylvan Way**
**Clifton, VA 20124**

**Plaintiff,**

**v.**

**MARK ROSENKER, CHAIRMAN, NATIONAL TRANSPORTATION SAFETY BOARD**

**Defendant.**

**Serve:**

**UNITED STATES ATTORNEY'S OFFICE**
**FOR THE DISTRICT OF COLUMBIA**
**Attn: Civil Process Clerk**
**United States Attorney's Office**
**555 4th Street, NW**
**Washington, DC 20530**
***-Via Certified Mail***

**UNITED STATES ATTORNEY GENERAL**
**10th & Pennsylvania Avenue, NW**
**Washington, DC 20530**
***-Via Certified Mail***

**MARK ROSENKER**
**490 L'Enfant Plaza, SW**
**Washington, D.C. 20594**
***-Via Certified Mail***

**NATIONAL TRANSPORTATION SAFETY BOARD**
**Office of General Counsel**
**490 L'Enfant Plaza, SW**
**Washington, D.C. 20551**
***-Via Certified Mail***

**Case No.** ______________

CASE NUMBER 1:06CV01928

JUDGE: Paul L. Friedman

DECK TYPE: Employment Discrimination

DATE STAMP: 11/13/2006

**JURY ACTION**



1

**CIVIL COMPLAINT FOR EQUITABLE AND**
**MONETARY RELIEF AND DEMAND FOR JURY**

1. This action arises out of the Defendant National Transportation Safety Board's ("Defendant" or "NTSB") unlawful employment actions against the Plaintiff Marjorie Murtagh Cooke ("Plaintiff" or "Cooke"). Specifically, Cooke alleges that the NTSB retaliated against her in violation of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 215(a)(3) *et seq.*, when the NTSB denied Cooke an interview for the Office of Marine Safety Director position (and hired an alternate candidate), denied Cooke the opportunity to review her evaluation for 2004, withdrew an offer for a senior level position, denied her an evaluation for 2005, denied her the opportunity for monetary awards, transferred Cooke to the Office of Safety Recommendations and Communication, subsequently transferred her to the Office of the Managing Director, and denied her performance standards for her current position, for complaining about disparate pay and filing a sexual discrimination complaint.

**Parties**

2. Cooke is resident of the city of Clifton, County of Fairfax, in the Commonwealth of Virginia.

3. Defendant Mark Rosenker is the Chairman of NTSB and is the delegated administrator of NTSB and is responsible for the lawful acts of that agency ("Chairman Rosenker"). As such, Chairman Rosenker is the proper defendant in this action pursuant to 29 U.S.C. § 203(d).

**Jurisdiction and Venue**

4. This Honorable Court has jurisdiction over the claims presented herein pursuant to 29 U.S.C. § 216(b), as it asserts a claims that arise under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and specifically under the FLSA, 29 U.S.C. § 215(a)(3).

5. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) because the Defendant has its principal office in the District of Columbia and, a substantial part of the events or omissions giving rise to Cooke's claims occurred in the District of Columbia.

**Factual Allegations**

6. In 1994, Cooke was the Chief of the Marine Division, a unit under NTSB's Office of Surface Transportation Safety.

7. Beginning in 1997, and ending in 1998, NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS").

8. Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status.

9. Each surface office had similar responsibilities, with the exception of OMS, which had two additional responsibilities: conducting accident investigations involving military and commercial vessels; and conducting international accident investigations. The latter was similar to the additional responsibility handled by the OAS. OAS had an additional senior level (SL) position to handle international investigations.

10. In 1997, during this restructuring Cooke was named the Director of OMS.

11. Soon after the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPHMS"). Bob Chipkevich ("Chipkevich") became the Director of ORPH.

12. In 2000, when NTSB was reviewing an available SES slot, the Managing Director, Dan Campbell ("Campbell") suggested to then Agency Chairman, James Hall ("Hall") that Chipkevich be given the SES slot.

13. Campbell suggested that Chipkevich be given the SES slot because Chipkevich had supposedly the most seniority of the three directors and because ORPH was the most complex of the three offices.

14. Hall agreed with Campbell's suggestion, and Chipkevich, the Director of ORPH, applied, interviewed, and was awarded SES status.

15. In early 2003, NTSB was once again reviewing an available SES slot. The Agency's leadership, then Chairman Ellen Engleman-Conners ("Conners") and Campbell assigned this SES slot to Joe Osterman ("Osterman"), the Director of OHS.

16. After Osterman was awarded the SES slot, Cooke became the only Director of the three safety offices without SES status.

17. Ostensibly because Cooke's Director position did not have SES status, Cooke was paid significantly less than her male counterparts: John Clark ("Clark"), who was the new Director of OAS; Osterman; and Chipkevich.

18. Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872, and Chipkevich received a salary of $142,022, Cooke received a salary of $121,583.

19. In addition, in 2004, while Clark received a salary of $142,022, Osterman received a salary of $140,797, and Chipkevich received a salary of $142,022, Cooke received a salary of $126,963.

20. Ostensibly because Cooke's Director position did not have SES status, Cooke was granted lower monetary awards than her male counterparts: Clark, Osterman and Chipkevich.

21. Specifically, in 2003, while Clark received a monetary award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Cooke received an award of $5,400.

