**No. 06-748C**
**(JUDGE WHEELER)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**MARJORIE MURTAGH COOKE**

**Plaintiff,**

**v.**

**The United States**

**Defendant.**

---

# PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

R. Scott Oswald
Brian M. Lowinger
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
blowinger@employmentlawgroup.net
*Counsel for Plaintiff*

April 18, 2007

# TABLE OF CONTENTS


**TABLE OF CONTENTS** ..... ii

**TABLE OF AUTHORITIES** ..... ii

**ISSUE PRESENTED** ..... 1

**STATEMENT OF THE CASE** ..... 2

**1. Nature of the Case** ..... 2

**2. Statement of Facts.** ..... 3

**A. Procedural History** ..... 3

**B. Facts Relevant to Plaintiff's Equal Protection Act Claim in the Court of Federal Claims** ..... 4

**C. Facts Relevant to Plaintiff's FLSA Retaliation Claim in the United States District Court for the District of Columbia** ..... 5

**SUMMARY OF ARGUMENT** ..... 5

**ARGUMENT** ..... 7

**1. Legal Standard for a Motion to Dismiss Under RCFC 12(b)(1)** ..... 7

**2. Plaintiff's Equal Pay Act and Her FLSA Retaliation Claim Do Not Preclude This Court From Exercising Its Subject Matter Jurisdiction** ..... 7

**A. Standards Applicable to 28 U.S.C. § 1500** ..... 7

**B. Plaintiff's Equal Pay Act Claim and Retaliation Claim Do Not Arise Out Do Not Arise Out of the Same Operative Facts** ..... 9

**C. This Court Can Exercise Subject Matter Jurisdiction Because the Two Complaints Do Not Seek the Same Relief** ..... 15

**D. The Two Claims Were Not Pending At the Same Time** .............................. 21

**CONCLUSION** .............................................................................................................. 22

**APPENDIX** .................................................................................................................. 23

## TABLE OF AUTHORITIES

### CASES

*Avitia v. Metropolitan Club of Chicago, Inc.*,
49 F.3d 1219, 1247 (7th Cir. 1995) .......... 6, 19, 20

*Branch v. United States*,
29 Fed.Cl. 606, 608-9 (1993) .......... 10

*Braswell v. City of El Dorado, Ark.*,
187 F.3d 954, 959 (8th. Cir.1999) .......... 18

*Brock v. Case Truck Sales*,
839 F.2d 872, 880 (2d. Cir. 1988) .......... 18

*Burlington Northern and Santa Fe Ry. Co. v. White*,
126 S.Ct. 2405, 2415 (U.S., 2006) .......... 11, 12, 14

*Caryk v. Coupe*,
663 F.Supp. 1243, 1253 (D.D.C.1987) .......... 6, 11, 13

*Corning Glass Works v. Brennan*,
417 U.S. 188, 195 (1974) .......... 10

*County of Washington v. Gunther*,
452 U.S. 161, 175 n 15 (1981) .......... 13

*Data Disc, Inc. v. Systems Tech. Assoc. Inc.*,
557 F.2d 1280, 1285 (9th Cir.1977) .......... 7

*Davis v. Shererer*,
468 U.S. 183 (1984) .......... 7

*Ellison v. United States*,
25 Cl. Ct. 481, 487 (1992) ..........6, 12, 13, 18

*Farmers Grain Co. of Esmond v. United States*,
29 Fed.Cl. 684, 686 (1993) .......... 7

*Fire-Trol Holdings v. U.S.*,
65 Fed. Cl. 32, 35 (2005) .......... 10

*Hamlet v. United States*,
873 F.2d 1414, 1415 (Fed. Cir.1989) ........ 7

*Harbuck* v. *United States*,
58 Fed. Cl. 266 (2003) ........ 20

*Harbuck v. United States*,
378 F.3d 1324, 1327 (Fed. Cir. 2004) ........ 20

*Heritage Minerals, Inc. et. al v. United States*,
71 Fed. Cl. 710 (2006) ........ 10

*Hybki v. Alexander & Alexander, Inc.*,
536 F.Supp. 483 (W.D. Mo. 1982) ........ 20

*Jentoft v. United States*,
450 F.3d 1342, 1349 (Fed. Cir. 2006) ........ 8

*Jeter v. Montgomery, -- F.Supp --*,
*2007 WL* 840361, *6-7 (MD. Ala. 2007) ........ 11, 12

*Johns-Manville Corp. v. United States*,
855 F.2d 1556, 1564 (Fed. Cir.1988) ........ 8, 9

*Keene Corp. v. United States*,
508 U.S. 200, 207 (1993) ........ 8, 9

*Lambert v. Ackerly*,
180 F.3ed 997 (9th Cir. 1999) ........ 20

*Love v. Re/Max of America, Inc.*,
738 F.2d 383, 387 (10th Cir. 1984) ........ 6, 13

*Loveladies Harbor, Inc. v. United States*,
27 F.3d 1545, 1551 (Fed. Cir. 1994) ........ 8,9, 22

*McMillan v. Mass. Soc. for Prevention of Cruelty to Animals*,
140 F.3d 288, 305 (1st Cir. 1998) ........ 18

*Molden v. United States*,
11 Cl. Ct. 604, 610 (1987) ........ 6, 10

*OSI, Inc. v. United States*,
73 Fed. Cl. 39, 45 (2006) ........ 16

*Raymark Indus., Inc. v. United States,*
15 Cl. Ct. 334, 338 (1988) ........................................................................ 7

*Rocovich v. United States,*
933 F.2d 991, 994 (Fed.Cir.1991) ........................................................................ 7

*Scheuer v. Rhodes,*
416 U.S. 232, 236 (1974) ........................................................................ 7

*Tecon Engineers v. United States,*
170 Ct.Cl. 389 (1965) ........................................................................ 7

*Vaizburd v. United States,*
46 Fed. Cl. 309, 311 (2000) ........................................................................ 23

*W.R. Cooper Gen. Contractor, Inc. v. United States,*
843 F.2d 1362, 1364 (Fed.Cir.1988) ........................................................................ 7

*Webb & Assoc., Inc. v. United States,*
19 Cl. Ct. 650, 653 (1990) ........................................................................ 16

*Weber v. United States,*
71 Fed. Cl. 717, 721 (2006) ........................................................................ 11, 14, 17

**STATUTES**

28 U.S.C. § 1491 ........................................................................ 8

28 U.S.C. § 1500........................................................................ 1, 6-10, 14-16, 20-22

29 U.S.C. § 206(d) ........................................................................ 10

29 U.S.C. § 215(a)(3) ........................................................................ 11

29 U.S.C. § 216(b) ........................................................................ 15, 17, 18, 20

29 U.S.C. § 255 ........................................................................ 17

29 U.S.C. § 1346(a)(2) ........................................................................ 19

49 U.S.C. § 1131 ........................................................................ 2

## RULES

Federal Rules of Civil Procedure 8(a) .......... 16

Rules of Court of Federal Claims 3(a) .......... 23

Rules of Court of Federal Claims 8(a) .......... 16

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No. 06-748C** |
| | ) **Judge Thomas C. Wheeler** |
| **THE UNITED STATES OF AMERICA,** | ) |
| **Defendant.** | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

This Court should deny Defendant United States' ("Defendant") motion to dismiss because Plaintiff Marjorie Murtagh Cooke ("Plaintiff") filed two completely different complaints. The first complaint was filed in response to a violation of the Equal Protection Act where as the second was filed under the Fair Labor Standards Act's ("FLSA") prohibition against retaliation. The two complaints are based on a completely separate set of operative facts which undergird each complaint. Additionally, the two complaints do not seek the same or overlapping damages, as the damages construct under the Equal Pay Act and the FLSA are completely different and result in different measures and values of damages.

**ISSUE PRESENTED**

Whether 28 U.S.C. § 1500 precludes Plaintiff from going forward in this Court on her Equal Pay Act complaint when she also filed a FLSA retaliation complaint in the United States District Court for the District of Columbia ("District Court"). The policy behind 28 U.S.C. § 1500 will not be affected because there is no risk that Defendant will have to defend against the same claim in two separate courts at the same time. Both complaints are based on a completely

different and distinct set of operative facts and the relief sought in each is not the same as each law contains a completely different damages construct.

## STATEMENT OF THE CASE

### 1. Nature of the Case

From 1997 until June 2005, Plaintiff served as the Director of the National Transportation Safety Board's ("NTSB") Office of Marine Safety ("OMS"). Compl. ¶ 9, 44. NTSB is an independent Federal agency charged by Congress with investigating railroad, pipeline, highway, marine and civil aviation accidents in the United States, and with issuing safety recommendations aimed at preventing future accidents. 49 U.S.C. § 1131. NTSB has four modal offices: marine, aviation, highway, and railroad and pipeline. Compl. ¶¶ 8-10.

From 1997 until June 2005, Plaintiff was the only female director of a modal office. Compl. ¶¶ 9, 15, 44. During that time, NTSB paid Plaintiff less than her male counterparts despite the fact that her work required the same skill, effort, and responsibilities and she performed her work under similar working conditions as her male counterparts. Compl. ¶¶ 5-24. As a result of the prior years of lack of equal pay, in February 2005, Plaintiff filed a complaint with NTSB's Equal Employment Opportunity ("EEO") office. A 9.[1] In response to that complaint, NTSB retaliated against Plaintiff by not selecting her to serve as the Director of OMS at a higher pay grade, by transferring her from office to office, and by not providing her with evaluations and performance standards. A 9-10.

This opposition involves two complaints. The first complaint, the one before this Court, arises from NTSB's violation of the Equal Pay Act when Defendant failed to pay Plaintiff the same as the male modal office directors who were in the same position as she with a different

[1] "A" refers to the appendix attached hereto.

subset of responsibilities, i.e., air, highway, railroad and pipes. The second complaint arises from NTSB's retaliatory acts in response to Plaintiff's EEO complaint.

**2. Statement of Facts.**

**A. Procedural History**

On April 28, 2006 Plaintiff filed a complaint against Mark Rosenker, the then Acting Chairman of NTSB, in the United States District Court for the District of Columbia, Case No. 1:06-cv-00748. A 3. In that complaint, Plaintiff asserts two causes of action that arise from completely different sets of operative facts. The first cause of action is based on the Equal Pay Act, 29 U.S.C. § 206(d), and is pending before this Court. A 10-11. The second cause of action is based on the retaliation provision contained in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3). A 11-12. Plaintiff sought different sets of damages as provided by 29 U.S.C. § 216(b), as that section applies to the Equal Pay Act and FLSA retaliation claims. A 11-12.

