**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No. 06-748C** |
| | ) **Judge Thomas C. Wheeler** |
| **THE UNITED STATES OF AMERICA,** | ) |
| **Defendant.** | ) |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S**
**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Plaintiff Marjorie Murtagh-Cooke ("Plaintiff") hereby submits this Surreply to Defendant United States' ("Defendant") Reply to Plaintiff's Opposition to Motion to Dismiss. For the reasons set forth below, Plaintiff requests that the Court deny the Motion to Dismiss.

## I. Plaintiff's Equal Pay Act Claim and Retaliation Claim Do Not Arise Out of the Same Operative Facts.

Defendant argues that 28 U.S.C. § 1500 is a battle of pleadings and cites to *Dico v. United States*, 48 F.3d 1199, 1204 (Fed. Cir. 1995) to support its argument. Opposition at 5. However, as noted in *Dico*, "*Loveladies* further established that if the Court of Federal Claims complaint pleads facts which demonstrate a different legal injury form that that pursued in another court, or seeks different relief, it involves a different claim which § 1500 does not bar." *Dico*, 48 F.3d at 1204 (emphasis added).

There is nothing remotely similar about Plaintiff's injuries asserted in the complaints in the Court of Federal Claims and the district court case. Plaintiff's injury in the First Amended Complaint before this Court is the lost wages due to Defendant's failure to pay her the same as

her male counterparts for work that involves the same skill, effort, and responsibility, and which was performed under similar working conditions. Plaintiff's FLSA retaliation injury is the harm Plaintiff suffered as a result of Defendant's acts in response to Plaintiff's for filing an EEO complaint: not granting Plaintiff an interview for the Director of Office of Marine Safety ("OMS"), multiple transfers after another person was hired in her place, and failing to provide performance evaluations and standards. As a result, the injuries are different and the motion to dismiss should be denied.

Defendant fails to acknowledge the holding in *Heritage Minerals, et al. v. United States,* 71 Fed. Cl. 710, 715-176 (2006), in which the court did not dismiss because both complaints involved different government conduct. Instead, Defendant relies on its argument that the complaints share allegations and again relies on the holding in *Dico* because the court mentioned that there were some verbatim allegations. *Reply* at 5. But, the reason for the court's "same claim" finding in *Dico* was not the wording of the pleadings. Instead, the basis for the holding in *Dico* was because the plaintiff filed claims in the district court and this Court for reimbursement of the same costs based on the same governmental conduct, i.e., the denial of a request for reimbursement for the cleanup contamination on the plaintiff's property. *Dico,* 48 F.3d at 1200.

Like the holding in *Heritage Minerals*, Plaintiff's case involves different government conduct than in the district court. As noted in the Plaintiff's Opposition, the operative government conduct for the claim under the Equal Pay Act relies on nothing more than Defendant's paying men more than Plaintiff for work that required the same skill, effort, and responsibility. Opposition at 11-12. This government conduct began in 1997 and ended in June 2005 when Plaintiff was transferred out of OMS. *Id.* The government conduct operative for the FLSA retaliation claim involves Defendant's actions taken in response to her EEO complaint:

failing to grant an interview, not awarding her the job of Director of OMS, transferring her out of OMS to the Office of Communications and Recommendations and then to the office of the Managing Director, and failing to provide performance standards and evaluations for her in 2005. *Id.* at 13-14. In sum, Plaintiff's claims do not suffer from the same infirmities as the claims in *Dico,* and like the holding in *Heritage Minerals,* rely on different government conduct.

Contrary to Defendant's position, there are material differences between the two complaints in this case and the district court case. Reply at 5. A comparison of the First Amended Complaint and the district court complaint demonstrates that only the district court complaint contains facts operative to the FLSA retaliation claim. Compare First Amended Complaint and A8.[1] Defendant transferred Plaintiff to a new position in the Office of the Managing Director despite the fact that Plaintiff worked at NTSB's highest levels on marine safety issues for eleven years. *Id.* at A3, 8. By failing to provide performance standards for work in the Office of Recommendations and Communications and the Office of the Managing Director, Defendant retaliated against Plaintiff by placing her in an unfamiliar, lower position without any guidance as to how to measure her own performance and progress in each job. *See id.* at A8. *See also Burlington Northern and Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2415 (U.S., 2006).