22. In addition, in 2004, while Clark received a monetary award of $17,000, Osterman received an award of $9,500 and Chipkevich received an award of $16,000, Cooke received an award of $3,400.

23. Cooke, in her position as Director of OMS, performed work substantially equal to Clark in his position as Director of OAS, Chipkevich in his position as Director of OPHRMS and Osterman in his position as Director of OHS.

24. Cooke performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of OPHRMS and Osterman performed his work as Director of OHS.

25. Due to this inequality, in April of 2004, Cooke met with Conners and informed Conners that she was the only Director of the four modal investigation offices without SES status.

26. Further, Cooke informed Conners that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

27. Cooke explained to Conners that her concern was not the SES status *per se*, but rather she wanted equitable pay for similar work.

28. Conners responded by telling Cooke that if NTSB acquired another SES slot, the slot would be assigned to the Director of OMS. However, Conners also stated that when the OMS Director position received SES status, the position would be advertised and that Cooke would have to apply and compete for the position.

29. Cooke suggested to Conners that she be allowed to receive overtime pay as one option for reducing the gap between her salary and that of the three male modal safety Directors.

30. Conners replied that she was not aware if that was a possible solution, but told Cooke she would look into it.

31. After the meeting Cooke met with Lisa Love ("Love") from Human Resources. Love confirmed for Cooke that she could receive overtime pay; however she needed approval from NTSB Chairman Conners.

32. After meeting with Love, Cooke made several attempts to meet with Conners to seek her approval for overtime pay.

33. Despite Cooke's efforts Conners refused to meet with her to discuss this subject.

34. Thus, Cooke continued to work as Director of OMS, doing substantially similar work to Clark, Osterman, and Chipkevich, the other three Directors, and making significantly less money.

35. In July, 2004 the OMS Director position was advertised as having SES status.

36. As instructed by Conners, Cooke applied for this position, but the advertisement was cancelled; she was not granted an interview.

37. In January, 2005 when Cooke had not yet received an evaluation for the performance period ending in 2004, she requested a meeting with Conners. Conners refused to meet with her to discuss Cooke's performance evaluation.

38. Finally, in early 2005, the OMS Director position was re-advertised as having SES status.

39. Cooke applied for this position, but she was not granted an interview.

40. In response to years of unequal pay for similar work to that of her male counterparts, and not even being granted an interview for a position she held for eight years, Cooke filed a sexual discrimination complaint with the NTSB EEO Director on February 7, 2005, using the established NTSB protocol for lodging formal complaints of Equal Pay Act violations.

41. In her complaint, Cooke alleged that she received unequal pay as the Director of OMS because of her gender.

42. Cooke's discrimination complaint was investigated from August of 2005 through December of 2005.

43. In May, 2005, Osterman notified Cooke of her non-selection for the Director of OMS position. Cooke noted that she had not been paid for the position during her tenure as Director, OMS. Osterman then offered her an SL position to compensate if she would submit bulleted responsibilities for a position description.

44. NTSB has used SL positions in the past to compensate senior level employees for pay over the GS-15 salary level.

45. In response, Cooke submitted the requested document. Osterman subsequently informed her that Conners and Campbell would not permit him to use an SL position for her.

46. Instead, NTSB transferred Cooke to the Office of Safety Recommendations and Communication in June 2005.

47. In October, 2005, Cooke was transferred to the Office of the Managing Director.

48. Cooke has not received an evaluation for the performance period ending in 2005, thus precluding any opportunity for an award for her performance in 2005.

49. Cooke has not been issued new performance standards for her current position thus precluding any opportunity to improve her career status or to obtain awards for 2006.

**Count I**
**Fair Labor Standards Act (FLSA)**
**29 U.S.C. § 215(a)(3)**
**Retaliation**

50. Plaintiff incorporates the allegations in paragraphs 1 through 49 as though alleged herein.

51. Plaintiff is an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

52. Defendant has limited, segregated, and classified Plaintiff in a way which deprives her of employment opportunities and otherwise adversely affects her status as an employee because of Plaintiff's complaints of unequal pay and sexual discrimination.

53. As a direct and proximate result of the Defendant's conduct, Plaintiff was caused to suffer damages.

54. For violations of 29 U.S.C. § 215(a)(3), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

a. Reinstatement;
b. Promotion;
c. Economic damages including front and back pay;
d. Reasonable attorney's fees and costs;
e. Compensatory Damages;
f. Liquidated Damages; and
g. Any other relief that this Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, Cooke prays this Honorable Court for Judgment against the Defendant, in the amount of economic damages and compensatory damages to be determined at trial, plus attorneys' fees, costs of this action, equitable relief (including upgrading Plaintiff's employment status) and any other relief this Honorable Court deems just and proper to award.

Marjorie Murtagh Cooke
By Counsel

(BYSMK)

R. Scott Oswald

R. Scott Oswald, D.C. Bar No. 458859
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**Jury Demand**

Plaintiff Cooke demands a jury for all issues proper to be so tried.

(BYSMK)

R. Scott Oswald

R. Scott Oswald

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 15th day of March, 2007, a copy of the foregoing "Defendant's Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Meredyth D. Cohen