On October 9, 2006, prior to the filing of a responsive pleading, Plaintiff filed an amended complaint that does not contain a FLSA retaliation claim. A 14. On October 11, 2006, Plaintiff moved to transfer her Equal Pay Act claim to this Court. A 23. The motion asserts that Plaintiff seeks damages under the Equal Pay Act that are greater that $10,000 and the claim does not sound in tort; as a result, the District Court lacked jurisdiction under 28 U.S.C. § 1491. A 23-24.

On October 26, 2006, the District Court transferred the Equal Pay Act claim to this Court. A 27. On November 9, 2006, this Court accepted for filing the case as transferred from the District Court. A 28. Under Rule 3.1 of Rules of Civil Procedure for the Court of Federal Claims, a case is considered filed in this Court the day the transfer is accepted. A 2. On

November 13, 2006, Plaintiff filed a new complaint for retaliation under the FLSA in the United States District Court for the District of Columbia. A 30. On November 14, 2006, the clerk for the Court of Federal Claims docketed Plaintiff's First Amended Complaint ("Complaint"). A 29.

**B. Facts Relevant to Plaintiff's Equal Protection Act Claim in the Court of Federal Claims**

In the instant action, Plaintiff asserts that, between 1997 and June 2005, she served as the Director of the Office of Marine Safety ("OMS") at NTSB. Compl. ¶¶ 9, 44. OMS is one of four modal offices at NTSB. *Id.* at ¶¶ 6, 10. Men served as directors of the other three modal offices. *Id.* at ¶¶ 15 - 16. During that time, Plaintiff performed work that required the same skill, effort, and responsibility, and performed work under similar working conditions as her male counterparts. *Id* at ¶¶ 22-23. From 1997 until June 2005, NTSB paid Plaintiff a lower salary and smaller bonuses than her male counterparts. *Id.* at ¶¶ 7-21.

In July 2004, and in early 2005, NTSB advertised Plaintiff's position for SES status. *Id.* at ¶¶ 34, 36. Each time, Plaintiff submitted an application for the position. *Id.* at ¶¶ 35, 37. In 2004, the posting was cancelled, but in 2005, NTSB did not grant Plaintiff an interview. *Id.* at ¶¶ 36, 37. In May 2005, NTSB's Managing Director notified Plaintiff of her non-selection for the same position that she held since 1997. *Id.* at ¶ 41. Shortly thereafter, in June 2005, NTSB transferred Plaintiff to the Office of Safety Recommendation and Communication. *Id.* at 44.

Plaintiff seeks relief from this Court for NTSB's violations of the Equal Pay Act. Specifically, the Complaint lists the following damages: reinstatement, promotion, economic damages, including front and back pay, reasonable attorney's fees and costs, liquidated damages, and any other equitable and just relief. *Id.* at ¶ 50

**C. Facts Relevant to Plaintiff's FLSA Retaliation Claim in the United States District Court for the District of Columbia**

On February 7, 2005, in response to years of unequal pay for work that required similar skill, effort, and responsibility, and performed under similar conditions, and not being granted an interview for the position of Director of OMS, Plaintiff filed a complaint with the Equal Employment Opportunity ("EEO") office at NTSB. A 9. The EEO complaint asserts that Plaintiff received unequal pay as the Director of OMS because of her gender. *Id.* In May 2005, NTSB's managing Director, Joe Osterman, informed Plaintiff that she was not selected for the position of Director of OMS. *Id.* In June 2005, Plaintiff was transferred to the Office of Recommendation and Communication. A 10. Between August 2005 and December 2005, NTSB investigated the EEO complaint. A 9. In October 2005, NTSB transferred Plaintiff to the Office of the Managing Director. A 10. Plaintiff never received an evaluation for her performance ending in 2005, thereby precluding her from receiving an award for her that year. A 10. Plaintiff also did not receive performance standards for her then-current job in the Office of Managing Director, thereby precluding her from improving her career status or to obtain awards. A 10.

As a result of the series of retaliatory acts by NTSB in response to the EEO complaint, Plaintiff included a claim for retaliation pursuant to 29 U.S.C. § 215(a)(3) in the complaint filed with the United States District Court for the District of Columbia on April 26, 2006. *Id.* at A 11. Plaintiff's District Court complaint asserts the following damages: compensatory damages, reinstatement, promotion, front and back pay, reasonable attorney's fees and costs', liquidated damages, and any other equitable relief. A 12.

## SUMMARY OF ARGUMENT

Section 1500 does not apply because each claim is predicated on different facts and/or they seek different relief. Plaintiff's Equal Pay Act claim deals with a difference in pay for equal work between her and her similarly situated division directors. It is a strict liability count requiring no discriminatory intent and requires only that Plaintiff show the existence of a wage differential between male and female employees doing equal work. *Ellison v. United States*, 25 Cl. Ct. 481, 487 (1992). The FLSA retaliation count is cognizable even if there is no underlying conduct about which Cooke was complaining. Rather, so long as Plaintiff had a good-faith basis for the complaint and the NTSB intended to retaliation against her for complaining she makes out a claim for retaliation. *See Love v. Re/Max of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (Section 215(a)(3) "protects conduct based on a good faith, although unproven, belief that the employer's conduct is illegal."). *See also Caryk v. Coupe,* 663 F.Supp. 1243, 1253 (D.D.C.1987). In sum, the Equal Pay Act is a strict liability claim and the FLSA retaliation claim is a specific intent claim, and § 1500 therefore does not apply.

The damages also are dissimilar. Under the Equal Pay Act damages must be equal to the difference between the amount Plaintiff was paid and what she would have been paid had she been paid for equal work. *See Molden v. United States,* 11 Cl. Ct. 604, 614 (1987). The FLSA retaliation claim provides for damages from date of the discriminatory conduct forward until a later date, to include the date she is reinstated or the date of trial, and provides for compensatory damages including for emotional distress. *Avitia v. Larsen,* 49 F.3d 1219 (7th Cir. 1995). Thus each claim has a wholly separate set of damages that apply. As a result, and as more fully set forth below, both claims arise from different operative facts and do not seek the same relief. Hence, this Court maintains subject matter jurisdiction to entertain Plaintiff's Equal Pay Act claim.

## ARGUMENT

### 1. Legal Standard for a Motion to Dismiss Under RCFC 12(b)(1)

In ruling of a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court must accept as true the Complaint's undisputed factual allegations and construe the facts in the light most favorable to Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974), *overruled on other grounds by Davis v. Shererer,* 468 U.S. 183 (1984); *Hamlet v. United States,* 873 F.2d 1414, 1415 (Fed. Cir.1989). Plaintiff must make only a *prima facie* showing of jurisdictional facts through the submitted material in order to avoid Defendant's motion to dismiss. *Raymark Indus., Inc. v. United States,* 15 Cl. Ct. 334, 338 (1988) (citing *Data Disc, Inc. v. Systems Tech. Assoc. Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977)). If the undisputed facts reveal any possible basis on which Plaintiff might prevail, the court must deny the motion. *Scheuer,* 416 U.S. at 236; *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988). If the motion challenges the validity of the jurisdictional facts alleged in the Complaint, however, the Court may consider relevant evidence in order to resolve the factual dispute. *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991). "The court should look beyond the pleadings and decide for itself those facts, even in dispute, which are necessary for a determination of [the] jurisdictional merits." *Farmers Grain Co. of Esmond v. United States,* 29 Fed.Cl. 684, 686 (1993) (citing *Raymark,* 15 Cl. Ct. at 335).

### 2. Plaintiff's Equal Pay Act and Her FLSA Retaliation Claim Do Not Preclude This Court From Exercising Its Subject Matter Jurisdiction

### A. Standards Applicable to 28 U.S.C. § 1500

The Tucker Act both confers jurisdiction upon the United States Court of Federal Claims and waives sovereign immunity with respect to certain actions against the United States. 28 U.S.C. § 1491(a)(1) (the "Court of Federal Claims shall have jurisdiction to render judgment on

any claim against the United States founded either upon the Constitution, or any Act of Congress ..."). *Id.* Plaintiff's Equal Pay Act claim is based on a statute and must be heard in this Court, while the FLSA retaliation claim is based on tort and cannot be heard in this Court. *Jentoft v. United States*, 450 F.3d 1342, 1349 (Fed. Cir. 2006).

The Tucker Act's jurisdictional grant is limited by § 1500, which provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

Section 1500 does not preclude subject matter jurisdiction where the claims in both courts do not arise out of the same facts or the relief sought is not the same. *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1551 (Fed. Cir. 1994). The purpose of § 1500 is to "force an election where both forums could grant the same relief, arising from the same operative facts." *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1564 (Fed. Cir.1988). Stated differently, § 1500 is meant to "prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." *Id.* at 1562.

Determining this Court's jurisdiction over Plaintiff's Equal Pay Act claim for the purposes of § 1500 requires the Court to determine whether Plaintiff had the same claim against the United States or its agent pending in another court at the time of filing in this Court. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993). "For a claim to be precluded under 28 U.S.C. § 1500, the case pending in another court at the same time must arise from the same operative facts and seek the same relief." *Loveladies,* 27 F.3d at 1551. As the Federal Circuit notes, "claims are the same where they arise from the same operative facts even if the operative facts

support different legal theories which cannot all be brought in one court." *Id.* (quoting *Johns-Manville Corp.*, 855 F.2d at 1567. To determine whether the claims are the same or different "requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit." *Keene Corp.*, 508 U.S. at 210.

In *Loveladies,* the Federal Circuit discussed the operative facts inquiry as follows:

> Despite its lineage, it can be argued that there is a basic epistemological difficulty with the notion of legally operative facts independent of a legal theory. **Insofar as a fact is 'operative'-*i.e.*, relevant to a judicially imposed remedy-it is necessarily associated with an underlying legal theory, that is, the cause of action.** For example, without legal underpinning, words in a contract are no different from casual correspondence. Because it is unnecessary for our decision in this case, we need not further refine the meaning of 'operative facts.'

27 F.3d at 1551 n.17. (emphasis added).

Not fulfilling either the "same operative facts" or the "same relief" requirement precludes this Court from applying §1500. *Id.* ("We know of no case arising from the same operative facts in which § 1500 has been held to bar jurisdiction over a claim praying for relief distinctly different from that sought in a pending proceeding.").