## II. The Two Claims Do Not Involve the Same Relief

Defendant incorrectly argues that Plaintiff seeks the same relief in each case. Reply at 8-9. For example, Defendant misreads the holding in *Harbuck v. United States,* 378 F.3d 1324, 1328, 1329 (Fed. Cir. 2004) and argues that any overlapping claim for relief merits dismissal. In *Harbuck*, the basis for the court's dismissal on the "same relief " analysis was because both complaints sought the exact same damages, i.e., "back wages in the amount of the difference

[1] "A___" refers to documents in the appendix attached to this brief.

between what she actually earned and what she would have earned at the GS-12 level from January 1990 until she is restored to her proper and correct grade." *Id.* at 1327. The holding in *Dico* also supports Plaintiff's position.[2] In *Dico,* the plaintiff sought the exact same measure and amount of damages, i.e., both complaints sought "$764,134.08 in response costs related to the another plume and such other additional costs related to the northern plum as Dico has incurred or may incur…[to] the date of judgment." *Dico,* 48 F.3d at 1201. Plaintiff's complaints, however, do not suffer from the same problem as in *Dico and Harbuck.*

Plaintiff's two complaints do not seek overlapping damages in either their measure or amount. Opposition at 15-20. To summarize, Plaintiff's Equal Pay Act is limited to retroactive damages equal to the difference in wages paid and the applicable male comparator between April 2003 and June 2005, plus liquidated damages, if applicable. *Id.* at 18. Plaintiffs FLSA retaliation claim seeks equitable prospective damages beginning in June 2005 and continues forward until a date determined by the discretion of the court. *Id.* at 16. Plaintiff, therefore, does not seek overlapping damages. *Id.* at 15.

Defendant incorrectly argues that, under the holding in *OSI, Inc. v. United States,* 73 Fed. Cl. 39, 45 (2006), Plaintiff cannot maintain that her damages are different because the district court could award the same amount of relief as this Court even if those damages may arise from her FLSA retaliation claim. Defendant's position fails for a variety of reasons. The court in *OSI*

---

[2] The court in *Dico* reviewed the Supreme Court's decision in *Bowen v. Massachusetts,* 487 U.S. 879, 893-894 (1988). A statement in *Bowen* is applicable to this case, as it demonstrates that not all monetary relief is the same. The Court noted "our cases have long recognized the distinction between an action at law for damages-which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation-and an equitable action for specific relief which may include an order providing for reinstatement of an employee with back pay, or for 'the recovery of specific property or *monies,* ejectment from land, or injunction either directing or restraining the defendant officer's actions.' *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949) . The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages." *Id.*

refused to dismiss the case because the district court lacked jurisdiction to award the damages sought under plaintiff's takings claims. *Id.* Also, in the instant case, the additional sources of damages available under the FLSA retaliation claim are not guaranteed, as such damages are only available "as may be appropriate to effectuate the purposes of section 215(a)(3)..." 29 U.S.C. § 216(b). As Plaintiff will have to rely on the district court's discretion to make up the difference between the damages under the Equal Pay Act and FLSA retaliation claim, Defendant cannot assert that Plaintiff can obtain the requested amount of relief through the FLSA retaliation claim given the likelihood that district court will exercise that discretion is unclear.

WHEREFORE, for the reasons set forth herein and in the Opposition to Motion to Dismiss, Plaintiff respectfully requests that this Court deny the Motion to Dismiss.

Respectfully Submitted,
By Counsel

/s/ Brian M. Lowinger
R. Scott Oswald
Brian M. Lowinger
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
blowinger@employmentlawgroup.net
*Counsel for Plaintiff*

# APPENDIX

## TABLE OF CONTENTS

District Court Complaint Filed April 2006 .......................................................................1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARJORIE MURTAGH COOKE
8475 Sylvan Way
Clifton, VA 20124

Plaintiff,

v.