## B. Plaintiff's Equal Pay Act Claim and Retaliation Claim Do Not Arise Out of the Same Operative Facts.

Defendant failed to meet its burden of establishing that the Equal Pay Act and the FLSA retaliation claims rely on the same operative facts. Thus, Plaintiff's Complaint should not be dismissed for that reason. Here, Plaintiff's Equal Pay Act and FLSA retaliation claims rely on completely different material facts that differ in time and government conduct, and they are not related to each other even though they share a few background facts.

Pursuant to § 1500, claims do not arise out of the same operative facts if they rely on different material facts. *See Heritage Minerals, Inc. et. al v. United States*, 71 Fed. Cl. 710

(2006) (not the same claim where the operative facts underlying plaintiff's contamination claim in the District Court and the operative facts supporting a takings claim in the Court of Federal Claims relied on different government conduct). Claims can be supported by some common operative facts and not trigger § 1500 where "the material facts supporting each claim are characterized as largely dissimilar." *Branch v. United States*, 29 Fed. Cl. 606, 608-9 (1993). Also, both claims can have similar background facts without causing dismissal under § 1500. *See Fire-Trol Holdings v. United States.,* 65 Fed. Cl. 32, 35 (2005).

To establish a prima facie Equal Pay Act claim, Plaintiff must show that Defendant paid lower wages to her than to the male directors of modal offices for equal work requiring equal skill, effort and responsibility under similar working conditions. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1974); *Molden,* 11 Cl. Ct. at 610. Any difference in wages paid to the respective sexes for equal work is prohibited by the EPA, except where one of four statutory exceptions applies. 29 U.S.C. § 206(d). Plaintiff must compare two jobs, the inquiry focuses on the primary duties of each job are equal. Plaintiff, in asserting an equal pay violation, need not show that a disparity in wages is the result of a discriminatory practice on the part of the employer. *Molden,* 11 Cl. Ct. at 610. Rather, to establish a prima facie case, it is merely necessary that the plaintiff show that an employer paid different wages to employees of the opposite sex for substantially equal work. *Id.* at 610-11.

In order to establish a *prima facie* case of retaliatory action under the FLSA, Plaintiff must demonstrate that (1) the employer was aware of plaintiff's participation in protected activity; (2) that an adverse employment action was taken against the plaintiff engaged in the protected activity; and (3) that the first two elements are related causally. 29 U.S.C. § 215(a)(3); *Caryk*, 663 F.Supp. at 1253.

Contrary to Defendant's argument, both claims do not arise out of the time between the naming of Ms. Cooke as Director of OMS in 1997 and shortly before her retirement in 2006. Motion to Dismiss at 10. In fact, that period is not relevant to either claim. Instead, the relevant period of time for Plaintiff's Equal Pay Act claim begins in 1997 when Plaintiff was named Director of OMS and Dr. B. Loeb was awarded a higher salary for equal work. Compl. ¶ 7, 9. Thereafter, each other male director received a higher salary than Plaintiff. *Id.* ¶¶ 10-26, 44. The relevant date for the Equal Pay Act claim ends in June 2005 when Plaintiff was removed from her directorship and was transferred to a position that is not comparable to her male counterparts. *Id.* ¶ 44. *Weber v. United States*, 71 Fed. Cl. 717, 721 (2006) (each instance of discriminatory pay is a discrete act and therefore creates a new cause of action for the purposes of the statute of limitations). As a result, any date after June 2005 is not material to Plaintiff's Equal Pay Act claim.

The material dates for the FLSA retaliation claim begin when Defendant became aware that Plaintiff engaged in a protected activity under § 215(a)(3). Plaintiff filed her EEO complaint in February 2005. A 9. As a result, no facts between 1997 and 2005 have anything to do with Plaintiff's FLSA retaliation claim. The dates relevant to the FLSA retaliation claim necessarily involve each time Defendant, with knowledge of Plaintiff's protected activity, adversely affected her employment, e.g., failing to select her for the Director of OMS position, transferring her out of OMS to the Office of Safety Recommendations and Communication, transferring her to the Office of Managing Director, and not providing an evaluation or performance standards for 2005. A 9-10. *See Burlington Northern and Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2415 (U.S., 2006) (retaliation arises when the employer's acts would have dissuaded a reasonable worker from engaging in protected activity). *See also Jeter v.*

*Montgomery, -- F.Supp --, 2007 WL* 840361, *6-7 (MD. Ala. 2007) (applying the standards in *Burlington Northern* to a FLSA retaliation claim).

Defendant incorrectly states that both complaints are supported by the allegations that Plaintiff received disparate pay and monetary awards. Motion to Dismiss at 10. Disparate pay is only material to Plaintiff's Equal Pay Act claim and is irrelevant to her FLSA retaliation claim. *Compare* Compl. ¶48 with A 11. Under the Equal Pay Act, Plaintiff must demonstrate that she was paid less than her male counterparts for equal work. *See Ellison,* 25 Cl. Ct. at 487. However, disparate pay is not material to the FLSA retaliation claim because § 215(a)(3) protects conduct based on a good faith, although unproven belief that the employer's conduct is illegal. *See Love v. Re/Max of America, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984). Hence, Plaintiff could have asserted any basis for her protected activity, as long as it was based on good faith. *Id.* The mere fact that the protected activity dealt with disparate pay, therefore, is irrelevant.

Defendant is wrong in stating that both claims arise out of the fact that Plaintiff was denied an interview and not selected for the Director of OMS position when it was offered as an SES position. Motion to Dismiss at 10. The interview and SES status is irrelevant to the Plaintiff's Equal Pay Act claim. Plaintiff's prima facie case under the Equal Pay Act only requires that she be paid less than her male counterparts for equal work. *See Ellison,* 25 Cl. Ct. at 487. That the advertised position could have bridged the pay gap through the award of SES status is not relevant to the prima facie case under the Equal Pay Act because it would only apply from June 2005 onward, and it does not change the fact that Plaintiff was not paid the same as her male counterparts for equal work from 1997 until June 2005. Compl. ¶¶ 10-26, 44. Defendant's failure to interview Plaintiff is, however, likely relevant to Plaintiff's FLSA

retaliation claim. A 9. Once Defendant became aware of Plaintiff's protected activity, any act taken in response to the protected activity that adversely affected Plaintiff's employment is material, including not interviewing and selecting her for a position that she performed for the prior seven years. *Id.* at 9-10. *See also Caryk*, 663 F.Supp. at 1253.

Defendant incorrectly argues that both the Equal Pay Act and FLSA retaliation claims arise out of the fact that Plaintiff filed a sexual discrimination complaint concerning the disparate pay. Motion to Dismiss at 10. Compare Compl. ¶ 38 with A 9. Filing a sexual discrimination complaint is irrelevant to Plaintiff's Equal Pay Act claim because the Equal Pay Act does not require Plaintiff to exhaust any remedies before bringing suit. *County of Washington v. Gunther*, 452 U.S. 161, 175 n. 14 (1981). Instead, the Equal Pay Act only requires Plaintiff to bring suit within two years of the most recent discriminatory paycheck, or three years if the employer's acts are deemed willful. 29 U.S.C. § 255. *See Ellison*, 25 Cl. Ct. at 488.

However, the filing of the EEO complaint is material to Plaintiff's FLSA retaliation claim as it is considered a protected activity under Section 215(a)(3). Specifically, the filing constitutes a protected activity under Section 215(a)(3). The fact that the EEO complaint was based on an allegation of unequal pay is irrelevant for the FLSA retaliation claim. A 9. Plaintiff only needed a good faith basis to believe that her complaint was based on the law. *Love*, 738 F.2d at 387. As a result, the filing of the EEO complaint is completely immaterial to the Equal Pay Act claim and, while it is material to the FLSA retaliation complaint, the basis asserted for the complaint is irrelevant to the FLSA retaliation claim.

Defendant incorrectly argues that both the FLSA retaliation and Equal Pay Act claim arise out of the fact that, in June 2005, Ms. Cooke was transferred to the Office of Safety Recommendations and Communications. Motion to Dismiss at 10. The only relevance that this

fact could have to the Equal Pay Act complaint is that it establishes a line of demarcation for cutting off Plaintiff's damages for her Equal Pay Act claim because the claim ends when Plaintiff no longer receives a discriminatory paycheck. Compl. at ¶ 44. *See also Weber,,* 71 Fed. Cl. at 726 (each instance of discriminatory pay is a discrete act and therefore creates a new cause of action for the purposes of the statute of limitations). However, that end-date has limited impact for the Equal Pay Act claim because it is only relevant to the measure of damages and does not support any element of Plaintiff's claim that she was not paid the same as her male counterparts for equal work. *See Ellison*, 25 Cl. Ct. at 487. The transfer to the Office of Safety Recommendations and Communication, however, is material to the FLSA retaliation claim because it demonstrates that NTSB adverse employment action by NTSB while her EEO complaint was active. *See Burlington Northern,* 126 S.Ct. at 2415.

Defendant correctly notes that, unlike the District Court complaint, the Complaint fails to state that NTSB failed to provide Plaintiff a performance evaluation for the year ending in 2005, transferred her to the Office of the Managing Director, and failed to provide performance standards for her position in the Office of the Managing Director. Motion to Dismiss at 10-11. Compare Complaint and A10. Contrary to Defendant's position, those missing facts serve to further distinguish the claims for the purposes of § 1500 because they further demonstrate that the FLSA retaliation claims in the District Court arise out of Defendant's retaliation against Plaintiff.

Plaintiff asserts claims based on different operative facts. The claims are distinguishable by different government conduct at different times. As a result, the "same claim" prong of § 1500 does not apply. This alone is a sufficient basis for this Court to deny Defendant's motion.

### C. This Court Can Exercise Subject Matter Jurisdiction Because the Two Complaints Do Not Seek the Same Relief

Defendant incorrectly argues that Plaintiff cannot maintain her claim for relief in this Court because the two claims are both for money damages and include nearly identical claims for relief. Cases interpreting § 1500 permit Plaintiff to seek monetary damages in both courts as long as the damages are different. Here, Plaintiff seeks no overlapping damages and § 1500, therefore, does not apply.

The purpose and scope of the damages provisions under the Equal Pay Act and the FLSA's retaliation damages provision are different. Under the Equal Pay Act, damages are intended to provide Plaintiff the past wages she would have earned if she was paid an amount equal to what her male counterparts were paid. 29 U.S.C. § 216(b). The damages are for past failures to pay earned wages. Here, Plaintiff already completed the work and is entitled to be paid for that work at a rate equal to what her male counterparts made.