CASE NUMBER 1:06CV00788

JUDGE: Paul L. Friedman

DECK TYPE: Labor/ERISA (non-employmer

DATE STAMP: 04/28/2006

MARK ROSENKER, ACTING CHAIRMAN,
NATIONAL TRANSPORTATION SAFETY
BOARD

Defendant.

Serve:

UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF COLUMBIA
Attn: Civil Process Clerk
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530
-*Via Certified Mail*

Case No. ______________

UNITED STATES ATTORNEY GENERAL
10th & Pennsylvania Avenue, NW
Washington, DC 20530
-*Via Certified Mail*

MARK ROSENKER
490 L'Enfant Plaza, SW
Washington, D.C. 20594
-*Via Certified Mail*

NATIONAL TRANSPORTATION
SAFETY BOARD
Office of General Counsel
-*Via Certified Mail*

490 L'Enfant Plaza, SW
Washington, D.C. 20551
-*Via Certified Mail*

**CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY**

1. This action arises out of the Defendant National Transportation Safety Board's unlawful employment actions against the Plaintiff Marjorie Murtagh Cooke. Specifically, Ms. Murtagh Cooke alleges that the National Transportation Safety Board failed to justly compensate Ms. Murtagh Cooke in violation of the Equal Pay Act (EPA), as amended 29 U.S.C. § 206(d) *et seq.*, when it paid other similarly situated NTSB male directors larger salaries and compensation than Ms. Murtagh Cooke for similar work performed.

2. Ms. Murtagh Cooke also alleges that the National Transportation Safety Board retaliated against her in violation of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 215(a)(3) *et seq.*, when the NTSB denied Ms. Murtagh Cooke an interview for the Office of Marine Safety Director position (and hired an alternate candidate), denied Ms. Murtagh Cooke the opportunity to review her evaluation for 2004, withdrew an offer for a senior level position, denied her an evaluation for 2005, denied her the opportunity for monetary awards, transferred Ms. Murtagh Cooke to the Office of Safety Recommendations and Communication, subsequently transferred her to the Office of the Managing Director, and denied her performance standards for her current position, for complaining about disparate pay and filing a sexual discrimination complaint.

**Parties**

3. Plaintiff Marjorie Murtagh Cooke ("Ms. Cooke" or "Plaintiff") is resident of the city of Clifton, County of Fairfax, in the State of Virginia.

4. Defendant Mark Rosenker is the Acting Chairman of the National Transportation Safety Board and is the delegated administrator of the National Transportation Safety Board ("NTSB" or "Defendant") and is responsible for the lawful administration of the

Agency. As such, Acting Chairman Rosenker is the proper defendant in this action pursuant to 29 U.S.C. § 203(d).

**Jurisdiction and Venue**

5. This Honorable Court has jurisdiction over the claims presented herein pursuant to 29 U.S.C. § 216(b), as it asserts a claims that arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and specifically under the provisions of the Equal Pay Act (EPA), 29 U.S.C. § 206(d), and the FLSA, 29 U.S.C. § 215(a)(3).

6. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(c) because the Defendant has its principal office in the District of Columbia and under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to Ms. Cooke's claims occurred in the District of Columbia.

**Factual Allegations**

7. In 1994, Ms. Cooke was the Chief of the Marine Division, a unit under the NTSB's Office of Surface Transportation Safety.

8. Beginning in 1997, and ending in 1998, the NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS").

9. Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status.

10. Each surface office had similar responsibilities, with the exception of OMS, which had two additional responsibilities: conducting accident investigations involving

military and commercial vessels, and conducting international accident investigations. The latter was similar to the additional responsibility handled by the Office of Aviation Safety. The Office of Aviation Safety had an additional senior level (SL) position to handle international investigations.

11. In 1997, during this restructuring Ms. Cooke was named the Director of OMS.

12. Soon after the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"). Bob Chipkevich ("Chipkevich") became the Director of ORPH.

13. In 2000, when the NTSB was reviewing an available SES slot, the Managing Director, Dan Campbell ("Campbell") suggested to then Agency Chairman, James Hall ("Hall") that Chipkevich be given the SES slot.

14. Campbell suggested that Chipkevich be given the SES slot because Chipkevich had supposedly the most seniority of the three directors and because ORPH was the most complex of the three offices.