The damages for FLSA retaliation, conversely, are intended as an equitable remedy to put Plaintiff in the same place as if she had not been retaliated against. *Id.* Plaintiff's damages equate to the amount she would have received if she remained in her previous position, plus additional remedies to ameliorate the impact of the retaliatory act and to deter from engaging in such acts in the future. *Id.*

The following schematic illustrates the difference in time, measure, and value of the different damages under the Equal Pay Act and the FLSA retaliation provision.




Courts interpreting the "same relief" prong in 28 U.S.C. § 1500 allow Plaintiff to seek monetary damage in each complaint. In *OSI, Inc. v. United States,* 73 Fed. Cl. 39, 45 (2006), this Court ruled that the monetary claims in each court did not involve the same measure or value of relief because the District Court lacks jurisdiction to grant the plaintiff the full amount of its takings damages sought in the Court of Federal Claims.[2] *Id.* Specifically, the value of the takings claim before this Court surpassed the value of the District Court claim, which sought compensatory damages for response costs incurred under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). *See also Webb & Assoc., Inc. v. United States,* 19 Cl. Ct. 650, 653 (1990) (finding different relief despite both complaints sought monetary damages); see also, *Fire-Trol Holdings,* 65 Fed. Cl. at 35 (finding different relief even though both claims requested non-monetary relief).

Plaintiff did not state the monetary value of the damages she seeks in either complaint, nor was she required to do so. *See FRCP 8(a); see also RCFC 8(a).* Instead, each complaint lists similar damages anticipated as a means of putting Defendant on notice of the relief

[2] Under *28 U.S.C.* § *1346(a)(2)*, the District Court shares concurrent jurisdiction with the Court of Federal Claims where the party limits its damages in the District Court to $10,000. 28 U.S.C. § 1346(a)(2).

contemplated. *Compare* Compl. at ¶ 50 and A 9-10.[3] Regardless of the similarities between the two complaints, Plaintiff cannot obtain the same types and values of relief, and a substantial portion of the relief is available only through this Court.

Statutory remedies for violations of both the Equal Pay Act complaint and the FLSA retaliation complaint are set out in 29 USC § 216(b) of the FLSA. Specific to Plaintiff's Equal Pay Act violation, Section 216(b) states

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

As it relates to Plaintiff's FLSA retaliation claim, Section 216(b) states:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C.A. § 216(b)

The form and measure of the damages afforded by the Equal Pay Act and FLSA retaliation claims are completely different. While both include monetary damages, the measure and value in each is different. Back pay damages for a violation of the Equal Pay Act begin on the last day that an employee receives a discriminatory paycheck and run backwards two years from the date the Complaint was filed, unless the employee can demonstrate the violation was willful, in which case the duration is three years. 29 US.C. § 255(a). *See Weber,* 71 Fed. Cl. at 726. As noted in the Complaint, the last day that Plaintiff received a discriminatory pay check was in June 2005. Compl. ¶ 45. The difference in salary and bonuses between Plaintiff and her

---

[3] For example, Plaintiff did not seek compensatory damages under the Equal Pay Act claim but did for the FLSA retaliation complaint in the District Court. Compl. ¶ 7 and A 10.

highest paid male counterparts in 2004 was approximately $28,000. *Id.* at ¶¶ 18 and 21. If the Court finds that Defendant acted willfully, the difference in salary and bonuses and her highest paid male counterparts in 2003 is approximately $31,000. *Id.* at ¶¶ 17 and 20.[4] However, the exact value of these damages is unclear as the Court will have to determine the value of the wages and bonuses that Plaintiff should have been paid, which could be based on a specific director's wages and bonuses or an average of all the directors wages and bonuses. *See e.g., McMillan v. Mass. Soc. for Prevention of Cruelty to Animals*, 140 F.3d 288, 305 (1st Cir. 1998). Regardless of the method applied, the difference in unpaid wages for each year is substantially higher than the jurisdictional limit established in 29 U.S.C. § 1346(a)(2) and not available under 29 U.S.C. § 215(a)(3).

Under the FLSA retaliation claim, the measure of back pay runs from the date of NTSB's discriminatory conduct, *i.e.,* the date that she was transferred out of OMS to the Office of Safety Recommendations and Communication, and can run until a later date determined by the judge in his discretion. *See e.g., Brock v. Case Truck Sales*, 839 F.2d 872, 880 (2d. Cir. 1988) (damages determined from the date of discharge to the date of trial are valid).

The measure and value of liquidated damages available in both cases are different. Liquidated damages under the Equal Pay Act are based on the difference in unequal pay between Plaintiff and her male counterparts between 2003 and 2006. Conversely, liquidated damages for the FLSA retaliation claim, is based on wages earned after NTSB transferred Plaintiff out of OMS and extends based on the District Court's discretion.

Moreover, the presumption in favor of making an award of liquidated damages differs pursuant the different statutory bases underpinning the respective complaints. Under the Equal

[4] The Complaint is silent as to salary and bonuses in 2005. They will, however, affect the value of the damages.

Pay Act, liquidated damages are mandatory as per the "shall" clause in the first sentence of Section 216(b) unless the Court finds that Defendant has met its burden of proof that it acted in good faith. 29 U.S.C. § 216(b). However, if this Court finds that Defendant acted in good faith the Court may still exercise its discretion and grant liquidated damages totally or partially, thereby increasing the value of the Equal Pay Act claim. *See, e.g. Ellison*, 25 Cl. Ct. at 490 (awarding liquidated damages in Equal Pay Act case). The second sentence in Section 216(b), which applies to Plaintiff's FLSA retaliation claim, contains the same mandatory language and provides "as may be appropriate to effectuate the purpose of Section 215(a)(3)." 29 U.S.C. § 216(b). The District Court, on the other hand, is not correspondingly directed to make an award of liquidated damages regardless of a showing of good faith, thereby creating a likelihood disparate damages awards. *Braswell v. City of El Dorado, Ark.*, 187 F.3d 954, 959 (8th. Cir. 1999). Accordingly, if the Court denies jurisdiction and the District Court declines to award liquidated damages for the FLSA retaliation claim does award them for the Equal Pay Act, the result would be Plaintiff's recovering significantly less due to the $10,000 limit imposed under Section 1346(a)(2). *See* 29 U.S.C. § 1346(a)(2). Such a result is contrary to the intent of both the FLSA and the Equal Pay Act.

The availability of front pay is another means of distinguishing the relief sought. Front pay only is available for the FLSA retaliation claim under the "appropriate equitable relief" clause applicable to § 216(b). *See* 29 U.S.C. § 216(b). *See also, Avitia,* 49 F.3d at 1247. An award of front pay would likely be the difference between Plaintiff's wages from the time of her first transfer through her retirement, diminished by any earnings Plaintiff earned in her next best position after leaving NTSB. *Id.* Front pay is not available under the Equal Pay Act. Specifically, the Equal Pay Act lacks any reference to any "legal or equitable relief as may be

appropriate" and is limited to unpaid minimum wages, unpaid overtime compensation, liquidated damages, and attorney's fees. 29 U.S.C. § 216(b).

Other damages are available under the FLSA retaliation complaint that are not available in the Equal Pay Act claim, and further highlight the difference in damages available between the two cases. Plaintiff can obtain punitive and emotional damages for her FLSA retaliation claim. *See Avitia,* 49 F.3d 1219, 1247 (7th Cir. 1995) (emotional damages awarded); *Lambert v. Ackerley,* 180 F.3d 997 (emotional distress and punitive damages awarded). Under the Equal Pay Act as compensatory damages for emotional damages are not available. *See* 29 U.S.C. § 216(b); *see also Hybki v. Alexander & Alexander, Inc.,* 536 F.Supp. 483 (W.D. Mo. 1982).

Defendant's reliance on *Harbuck* v. *United States*, 58 Fed. Cl. 266 (2003) (citation omitted) does not help Defendant. Motion to Dismiss at p. 7. In *Harbuck* the plaintiff brought identical claims for sex discrimination under a Title VII theory in District Court and an Equal Pay Act theory in this Court. *Harbuck v. United States,* 378 F.3d 1324, 1327 (Fed. Cir. 2004). In both actions, the plaintiff complained of discriminatory lower wages and sought relief through "back wages in the amount of the difference between what she actually earned and what she would have earned at the GS-12 level from January 1990 until she is restored to her proper and correct grade." *Id.* at 1327. Thus, in *Harbuck,* because the plaintiff sought the exact same quantum and measure of monetary damages, § 1500 barred the claim before this Court. *Id.* Plaintiff in this case does not have that issue.

## D. The Two Claims Were Not Pending At the Same Time

When determining whether a claim is "pending" for purposes of § 1500, "the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Keene,* 508 U.S. at 207. The transfer statute, 28 U.S.C. § 1631, states in pertinent part: "Whenever a civil action

is filed in a court ... and that court ... transfers such action ... the action shall proceed as if it had been filed in ... the court to which it was transferred on the date upon which it was actually filed in the court from which it was transferred." *Id.*

However, a determination that the two claims were pending at the same time when they were filed in the District Court would be unnecessarily harsh. Plaintiff amended her complaint in the District Court before Defendant filed a responsive pleading, the amendment removed the retaliation claim, and Plaintiff effectively transferred her entire case to this Court prior to filing the second District Court action on November 13, 2006. *See Vaizburd v. United States,* 46 Fed. Cl. 309 , 311 (2000) (a transfer of an entire action to the Court of Federal Claims operates as if the Equal Pay Act claim was never filed in the District Court). By refiling the retaliation claim in a separate action after the Equal Pay Act claim was transferred to this Court, Plaintiff effectively filed a complaint in the District Court after she filed another in this Court. According to § 1500, this approach does not divest the Court of Federal Claims of subject matter jurisdiction. *See Tecon Engineers v. United States,* 170 Ct. Cl. 389 (1965). The two claims, therefore, should not be considered pending at the same time.

## CONCLUSION

The Federal Circuit has stated that in order to dismiss for lack of subject matter jurisdiction under 28 U.S.C. § 1500, the two cases must be pending at the same time and arise from the same operative facts and seek the same relief. *Loveladies,* 27 F.3d at 1551. Because Plaintiff's claims in both courts do not arise from the same operative facts and do not seek the same relief, § 1500 does not apply. As a result, there is no risk to the government that it will have to defend in two courts, two cases based on the same facts and seeking the same remedy. For the foregoing reasons, Plaintiff Marjorie Murtagh Cooke respectfully requests that this Court deny the motion to dismiss.