15. Hall agreed with Campbell's suggestion, and Chipkevich, the Director of ORPH, applied, interviewed, and was awarded SES status.

16. In early 2003, the NTSB was once again reviewing an available SES slot. The Agency's leadership, then Chairman Ellen Engleman-Conners and then Managing Director Campbell assigned this SES slot to Joe Osterman ("Osterman"), the Director of OHS.

17. After Osterman was awarded the SES slot, Ms. Cooke became the only Director of the three safety offices without SES status.

18. Ostensibly because Ms. Cooke's Director Position did not have SES status, Ms. Cooke was paid significantly less than her male counterparts, John Clark ("Clark"), who was the new Director OAS, Osterman and Chipkevich.

19. Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872, and Chipkevich received a salary of $142,022, Ms. Cooke received a salary of $121,583.

20. In addition, in 2004, while Clark received a salary of $142,022 Osterman received a salary of $140,797 and Chipkevich received a salary of $142,022, Ms. Cooke received a salary of $126,963.

21. Ostensibly because Ms. Cooke's Director Position did not have SES status, Ms. Cooke was granted lower monetary awards than her male counterparts, Clark, Osterman and Chipkevich.

22. Specifically, in 2003, while Clark received an award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Ms. Cooke received an award of $5,400.

23. In addition, in 2004, while Clark received an award of $17,000, Osterman received an award of $9,500 and Chipkevich received an award of $16,000, Ms. Cooke received an award of $3,400.

24. Ms. Cooke, in her position as Director of OMS, performed work substantially equal to Clark in his position as Director of OAS, Chipkevich in his position as Director of OPHRMS and Osterman in his position as Director of OHS.

25. Ms. Cooke performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of OPHRMS and Osterman performed his work as Director of OHS.

26. Due to this inequality, in April of 2004, Ms. Cooke met with the then NTSB Chairman Ellen Engelman-Conners ("Conners") and informed Conners that she was the only Director of the four modal investigation offices without SES status.

27. Further, Ms. Cooke informed Conners that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

28. Ms. Cooke explained to Conners that her concern was not the SES status *per se*, but rather she wanted equitable pay for similar work.

29. Conners responded by telling Ms. Cooke that if the NTSB acquired another SES slot, the slot would be assigned to the Director of OMS. However, Conners also stated that when the OMS Director position received SES status, the position would be advertised and that Ms. Cooke would have to apply and compete for the position.

30. Ms. Cooke suggested to Conners that she be allowed to receive overtime pay as one option for reducing the gap between her salary and that of the three male modal safety Directors.

31. Conners replied that she was not aware if that was a possible solution, but told Ms. Cooke she would look into it.

32. After the meeting Ms. Cooke met with Lisa Love ("Love") from Human Resources. Love confirmed for Ms. Cooke that she could receive overtime pay; however she needed approval from Conners, the NTSB Chairman.

33. After meeting with Love, Ms. Cooke made several attempts to meet with Conners to seek her approval for overtime pay.

34. Despite Ms. Cooke's efforts Conners refused to meet with her to discuss this subject.

35. Thus, Ms. Cooke continued to work as Director of OMS, doing substantially similar work to Clark, Osterman and Chipkevich, the other three Directors, and making significantly less money.

36. In July, 2004 the OMS Director position was advertised as having SES status.

37. As instructed by Conners, Ms. Cooke applied for this position, but the advertisement was cancelled; she was not granted an interview.

38. In January, 2005 when Ms. Cooke had not yet received an evaluation for the performance period ending in 2004, she requested a meeting with then Chairman Engleman-Conners. Conners refused to meet with her to discuss Ms. Cooke's performance evaluation.

39. Finally, in early 2005, the OMS Director position was re-advertised as having SES status.

40. Ms. Cooke applied for this position, but she was not granted an interview.

41. In response to years of unequal pay for similar work to that of her male counterparts, and not even being granted an interview for a position she held for eight years, Ms. Cooke filed a sexual discrimination complaint with the NTSB EEO Director on February 7, 2005, using the established NTSB protocol for lodging formal complaints of Equal Pay Act violations.