Plaintiff requests a hearing on Defendant's Motion to Dismiss.

Respectfully Submitted,
By Counsel

_/s/ Brian M. Lowinger_
R. Scott Oswald
Brian M. Lowinger
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
blowinger@employmentlawgroup.net
*Counsel for Plaintiff*

# APPENDIX

## TABLE OF CONTENTS

28 U.S.C.A § 1491 ........ 1

28 U.S.C.A. § 1346 ........ 1

RCFC 3.1 ........ 2

April 26, 2006 District Court Complaint ........ 3

October 9, 2006 Amended District Court Complaint ........ 14

October 11, 2006 Unopposed Motion to Transfer ........ 23

Civil Docket for District Court Case 1:06-cv-00788 PLF ........ 26

November 9, 2006 Notice of Transfer ........ 28

November 14, 2006 First Amended Complaint ........ 29

November 13, 2006 Second District Court Complaint ........ 30

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Plaintiff Marjorie Murtagh Cooke's Opposition to Motion to Dismiss was served via electronic case filing this 18th day of April, 2007, upon:

Meredyth D. Cohen, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit 8th Floor
11 L Street, NW
Washington, D.C. 20530
Phone: (202) 353-7978
Fax: (202) 514-8624
meredyth.cohen@usdoj.gov

/s/ Brian M. Lowinger
Brian M. Lowinger

## 28 U.S.C.A § 1491

**§ 1491. Claims against United States generally; actions involving Tennessee Valley Authority**

**(a)(1)** The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

## 28 U.S.C.A. § 1346

**§ 1346. United States as defendant**

**(a)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

**(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

**(2)** Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

**Rule 3.1 Transfers and Referrals**

**(a) Transfers From Other Courts.**
**(1) Filing and Fee.** When the transfer of a case from another court to this court is permitted by law, including compliance with 28 U.S.C. §1292(d)(4)(B), the case shall be filed in this court upon the receipt by the clerk of a certified copy of the record made in the other court, including the order of that court granting the transfer. The clerk shall serve a notice of this filing on the parties as provided in RCFC 5. Where all required fees in the other court are shown to have been paid, no filing fee will be required.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARJORIE MURTAGH COOKE
8475 Sylvan Way
Clifton, VA 20124

Plaintiff,

v.

MARK ROSENKER, ACTING CHAIRMAN,
NATIONAL TRANSPORTATION SAFETY
BOARD

Defendant.

Serve:

UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF COLUMBIA
Attn: Civil Process Clerk
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530
*-Via Certified Mail*

UNITED STATES ATTORNEY GENERAL
10th & Pennsylvania Avenue, NW
Washington, DC 20530
*-Via Certified Mail*

MARK ROSENKER
490 L'Enfant Plaza, SW
Washington, D.C. 20594
*-Via Certified Mail*

NATIONAL TRANSPORTATION
SAFETY BOARD
Office of General Counsel
*-Via Certified Mail*

490 L'Enfant Plaza, SW
Washington, D.C. 20551
*-Via Certified Mail*

CASE NUMBER 1:06CV00788

JUDGE: Paul L. Friedman

DECK TYPE: Labor/ERISA (non-employmer

DATE STAMP: 04/28/2006

Case No. ________________

**CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY**

1. This action arises out of the Defendant National Transportation Safety Board's unlawful employment actions against the Plaintiff Marjorie Murtagh Cooke. Specifically, Ms. Murtagh Cooke alleges that the National Transportation Safety Board failed to justly compensate Ms. Murtagh Cooke in violation of the Equal Pay Act (EPA), as amended 29 U.S.C. § 206(d) *et seq.*, when it paid other similarly situated NTSB male directors larger salaries and compensation than Ms. Murtagh Cooke for similar work performed.

2. Ms. Murtagh Cooke also alleges that the National Transportation Safety Board retaliated against her in violation of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 215(a)(3) *et seq.*, when the NTSB denied Ms. Murtagh Cooke an interview for the Office of Marine Safety Director position (and hired an alternate candidate), denied Ms. Murtagh Cooke the opportunity to review her evaluation for 2004, withdrew an offer for a senior level position, denied her an evaluation for 2005, denied her the opportunity for monetary awards, transferred Ms. Murtagh Cooke to the Office of Safety Recommendations and Communication, subsequently transferred her to the Office of the Managing Director, and denied her performance standards for her current position, for complaining about disparate pay and filing a sexual discrimination complaint.

**Parties**

3. Plaintiff Marjorie Murtagh Cooke ("Ms. Cooke" or "Plaintiff") is resident of the city of Clifton, County of Fairfax, in the State of Virginia.

4. Defendant Mark Rosenker is the Acting Chairman of the National Transportation Safety Board and is the delegated administrator of the National Transportation Safety Board ("NTSB" or "Defendant") and is responsible for the lawful administration of the

Agency. As such, Acting Chairman Rosenker is the proper defendant in this action pursuant to 29 U.S.C. § 203(d).

**Jurisdiction and Venue**

5. This Honorable Court has jurisdiction over the claims presented herein pursuant to 29 U.S.C. § 216(b), as it asserts a claims that arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and specifically under the provisions of the Equal Pay Act (EPA), 29 U.S.C. § 206(d), and the FLSA, 29 U.S.C. § 215(a)(3).

6. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(c) because the Defendant has its principal office in the District of Columbia and under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to Ms. Cooke's claims occurred in the District of Columbia.

**Factual Allegations**

7. In 1994, Ms. Cooke was the Chief of the Marine Division, a unit under the NTSB's Office of Surface Transportation Safety.

8. Beginning in 1997, and ending in 1998, the NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS").

9. Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status.

10. Each surface office had similar responsibilities, with the exception of OMS, which had two additional responsibilities: conducting accident investigations involving

military and commercial vessels, and conducting international accident investigations. The latter was similar to the additional responsibility handled by the Office of Aviation Safety. The Office of Aviation Safety had an additional senior level (SL) position to handle international investigations.

11. In 1997, during this restructuring Ms. Cooke was named the Director of OMS.

12. Soon after the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"). Bob Chipkevich ("Chipkevich") became the Director of ORPH.

13. In 2000, when the NTSB was reviewing an available SES slot, the Managing Director, Dan Campbell ("Campbell") suggested to then Agency Chairman, James Hall ("Hall") that Chipkevich be given the SES slot.

14. Campbell suggested that Chipkevich be given the SES slot because Chipkevich had supposedly the most seniority of the three directors and because ORPH was the most complex of the three offices.

15. Hall agreed with Campbell's suggestion, and Chipkevich, the Director of ORPH, applied, interviewed, and was awarded SES status.

16. In early 2003, the NTSB was once again reviewing an available SES slot. The Agency's leadership, then Chairman Ellen Engleman-Conners and then Managing Director Campbell assigned this SES slot to Joe Osterman ("Osterman"), the Director of OHS.

17. After Osterman was awarded the SES slot, Ms. Cooke became the only Director of the three safety offices without SES status.

18. Ostensibly because Ms. Cooke's Director Position did not have SES status, Ms. Cooke was paid significantly less than her male counterparts, John Clark ("Clark"), who was the new Director OAS, Osterman and Chipkevich.

19. Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872, and Chipkevich received a salary of $142,022, Ms. Cooke received a salary of $121,583.

20. In addition, in 2004, while Clark received a salary of $142,022 Osterman received a salary of $140,797 and Chipkevich received a salary of $142,022, Ms. Cooke received a salary of $126,963.

21. Ostensibly because Ms. Cooke's Director Position did not have SES status, Ms. Cooke was granted lower monetary awards than her male counterparts, Clark, Osterman and Chipkevich.

22. Specifically, in 2003, while Clark received an award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Ms. Cooke received an award of $5,400.

23. In addition, in 2004, while Clark received an award of $17,000, Osterman received an award of $9,500 and Chipkevich received an award of $16,000, Ms. Cooke received an award of $3,400.

24. Ms. Cooke, in her position as Director of OMS, performed work substantially equal to Clark in his position as Director of OAS, Chipkevich in his position as Director of OPHRMS and Osterman in his position as Director of OHS.

25. Ms. Cooke performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of OPHRMS and Osterman performed his work as Director of OHS.

26. Due to this inequality, in April of 2004, Ms. Cooke met with the then NTSB Chairman Ellen Engelman-Conners ("Conners") and informed Conners that she was the only Director of the four modal investigation offices without SES status.

27. Further, Ms. Cooke informed Conners that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

28. Ms. Cooke explained to Conners that her concern was not the SES status *per se*, but rather she wanted equitable pay for similar work.

29. Conners responded by telling Ms. Cooke that if the NTSB acquired another SES slot, the slot would be assigned to the Director of OMS. However, Conners also stated that when the OMS Director position received SES status, the position would be advertised and that Ms. Cooke would have to apply and compete for the position.

30. Ms. Cooke suggested to Conners that she be allowed to receive overtime pay as one option for reducing the gap between her salary and that of the three male modal safety Directors.

31. Conners replied that she was not aware if that was a possible solution, but told Ms. Cooke she would look into it.

32. After the meeting Ms. Cooke met with Lisa Love ("Love") from Human Resources. Love confirmed for Ms. Cooke that she could receive overtime pay; however she needed approval from Conners, the NTSB Chairman.

33. After meeting with Love, Ms. Cooke made several attempts to meet with Conners to seek her approval for overtime pay.

34. Despite Ms. Cooke's efforts Conners refused to meet with her to discuss this subject.

35. Thus, Ms. Cooke continued to work as Director of OMS, doing substantially similar work to Clark, Osterman and Chipkevich, the other three Directors, and making significantly less money.

36. In July, 2004 the OMS Director position was advertised as having SES status.

37. As instructed by Conners, Ms. Cooke applied for this position, but the advertisement was cancelled; she was not granted an interview.

38. In January, 2005 when Ms. Cooke had not yet received an evaluation for the performance period ending in 2004, she requested a meeting with then Chairman Engleman-Conners. Conners refused to meet with her to discuss Ms. Cooke's performance evaluation.

39. Finally, in early 2005, the OMS Director position was re-advertised as having SES status.

40. Ms. Cooke applied for this position, but she was not granted an interview.

41. In response to years of unequal pay for similar work to that of her male counterparts, and not even being granted an interview for a position she held for eight years, Ms. Cooke filed a sexual discrimination complaint with the NTSB EEO Director on February 7, 2005, using the established NTSB protocol for lodging formal complaints of Equal Pay Act violations.