42. In her complaint, Ms. Cooke alleged that she received unequal pay as the Director of OMS because of her gender.

43. Ms. Cooke's discrimination complaint was investigated from August of 2005 through December of 2005.

44. In May, 2005 the new Managing Director, Joe Osterman ("Osterman"), notified Ms. Cooke of her non-selection for the Director of OMS position. Ms. Cooke noted that she had not been paid for the position during her tenure as Director, OMS. Osterman then offered her an SL position to compensate if she would submit bulleted responsibilities for a position description.

45. NTSB has used SL positions in the past to compensate senior level employees for pay over the GS-15 salary level.

46. In response, Ms. Cooke submitted the requested document. Osterman subsequently informed her that Chairman Engleman-Conners and Executive Director Dan Campbell would not permit him to use an SL position for her.

47. Instead, NTSB transferred Ms. Cooke to the Office of Safety Recommendations and Communication in June 2005.

48. In October, 2005, Ms. Cooke was transferred to the Office of the Managing Director.

49. Ms. Cooke has not received an evaluation for the performance period ending in 2005, thus precluding any opportunity for an award for her performance in 2005.

50. Ms. Cooke has not been issued new performance standards for her current position thus precluding any opportunity to improve her career status or to obtain awards for 2006.

**Count I**
**The Equal Pay Act (EPA)**
**29 U.S.C. § 206(d)**
**Unequal Pay**

51. Plaintiff incorporates the allegations in paragraphs 1 through 50 as though alleged herein.

52. Plaintiff is a an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

53. Defendant failed and/or refused to compensate Plaintiff comparable to employees who were of the opposite sex, worked in the same "establishment" as Plaintiff,

performed work that was equal to the work performed by Plaintiff, and retained positions that required equal skill, effort, responsibility and was performed under similar conditions as compared to Plaintiff.

54. As the direct and proximate result of Defendant's violation of 29 U.S.C. § 206(d), Plaintiff was caused to suffer damages.

55. For violations of 29 U.S.C. § 206(d), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

a. Reinstatement;
b. Promotion;
c. Economic damages including front and back pay;
d. Reasonable attorney's fees and costs;
e. Liquidated Damages; and
f. Any other relief that this Court deems just and equitable.

**Count II**
**Fair Labor Standards Act (FLSA)**
**29 U.S.C. § 215(a)(3)**
**Retaliation**

56. Plaintiff incorporates the allegations in paragraphs 1 through 55 as though alleged herein.

57. Plaintiff is an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and the Defendant National Transportation Safety Board is an "employer" as the term is defined at 29 U.S.C. § 203(d).

58. Defendant has limited, segregated, and classified the Plaintiff in a way which deprives her of employment opportunities and otherwise adversely affects her status as an employee because of Plaintiff's complaints of unequal pay and sexual discrimination.

59. As a direct and proximate result of the Defendant's conduct, Plaintiff was caused to suffer damages.

60. For violations of 29 U.S.C. § 215(a)(3), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

g. Reinstatement;
h. Promotion;
i. Economic damages including front and back pay;
j. Reasonable attorney's fees and costs;
k. Compensatory Damages;
l. Liquidated Damages; and
m. Any other relief that this Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, Ms. Cooke prays this Honorable Court for Judgment against the Defendant, in the amount of economic damages and compensatory damages to be determined at trial, plus attorneys' fees, costs of this action, equitable relief (including upgrading Plaintiff's employment status) and any other relief this Honorable Court deems just and proper to award.

Marjorie Murtagh Cooke
By Counsel

R Scott Oswald /BJB

R. Scott Oswald, D.C. Bar No. 458859
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**Jury Demand**

Plaintiff Cooke demands a jury for all issues proper to be so tried.

R. Scott Oswald /LB

R. Scott Oswald

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Plaintiff Marjorie Murtagh Cooke's Surreply was served via electronic case filing this 16th day of May, 2007, upon:

Meredyth D. Cohen, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit 8th Floor
11 L Street, NW
Washington, D.C. 20530
Phone: (202) 353-7978
Fax: (202) 514-8624
meredyth.cohen@usdoj.gov

/s/ Brian M. Lowinger
Brian M. Lowinger