42. In her complaint, Ms. Cooke alleged that she received unequal pay as the Director of OMS because of her gender.

43. Ms. Cooke's discrimination complaint was investigated from August of 2005 through December of 2005.

44. In May, 2005 the new Managing Director, Joe Osterman ("Osterman"), notified Ms. Cooke of her non-selection for the Director of OMS position. Ms. Cooke noted that she had not been paid for the position during her tenure as Director, OMS. Osterman then offered her an SL position to compensate if she would submit bulleted responsibilities for a position description.

45. NTSB has used SL positions in the past to compensate senior level employees for pay over the GS-15 salary level.

46. In response, Ms. Cooke submitted the requested document. Osterman subsequently informed her that Chairman Engleman-Conners and Executive Director Dan Campbell would not permit him to use an SL position for her.

47. Instead, NTSB transferred Ms. Cooke to the Office of Safety Recommendations and Communication in June 2005.

48. In October, 2005, Ms. Cooke was transferred to the Office of the Managing Director.

49. Ms. Cooke has not received an evaluation for the performance period ending in 2005, thus precluding any opportunity for an award for her performance in 2005.

50. Ms. Cooke has not been issued new performance standards for her current position thus precluding any opportunity to improve her career status or to obtain awards for 2006.

**Count I**
**The Equal Pay Act (EPA)**
**29 U.S.C. § 206(d)**
**Unequal Pay**

51. Plaintiff incorporates the allegations in paragraphs 1 through 50 as though alleged herein.

52. Plaintiff is a an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

53. Defendant failed and/or refused to compensate Plaintiff comparable to employees who were of the opposite sex, worked in the same "establishment" as Plaintiff,

performed work that was equal to the work performed by Plaintiff, and retained positions that required equal skill, effort, responsibility and was performed under similar conditions as compared to Plaintiff.

54. As the direct and proximate result of Defendant's violation of 29 U.S.C. § 206(d), Plaintiff was caused to suffer damages.

55. For violations of 29 U.S.C. § 206(d), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

a. Reinstatement;
b. Promotion;
c. Economic damages including front and back pay;
d. Reasonable attorney's fees and costs;
e. Liquidated Damages; and
f. Any other relief that this Court deems just and equitable.

**Count II**
**Fair Labor Standards Act (FLSA)**
**29 U.S.C. § 215(a)(3)**
**Retaliation**

56. Plaintiff incorporates the allegations in paragraphs 1 through 55 as though alleged herein.

57. Plaintiff is an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

58. Defendant has limited, segregated, and classified the Plaintiff in a way which deprives her of employment opportunities and otherwise adversely affects her status as an employee because of Plaintiff's complaints of unequal pay and sexual discrimination.

59. As a direct and proximate result of the Defendant's conduct, Plaintiff was caused to suffer damages.

60. For violations of 29 U.S.C. § 215(a)(3), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

g. Reinstatement;
h. Promotion;
i. Economic damages including front and back pay;
j. Reasonable attorney's fees and costs;
k. Compensatory Damages;
l. Liquidated Damages; and
m. Any other relief that this Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, Ms. Cooke prays this Honorable Court for Judgment against the Defendant, in the amount of economic damages and compensatory damages to be determined at trial, plus attorneys' fees, costs of this action, equitable relief (including upgrading Plaintiff's employment status) and any other relief this Honorable Court deems just and proper to award.

Marjorie Murtagh Cooke
By Counsel

R Scott Oswald /BJB

R. Scott Oswald, D.C. Bar No. 458859
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**Jury Demand**

Plaintiff Cooke demands a jury for all issues proper to be so tried.

R. Scott Oswald /LB

R. Scott Oswald

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Civil Action No. 1:06-cv-00788-PJF** |
| **MARK ROSENKER, CHAIRMAN, NATIONAL TRANSPORTATION SAFETY BOARD** | ) |
| **Defendant.** | ) |

**AMENDED CIVIL COMPLAINT FOR EQUITABLE**
**<u>AND MONETARY RELIEF AND DEMAND FOR JURY</u>**

1. This action arises out of the Defendant National Transportation Safety Board's ("NTSB") unlawful employment actions against the Plaintiff Marjorie Murtagh Cooke ("Cooke"). Specifically, Cooke alleges that the National Transportation Safety Board failed to justly compensate her in violation of the Equal Pay Act (EPA), as amended 29 U.S.C. § 206(d) *et seq.*, when it paid other similarly situated NTSB male directors larger salaries and compensation than Cooke for similar work performed.

**Parties**

2. Plaintiff Cooke is resident of the city of Clifton, County of Fairfax, in the State of Virginia.

3. Defendant Mark Rosenker ("Rosenker") is the Chairman of the National Transportation Safety Board and is the delegated administrator of the National Transportation

Safety Board and is responsible for the lawful administration of the Agency. As such, Rosenker is the proper defendant in this action pursuant to 29 U.S.C. § 203(d).

**Jurisdiction and Venue**

4. This Honorable Court has jurisdiction over the claims presented herein pursuant to 29 U.S.C. § 216(b), as it asserts a claim that arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and specifically under the provisions of the EPA, 29 U.S.C. § 206(d).

5. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(c) because Defendant has its principal office in the District of Columbia and under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to Cooke's claims occurred in the District of Columbia.

**Factual Allegations**

6. In 1994, Cooke was the Chief of the Marine Division, a unit under the NTSB's Office of Surface Transportation Safety.

7. Beginning in 1997, and ending in 1998, the NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS").

8. Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status.

9. Each surface office had similar responsibilities, with the exception of OMS, which had two additional responsibilities: conducting accident investigations involving military and commercial vessels, and conducting international accident investigations. The latter was similar to the additional responsibility handled by the Office of Aviation Safety. The Office of Aviation Safety had an additional senior level (SL) position to handle international investigations.

10. In 1997, as the result of a restructuring, Cooke was named the Director of OMS.

11. Soon after the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"). Bob Chipkevich ("Chipkevich") became the Director of ORPH.

12. In 2000, when the NTSB was reviewing an available SES slot, the Managing Director, Dan Campbell ("Campbell") suggested to then Agency Chairman, James Hall ("Hall") that Chipkevich be given the SES slot.

13. Campbell suggested that Chipkevich be given the SES slot because Chipkevich had supposedly the most seniority of the three directors and because ORPH was the most complex of the three offices.

14. Hall agreed with Campbell's suggestion, and Chipkevich, the Director of ORPH, applied, interviewed, and was awarded SES status.

15. In early 2003, the NTSB was once again reviewing an available SES slot. The Agency's leadership, then Chairman Ellen Engleman-Conners ("Conners") and then Managing Director Campbell assigned this SES slot to Joe Osterman ("Osterman"), the Director of OHS.

16. After Osterman was awarded the SES slot, Cooke became the only Director of the three safety offices without SES status.

17. Ostensibly because Cooke's Director Position did not have SES status, Cooke was paid significantly less than her male counterparts, John Clark ("Clark"), who was the new Director of OAS, Osterman and Chipkevich.

18. Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872, and Chipkevich received a salary of $142,022, Cooke received a salary of $121,583.

19. In addition, in 2004, while Clark received a salary of $142,022 Osterman received a salary of $140,797 and Chipkevich received a salary of $142,022, Cooke received a salary of $126,963.

20. Ostensibly because Cooke's Director Position did not have SES status, Cooke was granted lower monetary awards than her male counterparts, Clark, Osterman and Chipkevich.

21. Specifically, in 2003, while Clark received an award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Cooke received an award of $5,400.

22. In addition, in 2004, while Clark received an award of $17,000, Osterman received an award of $9,500 and Chipkevich received an award of $16,000, Cooke received an award of $3,400.

23. Cooke, in her position as Director of OMS, performed work substantially equal to Clark in his position as Director of OAS, Chipkevich in his position as Director of OPHRMS and Osterman in his position as Director of OHS.

24. Cooke performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of OPHRMS and Osterman performed his work as Director of OHS.

25. Due to this inequality, in April of 2004, Cooke met with the Conners and informed Conners that she was the only Director of the four modal investigation offices without SES status.

26. Further, Cooke informed Conners that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

27. Cooke explained to Conners that her concern was not the SES status *per se*, but rather she wanted equitable pay for similar work.

28. Conners responded by telling Cooke that if the NTSB acquired another SES slot, the slot would be assigned to the Director of OMS. However, Conners also stated that when the OMS Director position received SES status, the position would be advertised and that Cooke would have to apply and compete for the position.

29. Cooke suggested to Conners that she be allowed to receive overtime pay as one option for reducing the gap between her salary and that of the three male modal safety Directors.

30. Conners replied that she was not aware if that was a possible solution, but told Cooke she would look into it.

31. After the meeting Cooke met with Lisa Love ("Love") from Human Resources. Love confirmed for Cooke that she could receive overtime pay; however she needed approval from Conners, the NTSB Chairman.

32. After meeting with Love, Cooke made several attempts to meet with Conners to seek her approval for overtime pay.

33. Despite Cooke's efforts Conners refused to meet with her to discuss this subject.

34. Thus, Cooke continued to work as Director of OMS, doing substantially similar work to Clark, Osterman and Chipkevich, the other three Directors, and making significantly less money.

35. In July, 2004, the NTSB advertised the OMS Director position with SES status.

36. As instructed by Conners, Cooke applied for this position, but the advertisement was cancelled and she was not granted an interview.

37. In early 2005, the OMS Director position was re-advertised as having SES status.

38. Cooke applied for this position, but she was not granted an interview.

39. In response to years of unequal pay for similar work to that of her male counterparts, and not even being granted an interview for a position she held for eight years, Cooke filed a sexual discrimination complaint with the NTSB EEO Director on February 7, 2005, using the established NTSB protocol for lodging formal complaints of Equal Pay Act violations.

40. In her complaint, Cooke alleged that she received unequal pay as the Director of OMS because of her gender.

41. Cooke's discrimination complaint was investigated from August of 2005 through December of 2005.

42. In May, 2005, the new Managing Director, Joe Osterman ("Osterman"), notified Cooke of her non-selection for the Director of OMS position. Cooke noted that she had not been paid for the position during her tenure as Director of OMS. Osterman then offered her an SL position to compensate if she would submit bulleted responsibilities for a position description.

43. NTSB has used SL positions in the past to compensate senior level employees for pay over the GS-15 salary level.

44. In response, Cooke submitted the requested document. Osterman subsequently informed her that Chairman Engleman-Conners and Executive Director Dan Campbell would not permit him to use an SL position for her.

45. In June, 2005, the NTSB transferred Cooke to the Office of Safety Recommendations and Communication.

46. In July, 2006, Cooke retired from the NTSB.

**Count I**
**The Equal Pay Act (EPA)**
**29 U.S.C. § 206(d)**
**Unequal Pay**

47. Plaintiff incorporates the allegations in paragraphs 1 through 46 as though alleged herein.

48. Plaintiff is a an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

49. Defendant failed and/or refused to compensate Plaintiff comparable to employees who were of the opposite sex, worked in the same "establishment" as Plaintiff, performed work that was equal to the work performed by Plaintiff, and retained positions that required equal skill, effort, responsibility and was performed under similar conditions as compared to Plaintiff.

50. As the direct and proximate result of Defendant's violation of 29 U.S.C. § 206(d), Plaintiff was caused to suffer damages.

51. For violations of 29 U.S.C. § 206(d), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

a. Reinstatement;
b. Promotion;
c. Economic damages including front and back pay;

d. Reasonable attorney's fees and costs;
e. Liquidated Damages; and
f. Any other relief that this Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, Cooke prays this Honorable Court for Judgment against the Defendant, in the amount of economic damages and compensatory damages to be determined at trial, plus attorneys' fees, costs of this action, equitable relief (including upgrading Plaintiff's employment status) and any other relief this Honorable Court deems just and proper to award.

Marjorie Murtagh Cooke
By Counsel

______/s/______

R. Scott Oswald, D.C. Bar No. 458859
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**Jury Demand**

Plaintiff Cooke demands a jury for all issues proper to be so tried.

______/s/______
R. Scott Oswald

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of October, 2006, the foregoing Plaintiff's Amended Complaint was served via electronic mail delivery, upon:

Kathleen Konopka
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W.
Washington, D.C. 20530

/s/
R. Scott Oswald

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MARK ROSENKER, CHAIRMAN, NATIONAL TRANSPORTATION SAFETY BOARD**<br><br>**Defendant.** | **Civil Action No. 1:06-cv-00788-PJF** |

**PLAINTIFF'S *UNOPPOSED* MOTION TO TRANSFER VENUE**

Plaintiff Marjorie Murtagh Cooke ("Plaintiff"), respectfully submits the following motion to transfer venue as to Plaintiff's Equal Pay Act, 29 U.S.C. § 206(d) ("EPA") claim to the U.S. Court of Federal Claims. Defendant Mark Rosenker, the Chairman and delegated administrator of the National Transportation Safety Board ("Defendant"), has indicated that he does not oppose this motion.

In support of this motion, Plaintiff states as follows:

On October 10, 2006, Plaintiff filed her amended complaint with this Court in which she asserts her claim that Defendant failed to justly compensate her in violation of the EPA when Defendant paid other similarly situated National Transportation Safety Board male directors larger salaries and compensation than Plaintiff for similar work performed between 2003 and 2004. *See* Amended Complaint at paras. 16 - 22. Defendant has not yet filed a responsive pleading in this case.

As alleged in the complaint, the difference in salary between Plaintiff and her peers was greater than $10,000. Therefore, Plaintiff is seeking damages in excess of $10,000. Pursuant to 28 U.S.C. § 1491, the U.S. Court of Federal Claims has exclusive jurisdiction over any claim against the United States that exceeds $10,000 and that does not sound in tort. It is apparent then that this Court lacks subject matter jurisdiction over Plaintiff's EPA claim and Plaintiff moves this Court to transfer this action to the Court of Federal Claims. *See, e.g., Schrader v. Tomlinson*, 311 F.Supp. 2d 21, 26 n.4 (D.D.C., 2004) (upon request by a party, the court will transfer venue for the EPA claim to the Court of Federal Claims where it appears as if the total damages and fees will surpass $10,000).

Pursuant to 28 U.S.C. § 1631,

> [w]henever a civil action is filed in a court... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

*Id.*

WHEREFORE, Plaintiff moves this Court to grant this *Unopposed* Motion to Transfer to the U.S. Court of Federal Claims.

Marjorie Murtagh Cooke
By Counsel

/s/

R. Scott Oswald, D.C. Bar No. 458859
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of October, 2006, the foregoing Plaintiff's Motion to Transfer Venue was served via the Court's electronic case filing system, upon:

Kathleen Konopka
Assistant United States Attorney
Judiciary Center Building
Civil Division
555 4th St., N.W.
Washington, D.C. 20530

/s/
R. Scott Oswald

CLOSED, JURY, TRANSFER-OUT, TYPE-K

**U.S. District Court**
**District of Columbia (Washington, DC)**
**CIVIL DOCKET FOR CASE #: 1:06-cv-00788-PLF**

COOKE v. ROSENKER
Assigned to: Judge Paul L. Friedman
Case: 1:06-cv-01928-JDB
Cause: 29:216 Fair Labor Standards Act

Date Filed: 04/28/2006
Date Terminated: 10/13/2006
Jury Demand: Plaintiff
Nature of Suit: 710 Labor: Fair Standards
Jurisdiction: U.S. Government Defendant

| Date Filed | # | Docket Text |
|---|---|---|
| 04/28/2006 | 1 | COMPLAINT against MARK ROSENKER (Filing fee $ 350) filed by MARJORIE MURTAGH COOKE.(jf, ) (Entered: 05/01/2006) |
| 04/28/2006 | | SUMMONS (3) Issued as to MARK ROSENKER, U.S. Attorney and U.S. Attorney General (jf, ) (Entered: 05/01/2006) |
| 05/30/2006 | 2 | NOTICE of Appearance by Kathleen M. Konopka on behalf of MARK ROSENKER (Konopka, Kathleen) (Entered: 05/30/2006) |
| 06/12/2006 | 3 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on Attorney General. Date of Service Upon Attorney General 05/23/2006., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to MARK ROSENKER served on 5/23/2006, answer due 7/24/2006., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the US Attorney. MARK ROSENKER served on 5/23/2006, answer due 7/24/2006 (Oswald, R.) (Entered: 06/12/2006) |
| 07/11/2006 | 4 | Joint MOTION to Stay *All Proceedings Pending Mediation* by MARK ROSENKER. (Attachments: # 1 Text of Proposed Order)(Konopka, Kathleen) (Entered: 07/11/2006) |
| 07/12/2006 | 5 | ORDER referring this case for mediation to commence July 12, 2006 and conclude on or before August 31, 2006, and granting 4 the parties' joint motion to stay proceedings pending mediation. Signed by Judge Paul L. Friedman on July 12, 2006. (MA) (Entered: 07/12/2006) |
| 08/27/2006 | 6 | Consent MOTION for Extension of Time to Complete Mediation by MARK ROSENKER. (Attachments: # 1 Text of Proposed Order)(Konopka, Kathleen) (Entered: 08/27/2006) |

| | | |
|---|---|---|
| 08/28/2006 | | MINUTE ORDER granting 6 defendant's consent Motion for Extension of Time to Complete Mediation. All further proceedings in this case shall be stayed and mediation shall continue until October 2, 2006. Signed by Judge Paul L. Friedman on 8/28/06. (lcplf2) (Entered: 08/28/2006) |
| 10/09/2006 | 7 | AMENDED COMPLAINT against MARK ROSENKER filed by MARJORIE MURTAGH COOKE.(td, ) (Entered: 10/11/2006) |
| 10/11/2006 | 8 | Unopposed MOTION to Transfer Case *to U.S. Court of Federal Claims* by MARJORIE MURTAGH COOKE. (Attachments: # 1 Text of Proposed Order)(Oswald, R.) (Entered: 10/11/2006) |
| 10/11/2006 | 9 | VACATED PURUSANT TO MINUTE ORDER ENTERED 10/11/06.....ORDER that the parties shall submit on or before October 20, 2006 a joint report updating the court on the status of this case and any ongoing settlement negotiations. Signed by Judge Paul L. Friedman on October 11, 2006. (MA) Modified on 10/19/2006 (ks, ). (Entered: 10/11/2006) |
| 10/11/2006 | | MINUTE ORDER vacating minute order 9 entered this same day requesting a joint report updating the court on the status of this case, and granting 8 plaintiff's unopposed motion to transfer venue. Signed by Judge Paul L. Friedman on October 11, 2006. (MA) (Entered: 10/11/2006) |
| 10/11/2006 | | Set Deadline: Joint Report due by 10/20/2006. (mm) (Entered: 10/13/2006) |
| 10/26/2006 | | Case transferred to Court of Federal Claims. Case mailed US Postal Service, return receipt requested. (td, ) (Entered: 10/26/2006) |
| 11/15/2006 | | Receipt on 11/09/06 of Transfer Papers. Other Court Number: 06-748C sent by US Court of Federal Claims. (jf, ) (Entered: 11/16/2006) |

## PACER Service Center

### Transaction Receipt

04/11/2007 02:35:52

| | | | |
|---|---|---|---|
| **PACER Login:** | no0153 | **Client Code:** | cooke |
| **Description:** | Docket Report | **Search Criteria:** | 1:06-cv-00788-PLF |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# In the United States Court of Federal Claims

**NOTICE**

**MARJORIE MURTAGH COOKE**

**No. 06-748C**

**v.**

**THE UNITED STATES**

**Clerk's Office**
**Washington, D.C., November 9, 2006**

To Attorney of Record, Assistant Attorney General and Judge Thomas C. Wheeler:

Please take notice that in the above case there has been filed this day, on behalf of the parties, the record as transferred from the United States District Court for the District of Columbia, No. 06-cv-748, consisting of one bound volume.

**NOTE: FAILURE TO COMPLY WITH THE ENCLOSED INSTRUCTIONS, WITHIN THE TIME PROVIDED, MAY RESULT IN THE CASE BEING DISMISSED FOR FAILURE TO PROSECUTE.**

**s/Brian Bishop**
**Brian Bishop, Clerk of the Court**

# In the United States Court of Federal Claims

**06-748C**

**Filed: November 14, 2006**

**MARJORIE MURTAGH COOKE**

**v.**

**THE UNITED STATES**

**FIRST AMENDED COMPLAINT**

The above document has been filed with the Clerk's Office in hard copy and is not available electronically. To view this document please contact the Clerk's Office at (202) 357-6400 between the hours of 8:45 am and 5:15 pm Eastern time.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARJORIE MURTAGH COOKE
8475 Sylvan Way
Clifton, VA 20124

Plaintiff,

v.

MARK ROSENKER, CHAIRMAN,
NATIONAL TRANSPORTATION SAFETY
BOARD

Defendant.

Serve:

UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF COLUMBIA
Attn: Civil Process Clerk
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530
*-Via Certified Mail*

UNITED STATES ATTORNEY GENERAL
10th & Pennsylvania Avenue, NW
Washington, DC 20530
*-Via Certified Mail*

MARK ROSENKER
490 L'Enfant Plaza, SW
Washington, D.C. 20594
*-Via Certified Mail*

NATIONAL TRANSPORTATION
SAFETY BOARD
Office of General Counsel
490 L'Enfant Plaza, SW
Washington, D.C. 20551
*-Via Certified Mail*

CASE NUMBER 1:06CV01928

JUDGE: Paul L. Friedman

DECK TYPE: Employment Discrimination

DATE STAMP: 11/13/2006

**CIVIL COMPLAINT FOR EQUITABLE AND**
**MONETARY RELIEF AND DEMAND FOR JURY**

1. This action arises out of the Defendant National Transportation Safety Board's ("Defendant" or "NTSB") unlawful employment actions against the Plaintiff Marjorie Murtagh Cooke ("Plaintiff" or "Cooke"). Specifically, Cooke alleges that the NTSB retaliated against her in violation of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 215(a)(3) *et seq.*, when the NTSB denied Cooke an interview for the Office of Marine Safety Director position (and hired an alternate candidate), denied Cooke the opportunity to review her evaluation for 2004, withdrew an offer for a senior level position, denied her an evaluation for 2005, denied her the opportunity for monetary awards, transferred Cooke to the Office of Safety Recommendations and Communication, subsequently transferred her to the Office of the Managing Director, and denied her performance standards for her current position, for complaining about disparate pay and filing a sexual discrimination complaint.

**Parties**

2. Cooke is resident of the city of Clifton, County of Fairfax, in the Commonwealth of Virginia.

3. Defendant Mark Rosenker is the Chairman of NTSB and is the delegated administrator of NTSB and is responsible for the lawful acts of that agency ("Chairman Rosenker"). As such, Chairman Rosenker is the proper defendant in this action pursuant to 29 U.S.C. § 203(d).

**Jurisdiction and Venue**

4. This Honorable Court has jurisdiction over the claims presented herein pursuant to 29 U.S.C. § 216(b), as it asserts a claims that arise under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and specifically under the FLSA, 29 U.S.C. § 215(a)(3).

5. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) because the Defendant has its principal office in the District of Columbia and, a substantial part of the events or omissions giving rise to Cooke's claims occurred in the District of Columbia.

**Factual Allegations**

6. In 1994, Cooke was the Chief of the Marine Division, a unit under NTSB's Office of Surface Transportation Safety.

7. Beginning in 1997, and ending in 1998, NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS").

8. Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status.

9. Each surface office had similar responsibilities, with the exception of OMS, which had two additional responsibilities: conducting accident investigations involving military and commercial vessels; and conducting international accident investigations. The latter was similar to the additional responsibility handled by the OAS. OAS had an additional senior level (SL) position to handle international investigations.

10. In 1997, during this restructuring Cooke was named the Director of OMS.

11. Soon after the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPHMS"). Bob Chipkevich ("Chipkevich") became the Director of ORPH.

12. In 2000, when NTSB was reviewing an available SES slot, the Managing Director, Dan Campbell ("Campbell") suggested to then Agency Chairman, James Hall ("Hall") that Chipkevich be given the SES slot.

13. Campbell suggested that Chipkevich be given the SES slot because Chipkevich had supposedly the most seniority of the three directors and because ORPH was the most complex of the three offices.

14. Hall agreed with Campbell's suggestion, and Chipkevich, the Director of ORPH, applied, interviewed, and was awarded SES status.

15. In early 2003, NTSB was once again reviewing an available SES slot. The Agency's leadership, then Chairman Ellen Engleman-Conners ("Conners") and Campbell assigned this SES slot to Joe Osterman ("Osterman"), the Director of OHS.

16. After Osterman was awarded the SES slot, Cooke became the only Director of the three safety offices without SES status.

17. Ostensibly because Cooke's Director position did not have SES status, Cooke was paid significantly less than her male counterparts: John Clark ("Clark"), who was the new Director of OAS; Osterman; and Chipkevich.

18. Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872, and Chipkevich received a salary of $142,022, Cooke received a salary of $121,583.

19. In addition, in 2004, while Clark received a salary of $142,022, Osterman received a salary of $140,797, and Chipkevich received a salary of $142,022, Cooke received a salary of $126,963.

20. Ostensibly because Cooke's Director position did not have SES status, Cooke was granted lower monetary awards than her male counterparts: Clark, Osterman and Chipkevich.

21. Specifically, in 2003, while Clark received a monetary award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Cooke received an award of $5,400.

22. In addition, in 2004, while Clark received a monetary award of $17,000, Osterman received an award of $9,500 and Chipkevich received an award of $16,000, Cooke received an award of $3,400.

23. Cooke, in her position as Director of OMS, performed work substantially equal to Clark in his position as Director of OAS, Chipkevich in his position as Director of OPHRMS and Osterman in his position as Director of OHS.

24. Cooke performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of OPHRMS and Osterman performed his work as Director of OHS.

25. Due to this inequality, in April of 2004, Cooke met with Conners and informed Conners that she was the only Director of the four modal investigation offices without SES status.

26. Further, Cooke informed Conners that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

27. Cooke explained to Conners that her concern was not the SES status *per se*, but rather she wanted equitable pay for similar work.

28. Conners responded by telling Cooke that if NTSB acquired another SES slot, the slot would be assigned to the Director of OMS. However, Conners also stated that when the OMS Director position received SES status, the position would be advertised and that Cooke would have to apply and compete for the position.

29. Cooke suggested to Conners that she be allowed to receive overtime pay as one option for reducing the gap between her salary and that of the three male modal safety Directors.

30. Conners replied that she was not aware if that was a possible solution, but told Cooke she would look into it.

31. After the meeting Cooke met with Lisa Love ("Love") from Human Resources. Love confirmed for Cooke that she could receive overtime pay; however she needed approval from NTSB Chairman Conners.

32. After meeting with Love, Cooke made several attempts to meet with Conners to seek her approval for overtime pay.

33. Despite Cooke's efforts Conners refused to meet with her to discuss this subject.

34. Thus, Cooke continued to work as Director of OMS, doing substantially similar work to Clark, Osterman, and Chipkevich, the other three Directors, and making significantly less money.

35. In July, 2004 the OMS Director position was advertised as having SES status.

36. As instructed by Conners, Cooke applied for this position, but the advertisement was cancelled; she was not granted an interview.

37. In January, 2005 when Cooke had not yet received an evaluation for the performance period ending in 2004, she requested a meeting with Conners. Conners refused to meet with her to discuss Cooke's performance evaluation.

38. Finally, in early 2005, the OMS Director position was re-advertised as having SES status.

39. Cooke applied for this position, but she was not granted an interview.

40. In response to years of unequal pay for similar work to that of her male counterparts, and not even being granted an interview for a position she held for eight years, Cooke filed a sexual discrimination complaint with the NTSB EEO Director on February 7, 2005, using the established NTSB protocol for lodging formal complaints of Equal Pay Act violations.

41. In her complaint, Cooke alleged that she received unequal pay as the Director of OMS because of her gender.

42. Cooke's discrimination complaint was investigated from August of 2005 through December of 2005.

43. In May, 2005, Osterman notified Cooke of her non-selection for the Director of OMS position. Cooke noted that she had not been paid for the position during her tenure as Director, OMS. Osterman then offered her an SL position to compensate if she would submit bulleted responsibilities for a position description.

44. NTSB has used SL positions in the past to compensate senior level employees for pay over the GS-15 salary level.

45. In response, Cooke submitted the requested document. Osterman subsequently informed her that Conners and Campbell would not permit him to use an SL position for her.

46. Instead, NTSB transferred Cooke to the Office of Safety Recommendations and Communication in June 2005.

47. In October, 2005, Cooke was transferred to the Office of the Managing Director.

48. Cooke has not received an evaluation for the performance period ending in 2005, thus precluding any opportunity for an award for her performance in 2005.

49. Cooke has not been issued new performance standards for her current position thus precluding any opportunity to improve her career status or to obtain awards for 2006.

**Count I**
**Fair Labor Standards Act (FLSA)**
**29 U.S.C. § 215(a)(3)**
**Retaliation**

50. Plaintiff incorporates the allegations in paragraphs 1 through 49 as though alleged herein.

51. Plaintiff is an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

52. Defendant has limited, segregated, and classified Plaintiff in a way which deprives her of employment opportunities and otherwise adversely affects her status as an employee because of Plaintiff's complaints of unequal pay and sexual discrimination.

53. As a direct and proximate result of the Defendant's conduct, Plaintiff was caused to suffer damages.

54. For violations of 29 U.S.C. § 215(a)(3), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

a. Reinstatement;
b. Promotion;
c. Economic damages including front and back pay;
d. Reasonable attorney's fees and costs;
e. Compensatory Damages;
f. Liquidated Damages; and
g. Any other relief that this Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, Cooke prays this Honorable Court for Judgment against the Defendant, in the amount of economic damages and compensatory damages to be determined at trial, plus attorneys' fees, costs of this action, equitable relief (including upgrading Plaintiff's employment status) and any other relief this Honorable Court deems just and proper to award.

Marjorie Murtagh Cooke
By Counsel

(BYSWA)

R. Scott Oswald, D.C. Bar No. 458859
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**Jury Demand**

Plaintiff Cooke demands a jury for all issues proper to be so tried.

R. Scott Oswald

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Plaintiff Marjorie Murtagh Cooke's Opposition to Motion to Dismiss was served via electronic case filing this 18th day of April, 2007, upon:

Meredyth D. Cohen, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit 8th Floor
11 L Street, NW
Washington, D.C. 20530
Phone: (202) 353-7978
Fax: (202) 514-8624
meredyth.cohen@usdoj.gov

/s/ Brian M. Lowinger
Brian M. Lowinger

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Plaintiff Marjorie Murtagh Cooke's Opposition to Motion to Dismiss was served via electronic case filing this 18th day of April, 2007, upon:

Meredyth D. Cohen, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit 8th Floor
11 L Street, NW
Washington, D.C. 20530
Phone: (202) 353-7978
Fax: (202) 514-8624
meredyth.cohen@usdoj.gov

/s/ Brian M. Lowinger
Brian M. Lowinger