# EXHIBIT 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No. 06-748C** |
| | ) **Judge Thomas C. Wheeler** |
| **THE UNITED STATES OF AMERICA,** | ) |
| **Defendant.** | ) |

**PLAINTIFF MARJORIE MURTAGH COOKE'S CORRECTED MOTION TO STRIKE REFERENCES TO DISCOVERY REQUESTS AND DISCOVERY REQUESTS IN DEFENDANT'S REPLY TO OPPOSITION TO MOTION TO DISMISS**

Plaintiff Marjorie Murtagh Cooke ("Plaintiff") moves this Honorable Court to strike the references to discovery requests and materials included in and attached to defendant United State's ("Defendant") Reply to Opposition to Motion to Dismiss. In the alternative, should the Court consider the discovery requests, Plaintiff requests that she be allowed to present facts outside of the pleadings that demonstrate that 28 U.S.C. § 1500 ("Section 1500") does not apply. As grounds for this Motion, Plaintiff respectfully shows the following:

On April 28, 2006, Plaintiff filed a complaint against Mark Rosenker, the then Acting Chairman of the National Transportation Safety Board ("NTSB"), in the United States District Court for the District of Columbia, Case No. 1:06-cv-00788 ("District Court Complaint") asserting a claim under the Equal Pay Act and for retaliation under the Fair Labor Standards Act ("FLSA"). On October 9, 2006, prior to the filing of a responsive pleading, Plaintiff filed an amended complaint that does not contain a FLSA retaliation claim. On October 11, 2006, pursuant to 28 U.S.C. § 1631, Plaintiff moved to transfer the remaining Equal Pay Act claim to

this Court. On October 26, 2006, the District Court transferred the Equal Pay Act claim to this Court. On November 9, 2006, this Court accepted for filing the case as transferred from the District Court. On November 13, 2006, Plaintiff filed a new complaint for retaliation under the FLSA in the United States District Court for the District of Columbia ("FLSA Complaint"). On November 14, 2006, the clerk for the Court of Federal Claims docketed Plaintiff's First Amended Complaint ("Complaint").

On March 15, 2007, Defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule of the Court of Federal Claims ("RCFC") 12(b)(1) . Defendant asserts that this Court lacks subject matter jurisdiction because the Complaint violates Section 1500 in that it is the same claim as the claim in the District Court Complaint. Motion to Dismiss at 4. On April 18, 2007, Plaintiff filed her Opposition to Motion to Dismiss in which she asserts that the Court retains subject matter jurisdiction because the District Court Complaint and Complaint do not allege the same facts, seek the same relief, and were not pending at the same time.

On May 7, 2007, Defendant filed a Reply to Opposition to Plaintiff's Opposition to Motion to Dismiss ("Reply"). In the Reply, Defendant incorrectly argues that the Court should consider discovery from the later-filed FLSA Complaint, including Plaintiff's proposed list of deponents, interrogatories, requests for admissions, and requests for production of documents in considering whether Section 1500 applies. Defendant's argument and exhibits should be struck.

**ARGUMENT**

This Court should strike the reference to and the discovery requests as part of its Section 1500 analysis, as that information is not relevant to the jurisdictional facts in dispute. *See Farmers Grain Co. of Esmond v. United States,* 29 Fed.Cl. 684, 686 (1993). Section 1500 does

not require or involve a review of discovery requests to determine if this Court has subject matter jurisdiction, and the discovery is, therefore, not relevant nor necessary to the Court's analysis.

As Defendant notes, the Section 1500 analysis requires a battle of the pleadings. Reply at 5 (citing *Dico v. United States*, 48 F.3d 1199, 1204 (Fed. Cir. 1995). Under Rule 7, the only pleadings are a complaint, answer, counterclaim, and reply. RCFC 7. Discovery is not included in the definition of pleadings and this Court should not interpret Section 1500 so that it becomes a battle of the discovery requests. Moreover, other courts have similarly found that the Section 1500 analysis is limited to the complaints in each court. *See Keene Corp. v. United States,* 508 U.S. 200, 207 (1993); *Heritage Minerals, Inc. v. U.S.,* 71 Fed.Cl. 710, 714 (Fed.Cl., 2006).

The discovery is only applicable to the FLSA Complaint and not the District Court Complaint. In interpreting Section 1500 for complaints transferred pursuant to 28 U.S.C. §1631, the Court considers only the two complaints that are alleged to have been pending at the same time, i.e., originally filed complaint and the transferred complaint. *Harbuck v. United States,* 378 F.3d 1324, 1328 (Fed. Cir. 2004). Here, Defendant acknowledges that the discovery is for the FLSA Complaint and is inapplicable to the District Court Complaint. Reply at 6. Moreover, Defendant's claim that the discovery would be the same or similar if it was filed for the District Court Complaint is baseless. *Id.* at 6, n.2. As a result, the discovery is not even applicable to the Court's Section 1500 analysis and the Court should strike its reference in the Reply and the appendix.

Defendant incorrectly argues that the few similarities in the discovery requests require the Court to apply Section 1500. Reply at 6 -7. Yet, Defendant also notes that there is no overlap in the interrogatories other than "topics," which do not constitute "pleadings," and those are only

two of the twenty plus in each set. *Id.* at 7, A 35-36, 45.[1] Defendant also incorrectly argues that the two claims are the same because Plaintiff seeks to conduct depositions of four of the same people in each case at the same time. *Id.* Plaintiff seeks to depose four of the same people in each case at the same time in an effort to reduce litigation costs and the impact of the litigation on the deponents' work and lives. Defendant's argument regarding overlapping requests for admissions and document requests is weak. Defendant specifically notes that many of the document requests are general and applicable to any case, and admits that there are many that do not overlap, and which are indicative of operative facts that are key to the different cases. *Id.* at 7, n. 5.[2] [3]

To the extent that the Court determines that the discovery is relevant to its Section 1500 analysis, however, Plaintiff requests that the Court permit Plaintiff to present facts outside of the pleadings to further demonstrate how the two claims do not require the application of Section 1500. *See e.g., Farmers Grain Co. of Esmond,* 29 Fed.Cl. at 686.

---

[1] "A" refers to the appendix attached to this motion.

[2] Should the Court consider the discovery requests, Plaintiff notes that at least 9 of the "overlapping" document requests involve general questions applicable in any case, including documents Defendant relied on in responding to or related to other discovery requests, the employment of Plaintiff, including her personnel file and evaluations, and electronic discovery. See requests 1-6, 15, 29, and 30 in the district court case and 7-11, 14, 18, 36 and 37 in the Court of Federal Claims. A25-28, and A17 -18, 20.

[3] Should the Court consider the discovery requests, Plaintiff notes that at least 5 of the "overlapping" requests for admissions are general, including basic information about Plaintiff, Defendant, and discovery practices. Compare requests 1-5 in each the district court case and in the Court of Federal Claims. Compare A3 & A9.

WHEREFORE, for the reasons stated above, Plaintiff requests that this Court grant the request to strike any references to discovery requests and the discovery requests themselves that Defendant submitted with its Reply, or, in the alternative, permit Plaintiff to present facts outside of the pleadings that further demonstrate that Section 1500 does not apply.

Respectfully Submitted,
By Counsel

/s/ Brian M. Lowinger
R. Scott Oswald
Brian M. Lowinger
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
blowinger@employmentlawgroup.net
*Counsel for Plaintiff*

# APPENDIX

# TABLE OF CONTENTS

Court of Federal Claims First Request for Admissions .................................................. 1

District Court First Requests for Admissions .................................................................. 7

Court of Federal Claims First Requests for Production of Documents ........................... 13

District Court First Requests for Production of Documents .......................................... 22

Court of federal Claims First Set of Interrogatories ........................................................ 31

District Court First Set of Interrogatories ....................................................................... 40

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARJORIE MURTAGH COOKE,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | Case No. 06-748C<br>Judge Thomas C. Wheeler |

**PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS TO DEFENDANT UNITED STATES OF AMERICA**

Pursuant to Rule 36 of the Rules of Court of Federal Claims ("RCFC") the Plaintiff Marjorie Murtagh Cooke, by and through undersigned counsel, hereby propounds to the Defendant United States of America, these requests for admissions in the action captioned above. You are instructed to respond to these admissions in accordance with Rule 36 of the RCFC and to provide your responses within thirty (30) days after service.

The time frame in question, unless stated specifically, is within three years preceding the filing of this action. In answering these requests, the following instructions and definitions apply to each request, unless otherwise specifically provided:

1. The following requests call for the knowledge that is available to Defendant United States of America, by reasonable inquiry, including inquiry of Defendant's agency, the National Transportation Safety Board ("NTSB"), its representatives, agents, employees, and attorneys.

2. As used herein, the terms "you," yours" and "NTSB" refer to Defendant United States of America and its subsidiaries, agents, assigns or employees.

3. As used herein, the terms "Plaintiff" or "Ms. Cooke" refer to the Plaintiff Marjorie Murtagh Cooke.

4. As used herein, the term "person" means any natural person, firm, association,

partnership, sole proprietorship, corporation, joint venture, business trust, government, federation, public entity or any other kind of business or legal entity.

5. "Documents" mean all written, typed or printed matter and all magnetic or other records, electronically stored information, or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, electronic mail, e-mail, IM messages, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you.

6. As used herein, the term "file" means any collections or group of documents maintained, held, stored, or used together, including, without limitations, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

7. As used herein, the terms "relating to" and "relates to" mean containing, recording, discussing, mentioning, noting, summarizing, referring to, commenting upon, describing, digesting, reporting, listing, analyzing, or studying the subject matter identified in a request.

8. As used herein, the term "communication" means any transfer of information, ideas or opinions or thought by any means, at any time or place, under any circumstances, and is not limited to transfers between persons but includes other transfers such as records and memoranda in file or electronically stored.

9. Number/Gender. The use of the singular form of any word includes the plural, and vice versa. The use of the masculine gender includes the feminine, and vice versa.

10. Each/any. The term "each" shall include the word "every" and "every." "Any" shall include the word "all" and "all" shall include the word "any."

11. And/or. "And" and "or" shall be construed conjunctively and disjunctively to mean either "and" or "or," whichever shall be the more inclusive in the context in which it is used.

**Requests for Admissions**

Subject to these instructions and definitions, Plaintiff submits the following Requests for Admissions:

Admit or deny the truth of the following:

1. NTSB is a federal government agency who, for compensation, employs an individual(s).

2. Ms. Cooke is an individual who was employed by NTSB as early as 1994 through 2006.

3. Documents produced in response to Ms. Cooke's First Request for Production of Documents are true and correct copies of documents kept in the regular course of NTSB's business.

4. It is the regular course of NTSB's business to make and/or maintain the documents produced in response to Ms. Cooke's First Request for Production of Documents.

5. Ms. Cooke was the acting director of the Office of Marine Safety ("OMS") from 1994 until 2005.

6. Between 2002 and 2005, OMS, The Office of Highway Safety ("OHS"), Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH), and the Office of Aviation Safety ("OAS") were all offices under the NTSB.

7. In 2002, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of OHS.

8. In 2003, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of OHS.

9. In 2004, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of OHS.

10. In 2005, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of OHS.

11. In 2002, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of ORPH.

12. In 2003, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of ORPH.

13. In 2004, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of ORPH.

14. In 2005, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of ORPH.

15. In 2002, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of OAS.

16. In 2003, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of OAS.

17. In 2004, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of OAS.

18. In 2005, the work performed by Plaintiff required equal skill, effort, and responsibility and was performed under similar conditions as the work performed by the Director of OAS.

19. Between 2002 and 2005, NTSB did not award promotions and compensation for an SES level position based on a seniority system.

20. Between 2002 and 2005, NTSB did not award promotions and compensation for an SES level position based on a merit system.

21. In April of 2004, Ms. Cooke met with the then NTSB Chairman Ellen Engelman-Conners and informed Ms. Engleman Conners that she was the only Director of the four modal investigation offices without SES status and that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

22. In 2004, Ms. Cooke was eligible to receive overtime compensation.

23. In 2005, Ms. Cooke was eligible to receive overtime compensation.

24. Ms. Cooke submitted an application to be the Director of OMS at an SES level when the position was made available in 2004.

25. Ms. Cooke was not granted an in interview to be the Director of OMS at an SES level in 2004.

26. Interviews were conducted for someone to fill to the position of Director of OMS at an SES level in 2004.

27. Ms. Cooke was not offered a position as the Director of OMS in 2004.

28. NTSB did not fill the position of Director of OMS in 2004.

29. NTSB did not fill the position of Director of OMS in 2004 because it did not want to award the position to Ms. Cooke.

30. Ms. Cooke submitted an application to be the Director of OMS at an SES level when the position was made available in 2005.

31. Interviews of candidates were conducted for someone to fill to the position of Director of OMS at an SES level in 2005.

32. Ms. Cooke was not granted an in interview to be the Director of OMS at an SES level in 2005.

33. In May of 2005, the new Managing Director, Joe Osterman notified Ms. Cooke of her non-selection for the Director of OMS position.

Marjorie Murtagh Cooke
By Counsel

R. Scott Oswald
Brian M. Lowinger
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff Marjorie Murtagh Cooke*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing First Set of Requests for Admissions to Defendant United States of America was served this 21st day of March, 2007, via e-mail, and by first-class mail, postage prepaid upon:

Meredyth D. Cohen, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530
Phone: (202) 353-7978
Fax: (202) 514-8624
meredyth.cohen@usdoj.gov

Counsel for Defendant

Brian M. Lowinger

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARJORIE MURTAGH COOKE
v.

MARK ROSENKER, CHAIRMAN,
NATIONAL TRANSPORTATION SAFETY
BOARD, et al.

Defendant.

Case No. 1:06CV01928
Judge John D. Bates

**PLAINTIFF MARJORIE MURTAGH-COOKE'S
FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT
MARK ROSENKER, CHAIRMAN,
NATIONAL TRANSPORTATION SAFETY BOARD**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff Marjorie Murtagh Cooke, by and through undersigned counsel, hereby propounds to the Defendant United States of America, these requests for admissions in the action captioned above. You are instructed to respond to these admissions in accordance with Rule 36 of the FRCP and to provide your responses within thirty (30) days after service.

The time frame in question, unless stated specifically, is within three years preceding the filing of this action. In answering these requests, the following instructions and definitions apply to each request, unless otherwise specifically provided:

The following requests call for the knowledge that is available to Defendant Mark Rosenker, by reasonable inquiry, including inquiry of Defendant's agency, the National Transportation Safety Board ("NTSB"), its representatives, agents, employees, and attorneys.

1. "You," "Your," "Defendant," or "NTSB" means Defendant Mark Rosenker, Chairman, sued in his capacity as the Chairman of the National Transportation Safety Board ("NTSB"), the NTSB, and all other persons acting on behalf of Defendant.

2. As used herein, the terms "Plaintiff" or "Murtagh-Cooke" refer to the Plaintiff Marjorie Murtagh Cooke.

3. "OMS" means NTSB's Office of Marine Safety.

4. As used herein, the term "person" means any natural person, firm, association, partnership, sole proprietorship, corporation, joint venture, business trust, government, federation, public entity or any other kind of business or legal entity.

5. "Documents" mean all written, typed or printed matter and all magnetic or other records, electronically stored information, or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, electronic mail, e-mail, IM messages, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you.

6. As used herein, the term "file" means any collections or group of documents maintained, held, stored, or used together, including, without limitations, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

7. As used herein, the terms "relating to" and "relates to" mean containing, recording, discussing, mentioning, noting, summarizing, referring to, commenting upon, describing, digesting, reporting, listing, analyzing, or studying the subject matter identified in a request.

8. As used herein, the term "communication" means any transfer of information, ideas or opinions or thought by any means, at any time or place, under any circumstances, and is not limited to transfers between persons but includes other transfers such as records and memoranda in file or electronically stored.

9. <u>Number/Gender</u>. The use of the singular form of any word includes the plural, and vice versa. The use of the masculine gender includes the feminine, and vice versa.

10. Each/any. The term "each" shall include the word "every" and "every." "Any" shall include the word "all" and "all" shall include the word "any."

11. And/or. "And" and "or" shall be construed conjunctively and disjunctively to mean either "and" or "or," whichever shall be the more inclusive in the context in which it is used.

## Requests for Admissions

1. NTSB is a federal government agency that, for compensation, employs an individual(s).

2. Murtagh-Cooke is an individual who was employed by NTSB as early as 1994 through 2006.

3. Documents produced in response to Murtagh-Cooke's First Request for Production of Documents are true and correct copies of documents kept in the regular course of NTSB's business.

4. It is the regular course of NTSB's business to make and/or maintain the documents produced in response to Murtagh-Cooke's First Request for Production of Documents.

5. Murtagh-Cooke was the Chief of the Marine Division and the acting director of the Office of Marine Safety ("OMS") from 1994 until 2005.

6. NTSB has used and uses senior level ("SL") positions to compensate senior level employees for pay over the GS-15 salary level.

7. In April of 2004, Murtagh-Cooke met with the then NTSB Chairman Ellen Engelman-Conners and informed Ms. Engleman Conners that she was the only Director of the four modal investigation offices without Senior Executive Service ("SES") status and that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

8. In January 2005, Murtagh-Cooke complained to a representative of the Equal Employment Opportunity ("EEO") office at NTSB.

9. In February 2005, Murtagh-Cooke submitted a complaint with the EEO at NTSB.

10. In March 2005, the EEO at NTSB interviewed Dan Campbell regarding the substance of Murtagh-Cooke's complaint.

11. Murtagh-Cooke submitted an application to be the Director of OMS at an SES level when the position was made available in 2004.

12. Murtagh-Cooke was not granted an in interview to be the Director of OMS at an SES level in 2004.

13. Interviews were conducted for someone to fill to the position of Director of OMS at an SES level in 2004.

14. Murtagh-Cooke was not offered a position as the Director of OMS at an SES level in 2004.

15. NTSB did not fill the position of Director of OMS in 2004.

16. Murtagh-Cooke submitted an application to be the Director of OMS at an SES level when the position was made available in 2005.

17. Interviews of candidates were conducted for someone to fill to the position of Director of OMS at an SES level in 2005.

18. Murtagh-Cooke was not granted an in interview to be the Director of OMS at an SES level in 2005.

19. In May of 2005, NTSB's Managing Director, Joe Osterman notified Murtagh-Cooke of her non-selection for the Director of OMS position.

20. NTSB did not grant Murtagh-Cooke an interview for the position of Director of OMS in 2005 because Murtagh-Cooke filed a complaint with the EEO at NTSB.

21. In May of 2005, Murtagh-Cooke noted to Mr. Osterman that she had not been paid for the position during her tenure as Director of OMS. Mr. Osterman then offered Murtagh-Cooke an SL position to compensate her pay on the condition that she submit bulleted responsibilities for a position description.

22. Per Mr. Osterman's directive, in 2005 Murtagh-Cooke submitted the requested document to obtain an SL position, however Ms. Engelman-Conners and the Executive Director, Dan Campbell, rejected Mr. Osterman's proposal that Murtagh-Cooke receive or be considered for an SL position.

23. In June 2005, Murtagh-Cooke was transferred to the Office of Safety Recommendations and Communications.

24. In October of 2005, Murtagh-Cooke was transferred to the Office of the Managing Director.

Marjorie Murtagh-Cooke
By Counsel

R. Scott Oswald, D.C. Bar #458859
Brian M. Lowinger, D.C. Bar # 472886
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March 2007, the foregoing First Set of Requests for Admissions were sent by first-class mail, postage pre-paid and electronic mail upon the undersigned counsel for Defendant.

Quan K. Luong, Esq.
Special Assistant United States Attorney
555 4th Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (phone)
(202) 514-8780 (facsimile)
Quan.Luong@usdoj.gov
*Counsel for Defendant*

Brian M. Lowinger

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARJORIE MURTAGH COOKE,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | ) Case No. 06-748C<br>) Judge Thomas C. Wheeler |

**PLAINTIFF MARJORIE MURTAGH-COOKE'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT UNITED STATES OF AMERICA**

Plaintiff Marjorie Murtagh-Cooke, by and through Counsel and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that the Defendant Mark Rosenker, Acting Chairman National Transportation Safety Board, produce the documents described below at The Employment Law Group, PC, 888 17th Street, NW, Suite 900, Washington, D.C. 20006, within thirty (30) days after the Fed. R. Civ. P. 26(f) Conference of the Parties. The time frame in question, unless stated specifically, is for the period of the three years predating the filing of this lawsuit to the present date.

**Definitions**

For the purposes of these Document Requests, the terms used herein shall have the following meanings unless the context requires otherwise:

1. "You," "your," "Defendant," or "NTSB" means Defendant Mark Rosenker, Acting Chairman, National Transportation Safety Board and all other persons acting on behalf of Defendant.

2. "Murtagh-Cooke" or "Plaintiff" means Plaintiff Marjorie Murtagh-Cooke.

3. "Complaint" means any formal or informal reports resulting in investigation or disciplinary action by the Defendant regarding its employees.

4. "Report" means the written, oral, formal or informal communication by aggrieved individuals who contact the Defendant to notify you of discrimination or any other type of grievance.

5. "Communication" means all oral conversations, discussions, e-mail and/or "IM" messages, letters, telegrams, memoranda, and any other transmission of information in any other form, both oral and written.

6. "Documents" mean all written, typed or printed matter and all magnetic or other records or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, electronic mail, IM messages, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you.

7. "File" or "files" mean any collection or group of documents maintained, held, stored or used together, including, without limitation, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

8. "Person" means all entities, including without limitation, all your predecessors in interest, individuals, associates, groups, organizations, joint ventures, corporations, trusts, estates, partnerships and public agencies.

9. "Relating to" and "relates to" mean, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the Document Request.

10. "Employee" and "employ" refer to Plaintiff, and, when the context requires, any other person who performs or performed work for you.

11. The words "supervisor" and "supervisory" shall mean persons within the NTSB's management hierarchy who were considered by the NTSB to be or have been superior to Murtagh-Cooke. This includes any individual from whom Murtagh-Cooke received direction, guidance, instruction, or to whom Murtagh-Cooke reported her activities for evaluation, as well as those who were authorized by the NTSB to formally evaluate

the quality of Murtagh-Cooke's performance, to recommend or decide questions of promotion, payment of bonuses, increases or decreases in compensation, and changes in job duties and responsibilities.

12. "Director" and "directors" refer to persons within Defendant's management hierarchy who were considered by the Defendant to be or have been a comparable colleague of Plaintiff. This includes any individual who performed equal work compared to the Plaintiff and who required equal skill, effort, and responsibility, and whose work is performed under similar conditions.

13. The words "compensation" shall mean base salary, bonus, scheduled or unscheduled, incentive payments, retirement package, deferred compensation, money market or other saving or investment vehicles offered by the NTSB, whether or not the NTSB contributed to such offerings, or any other forms and methods of remuneration employed by the NTSB.

14. "Job description:" for each such description, in addition to an itemization of job duties, include the level of supervisory authority he/she exercised, the rate of pay, the authority he/she had to hire, fire, or promote, or otherwise affect the terms and conditions of other employees including the Plaintiffs, and the offices over which he/she had supervisory responsibility.

15. To the extent a privilege is claimed with respect to any document covered by this Request for Production of Documents, Defendant is requested to state, with respect to such document, the following as applicable:

    a. The author of such document;
    b. To whom such document is addressed;
    c. The date upon which such document was prepared;
    d. The title or heading of such document;
    e. The type of document (e.g., hand-written note, memorandum, tape recording, journal, desk calendar, books of account, etc.);
    f. Any other information that might be necessary to describe such document sufficiently for a designation thereof;
    g. The present location and custodian of such document; and
    h. The grounds for claiming privilege.

## Instructions

1. For each Document or other requested information asserted to be privileged or otherwise excludable from discovery, identify that document or other requested information. State the specific basis for such claim of privilege or other ground for exclusion. For each such Document, state the date of the document, the name, job title and address of the person who prepared it; the name, address, and job title of the person to whom it was addressed or circulated or who saw it; the name, job

title and address of the person now in possession of the Document; and, a description of the subject matter of the document.

2. For any requested Document no longer in existence, or which cannot be located, identify the Document, state how and when it passed out of existence, or when it could no longer be located and the reasons therefore, and identify each person having knowledge concerning such disposition or loss and each Document evidencing its prior existence and/or the fact concerning such Document's nonexistence or loss.

3. Unless otherwise specified, each Document Request requires a continuing response, and you are requested to supplement reasonably or amend your responses to these Document Requests based upon any and all information and documents obtained after filing such responses.

4. The singular of any defined term includes the plural, and the masculine gender includes the feminine and neuter.

5. The terms "and" and "or" and "and/or" shall be construed either conjunctively or disjunctively as required to bring within the ambit of these Document Requests that which might be excluded by an alternative construction.

6. These requests are directed at all Documents within the possession, custody or control of Defendant, and also include Documents within the possession, custody, or control of agents, persons, or entities in privity with the Defendant, including past and/or present attorneys.

**Requests for Production of Documents**

Please produce the following:

1. All documents related to a claim by you that the jobs performed by Murtagh-Cooke and Bob Chipkevich the Director of the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"), during their mutual employment, did not involve substantially equal skill, equal effort, equal responsibility, and were not performed under similar working conditions.

2. All documents related to a claim by you that the jobs performed by Joe Osterman, the Director of the Office of Highway Safety ("OHS"), during their mutual employment, did not involve substantially equal skill, equal effort, equal responsibility, and were not performed under similar working conditions.

3. All documents related to a claim by you that the jobs performed by Bob Magladry, the Director of OHS did not involve substantially equal skill, equal effort, equal responsibility as the work performed by Ms. Murtagh-Cooke, and

were not performed under similar working conditions as those by Ms. Murtagh-Cooke.

4. All documents related to a claim by you that the jobs performed by John Spencer, the successor to Ms. Murtagh-Cooke and the Director of OMS did not involve substantially equal skill, equal effort, equal responsibility as the work performed by Ms. Murtagh-Cooke, and were not performed under similar working conditions as those by Ms. Murtagh-Cooke.

5. All documents related to a claim by you that the jobs performed by employees awarded SL status did not involve substantially equal skill, equal effort, equal responsibility as the work performed by Ms. Murtagh-Cooke, and were not performed under similar working conditions as those by Ms. Murtagh-Cooke.

6. All documents which the defendant contends support the defenses asserted in the defendant's answer or that relate to any claims asserted by the defendant.

7. Documents that would tend to support or refute any of Defendant's Affirmative Defenses.

8. Documents that would tend to support or refute any of Defendant's denials contained in Defendant's Answer or responses to Plaintiff's Requests for Admissions.

9. All Documents that would tend to support or refute any of Defendant's denials contained in Defendant's responses to Plaintiff's Requests for Admissions.

10. All documents and communications used, referenced, referred to, relating to or described in responding to Plaintiff's Interrogatories, if not previously produced.

11. All documents which relate to, pertain to or disclose any information about the Plaintiff's terms conditions and privileges of employment, including but not limited to Plaintiff's Employment File.

12. All documents which relate to, pertain to or disclose any information about any policies, procedures or protocols you have in place to guarantee your compliance with, and to protect employee rights protected under the Equal Pay Act (EPA) 29 U.S.C. §§ 206-215(1996) *et. seq.*

13. All documents which relate to, pertain to or disclose any information about the compensation Defendant paid to Plaintiff from 1994 to the present, including, but not limited to, salary bonuses, retirement package, and any other employment benefits.

14. All documents which relate to Plaintiff's assessment reviews and/or evaluations from 1997 to the present, including but not limited to all documents and written notes acquired during feedback interviews with Plaintiff's colleagues, and final assessments provided to the employee after each formal review period.

15. All documents which relate to, pertain to or disclose any information about NTSB's employees' or independent entities' reports dealing with Equal Pay Act violations or conduct of similar nature to that which is described in Plaintiff's Amended Complaint, whether substantiated or unsubstantiated, that any employee, including the Plaintiff, made with Defendant, or any administrative or judicial body, either orally or in writing, in the last five (5) years.

16. All documents which relate to, pertain to or disclose any information about any or all reports or information or communication that you have received about discrimination or conduct of similar nature to the Equal Pay Act violations that are described in Plaintiff's Amended Complaint, from employees or others, both while Plaintiff was in Defendant's employ and before she was in Defendant's employ.

17. All documents which relate to, pertain to, allege, aver, report, complain of or disclose any information about the investigation, if any, which resulted from each and every complaint, either formal or informal, of Equal Pay Act or discrimination violations, made by Plaintiff against Defendant.

18. All documents which relate to, pertain to or disclose any information about the organizational structure of Defendant.

19. All internally generated or externally prepared documents from 1997 to present produced by NTSB and/or contracted for with public funds regarding NTSB management operations, organization, and/or efficiency, including those describing pay and compensation for employees.

20. All documents which relate to, pertain to or disclose any information about the means, methods, procedures, and policies regarding document and data retention and control.

21. All documents which relate to, pertain to or disclose any information about the means, methods, procedures, and policies regarding NTSB's salary and bonuses allocation to NTSB supervisors, officers, and employees, the allocation of SES status or granting supervisors, officers, and employees SES status, and the allocation of SL status or granting supervisors, officers and employees SL status.

22. All resumes received by the NTSB from internal and external applicants for the Director of the Office of Marine Safety from when the position was advertised in 2004 through when the position was filled in 2005.

23. All documents related to John Spencer' employment with NTSB, including his personnel file, and documents related to his interview for the position of Director of the Office of Marine Safety.

24. All documents which relate to, pertain to or disclose any information about the means, methods, procedures and policies used to evaluate the internal and external applicants for the Director of the Office of Marine Safety position when it was advertised in 2004 through when the position was filled in 2005.

25. All resumes received by the NTSB from internal and external applicants for any director position within the NTSB since 1997.

26. All documents that describe Defendant's hiring protocols for the position of Director of Office of Marine Safety.

27. All resumes received by the NTSB from internal and external applicants for any deputy director position within the NTSB since 1997.

28. All resumes received by the NTSB from internal and external applicants for any SL position within the NTSB since 1997.

29. All e-mails or other documents in which NTSB supervisors, officers or employees discussed or referred to the performance of Murtagh-Cooke subsequent to her April 2004 meeting with Chairman Engleman Conners.

30. All e-mails or other documents in which NTSB supervisors, officers or employees discussed or referred to Murtagh-Cooke's employee evaluations from 1997 to the present, including any discussion of or reference to the salary increases, bonuses or SES status awarded to Murtagh-Cooke in connection with the period covered by that evaluation.

31. Documents relevant to the hiring of any Assistant-Directors, Deputy Directors or Directors from 1995 to the present, including but not limited to documents relevant to the circumstances under which Assistant-Directors, Deputy Directors, and Directors were selected for Senior Executive Service Positions.

32. Documents relevant to the hiring of any SL positions from 1995 to the present, including but not limited to documents relevant to the circumstances under which employees were selected for SL Positions.

33. The personnel file of each employee who is or was in a position listed as SL status from 1995 to the present.

34. All documents which you intend to introduce into evidence at the trial of this case or may be used to refresh the recollections of witnesses at depositions or trial.

35. All documents containing statistical data relied on by the defendant.

36. All documents which in any way pertain to all of the NTSB policies on creating and maintaining data backups performed on all computer systems currently or previously in use, including the following:

a. The procedures and devices used to back up the software and the data, including but not limited to name(s) of backup software used, the frequency of the backup process, and type of tape backup drives, including name and version number, type of media (i.e. DLT, 4mm, 8mm, AIT). State the capacity (bytes) and total amount of information (gigabytes) stored on each tape.
b. The tape or backup rotation and how backup data is maintained and whether the backups are full or incremental including all rotation schedules.
c. The location of where storage media is kept, i.e., off-site or on-site, or both. Include the location of such backup and a description of the process for archiving and retrieving the media.
d. The individual(s) who conducts the backup and the individual who supervises this process.
e. All backup sets, regardless of the magnetic media on which they reside, showing current location, custodian, date of backup, a description of backup content and a full inventory of all archives.
f. All extra-routine backups applicable for any servers identified in response to these interrogatories, such as quarterly archival backup, yearly backup, etc. and identify the current location of any such backups.

37. All other relevant documents in the possession of the defendant that pertain to this legal action and that are not described above.

Marjorie Murtagh Cooke
By Counsel

R. Scott Oswald, D.C. Bar #458859
Brian M. Lowinger
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Plaintiff Marjorie Murtagh-Cooke's First Requests for Production of Documents to Defendant United States of America, was served via electronic mail and U.S. mail, postage pre-paid this 6th day of March, 2007 upon:

Meredyth D. Cohen, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530
Phone: (202) 353-7978
Fax: (202) 514-8624
meredyth.cohen@usdoj.gov

Brian M. Lowinger

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARJORIE MURTAGH COOKE
v.

MARK ROSENKER, CHAIRMAN,
NATIONAL TRANSPORTATION SAFETY
BOARD, et al.

Defendant.

) Case No. 1:06CV01928
) Judge John D. Bates

**PLAINTIFF MARJORIE MURTAGH-COOKE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT MARK ROSENKER, CHAIRMAN, NATIONAL TRANSPORTATION SAFETY BOARD**

Plaintiff Marjorie Murtagh-Cooke, by and through Counsel and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that the Defendant Mark Rosenker, Chairman, National Transportation Safety Board, produce the documents described below at The Employment Law Group, PC, 888 17th Street, NW, Suite 900, Washington, D.C. 20006, within thirty (30) of service.

The time frame in question, unless stated specifically, is for the period of the three years predating the filing of this lawsuit to the present date.

**Definitions**

For the purposes of these Document Requests, the terms used herein shall have the following meanings unless the context requires otherwise:

1. "You," "Your," "Defendant," or "NTSB" means Defendant Mark Rosenker, Chairman, sued in his capacity as the Chairman of the National Transportation Safety Board ("NTSB"), the NTSB, and all other persons acting on behalf of Defendant.

2. "Murtagh-Cooke" or "Plaintiff" means Plaintiff Marjorie Murtagh-Cooke.

3. "Complaint" means any formal or informal reports resulting in investigation or disciplinary action by Defendant regarding its employees.

4. "Report" means the written, oral, formal or informal communication by an aggrieved individual who contact Defendant to notify you of discrimination or any other type of grievance.

5. "Communication" means all oral conversations, discussions, e-mail and/or "IM" messages, letters, telegrams, memoranda, electronically stored information, and any other transmission of information in any other form, both oral and written.

6. "Documents" mean all written, typed or printed matter and all magnetic or other records, electronically stored information, or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, electronic mail, e-mail, IM messages, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you.

7. "File" or "files" mean any collection or group of documents maintained, held, stored or used together, including, without limitation, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

8. "Person" means all individuals, entities, including without limitation, all your predecessors in interest, associates, groups, organizations, joint ventures, corporations, trusts, estates, partnerships and public agencies.

9. "Relating to" and "relates to" means, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the Document Request.

10. "Employee" and "employ" refers to Plaintiff, and, when the context requires, any other person who performs or performed work for you.

11. The words "supervisor" and "supervisory" shall mean persons within NTSB's management hierarchy who were considered by NTSB to be or have been superior to Murtagh-Cooke. This includes any individual from whom Murtagh-Cooke received direction, guidance, instruction, or to whom Murtagh-Cooke reported her activities for evaluation, as well as those who were authorized by NTSB to formally evaluate the

quality of Murtagh-Cooke's performance, to recommend or decide questions of promotion, payment of bonuses, increases or decreases in compensation, and changes in job duties and responsibilities.

12. "Director" and "directors" refer to persons within Defendant's management hierarchy who were considered by the Defendant to be or have been a comparable colleague of Plaintiff.

13. "Job description:" for each such description, in addition to an itemization of job duties, include any exceptional authority granted to the position and/or exercised by the person occupying the position, the level of supervisory authority he/she exercised, the rate of pay, the authority he/she had to hire, fire, or promote, or otherwise affect the terms and conditions of other employees including the Plaintiff, and the offices over which he/she had supervisory responsibility.

14. The words "compensation" shall mean base salary, bonus, scheduled or unscheduled, incentive payments, retirement package, deferred compensation, money market or other saving or investment vehicles offered by NTSB, whether or not NTSB contributed to such offerings, or any other forms and methods of remuneration employed by NTSB.

15. To the extent a privilege is claimed with respect to any document covered by this Request for Production of Documents, Defendant is requested to state, with respect to such document, the following as applicable:

    a. The author of such document;
    b. To whom such document is addressed;
    c. The date upon which such document was prepared;
    d. The title or heading of such document;
    e. The type of document (e.g., hand-written note, memorandum, tape recording, journal, desk calendar, books of account, etc.);
    f. Any other information that might be necessary to describe such document sufficiently for a designation thereof;
    g. The present location and custodian of such document; and
    h. The grounds for claiming privilege.

**Instructions**

1. For each Document or other requested information asserted to be privileged or otherwise excludable from discovery, identify that document or other requested information. State the specific basis for such claim of privilege or other ground for exclusion. For each such Document, state the date of the document, the name, job title and address of the person who prepared it; the name, address, and job title of the person to whom it was addressed or circulated or who saw it; the name, job title and

address of the person now in possession of the Document; and, a description of the subject matter of the document.

2. For any requested Document no longer in existence, or which cannot be located, identify the Document, state how and when it passed out of existence, or when it could no longer be located and the reasons therefore, and identify each person having knowledge concerning such disposition or loss and each Document evidencing its prior existence and/or the fact concerning such Document's nonexistence or loss.

3. Unless otherwise specified, each Document Request requires a continuing response, and you are requested to supplement reasonably or amend your responses to these Document Requests based upon any and all information and documents obtained after filing such responses.

4. The singular of any defined term includes the plural, and the masculine gender includes the feminine and neuter.

5. The terms "and" and "or" and "and/or" shall be construed either conjunctively or disjunctively as required to bring within the ambit of these Document Requests that which might be excluded by an alternative construction.

6. These requests are directed at all Documents within the possession, custody or control of Defendant, and also include Documents within the possession, custody, or control of agents, persons, or entities in privity with the Defendant, including past and/or present attorneys.

**Requests for Production of Documents**

Please produce the following:

1. All documents and communications used, referenced, referred to, relating to or described in responding to Plaintiff's First Set of Interrogatories to NTSB, if not previously produced.

2. All documents that would tend to support or refute any of Defendant's Affirmative Defenses asserted by you to the allegations in the First Amended Complaint.

3. All documents that would tend to support or refute any of Defendant's denials contained in Defendant's answer or responses to Plaintiff's First Set of Requests for Admissions.

4. All documents related to the employment of Plaintiff, including, but not limited to her personnel file.

5. All documents which relate to, pertain to or disclose any information about Plaintiff's terms conditions and privileges of employment.

6. All documents which relate to, pertain to, or disclose any information about Plaintiff's assessment reviews or performance evaluations from 1997 through all of 2006, including, but not limited to all documents and written notes acquired during feedback interviews with Plaintiff's directors, supervisors, assistants, and colleagues, and the final assessments provided to Murtagh-Cooke after each formal review period.

7. All documents which relate to, pertain to, or disclose information about reports or information or communication that you have received about discrimination or conduct of similar nature related to the sexual discrimination and Equal Pay Act violations that are described in Plaintiff's Amended Complaint.

8. All documents that Defendant received concerning complaints about Plaintiff from NTSB employees, including, but not limited to supervisors, directors, managers, assistants, deputies, etc.

9. All documents which relate to, pertain to, or disclose communications among or between NTSB employees, but not limited to supervisors, directors, managers, assistants, deputies, etc., concerning Murtagh-Cooke's April 2004 meeting with Chairman Engleman-Conners.

10. All documents which relate to, pertain to, or disclose information about your efforts to remediate the conduct alleged in Murtagh-Cooke's April 2004 meeting with Chairman Engleman-Conners.

11. All documents which relate to, pertain to, or disclose communications among or between NTSB employees, but not limited to supervisors, directors, managers, assistants, deputies, etc., concerning Murtagh-Cooke's Equal Employment Opportunity office ("EEO") complaint filed in or about February 2005.

12. All documents which relate to, pertain to, or disclose information about your efforts to remediate the conduct alleged in Murtagh-Cooke's EEO complaint that was filed in or about February 2005.

13. All other documents which relate to, pertain to, allege, aver, report, contain or disclose any information about the investigation, if any, which resulted from each and every complaint, either formal or informal, of Equal Pay Act or sexual discrimination violations, made by Plaintiff against Defendant.

14. All documents and communications which disclose, relate to, or pertain to claims of retaliation by an employee of NTSB complaint, either formal or informal, of Equal Pay Act or other discrimination violations.

15. All documents which relate to, pertain to or disclose any information about the organizational structure of Defendant from 2003-2006.

16. All resumes received by NTSB from internal and external applicants for the Director of the Office of Marine Safety from when the position was advertised in 2004 and in 2005, through when the position was filled in 2005.

17. All documents reflecting or related to information about the means, methods, procedures and policies used to evaluate the internal and external applicants for the Director of the Office of Marine Safety position when it was advertised in 2004 and in 2005, through when the position was filled in 2005.

18. All documents in which NTSB supervisors, officers or employees discussed or referred to the vacancy for the Director of the Office of Marine Safety position, advertised in 2004 and in 2005, through when the position was filled in 2005, including any which discussed or referred to Murtagh-Cooke's interest in or qualifications for the position, or which discussed or referred to the interest in or qualifications of any other persons for the position, or which discussed or referred to in any way the hiring process for the position.

19. All documents relating to the job description for the acting Director of the Office of Marine Safety from 1997 through 2005.

20. All documents relating to the advertisement or posting for the position of Director of the Office of Marine Safety as the position was advertised in 2004 and in 2005.

21. All documents which relate to, pertain to, or disclose information about the basis for Plaintiff's transfer from the Office of Marine Safety to the Office of Safety Recommendations and Communication.

22. All documents which relate to, pertain to, or disclose information about the basis for Plaintiff's transfer from the Office of Safety Recommendations and Communication to the Office of the Management.

23. All documents that relate to, pertain to, or contain the job description for the position(s) into which NTSB transferred Murtagh-Cooke in the Office of Safety Recommendations

24. All documents that relate to, pertain to, or contain the job descriptions for the position(s) into which NTSB transferred Murtagh-Cooke in the Office of the Managing Director.

25. All documents related to your decision not to award Plaintiff Senior Level ("SL") status in 2005 and 2006.

26. Documents that describe Defendant's hiring protocols for the position of a director at the Senior Executive Service ("SES") level.

27. All documents related to Defendant's data and document systems, including but not limited to Defendant's email system, SPAM, or other security or content filters, hardware configuration, software configuration, network configuration, server configuration, internet structure, and email, document, and data retention systems.

28. All documents which relate to, pertain to, or disclose any information about the means, methods, procedures, and policies regarding NTSB's retention and control of documents, including, but not limited to electronically stored information, and communications for current and past employees, officers, directors, supervisors, etc.

29. All documents which in any way pertain to all of the NTSB's policies on creating and maintaining data backups performed on all computer systems currently or previously in use, including:

a. All procedures and devices used to back up the software and the electronically stored information, including but not limited to name(s) of backup software used, the frequency of the backup process, and type of tape backup drives, including name and version number, type of media (i.e. DLT, 4mm, 8mm, AIT). State the capacity (bytes) and total amount of information (gigabytes) stored on each tape.
b. Tape or backup rotation, how backup data is maintained, and whether the backups are full or incremental including all rotation schedules.
c. Where backup storage media is physically located.
d. The individual(s) who conducts the backup and the individual who supervises this process.
e. A list of all backup sets, regardless of the magnetic media on which they reside, showing current location, custodian, date of backup, a description of backup content and a full inventory of all archives.
f. All extra-routine backups applicable for any servers identified in response to these interrogatories, such as quarterly archival backup, yearly backup, etc. and identify the current location of any such backups.

30. All other documents that are relevant to this action that Defendant has not produced in response to a previous discovery request.

Marjorie Murtagh Cooke
By Counsel

R. Scott Oswald, D.C. Bar #458859
Brian M. Lowinger, D.C. Bar # 472886
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Plaintiff Marjorie Murtagh-Cooke's First Requests for Production of Documents to Defendant Mark Rosenker, Chairman, National Transportation Safety Board, was served this 23rd day of March, 2007, via first-class mail, postage prepaid and e-mail, upon:

Quan Luong, Esq.
Special Assistant U.S. Attorney
U.S. Attorney's Office
Judiciary Center Building
555 4th Street, NW, Room E4417
Washington, DC 0530
quan.luong@usdoj.gov

Brian M. Lowinger

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARJORIE MURTAGH COOKE,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | Case No. 06-748C<br>Judge Thomas C. Wheeler |

**PLAINTIFF MAJORIE MURTAGH-COOKE'S FIRST SET OF INTERROGATORIES TO DEFENDANT UNITED STATES OF AMERICA**

These Interrogatories are served pursuant to Rule 33 of the Federal Rules of Civil Procedure. You are requested to make answer within thirty (30) from the date of the scheduling order.

Answer each Interrogatory separately, in writing and under oath. In answering the interrogatories, please furnish all information available to you, including information possessed by any agent, employee, or attorney representing you.

**Definitions**

For the purposes of these Interrogatories, the terms used herein shall have the following meanings unless the context requires otherwise:

a. "You," "Your," "Defendant," or "NTSB" means Defendant United States Government, National Transportation Safety Board ("NTSB"), and all other persons acting on behalf of Defendant.

b. "Murtagh-Cooke," or "Plaintiff" means Plaintiff Marjorie Murtagh-Cooke.

c. "Report" means any formal or informal reports resulting in investigation or disciplinary action by the Defendant regarding its employees.

d. "Report" means the written, oral, formal or informal communication by aggrieved individuals who contact the Defendant to notify it of sexual discrimination or for unequal pay for similarly situated employees, or any form of adverse action related to reporting sexual discrimination, or any other type of grievance.

d. "Communication" means all oral conversations, discussions, e-mail, letters, telegrams, voicemail, facsimile, instant messages, memoranda, and any other transmission of information in any other form, both oral and written.

e. "Documents" mean all written, typed or printed matter and electronically stored information or other records or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, electronic mail, instant messages, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you.

f. "File" means any collections or group of documents maintained, held, stored or used together, including, without limitations, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

g. "Person" or "persons" mean all entities associated with you, including without limitation, all predecessors in interest, individuals, associates, groups, organizations, joint ventures, corporations, trusts, estates, partnerships and public agencies.

h. "Relating to" and "relate to" mean, without limitation embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the interrogatory.

i. The words "describe" and "identify" when referring to a person are defined to require that you set forth the following information:

(1.) Full Name;
(2.) Present or last known residential address;

(3.) Present or last known telephone number;
(4.) Present occupation, job title, employer, and employer's address;
(5.) Occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular interrogatory; and
(6.) In the case of any person other than an individual, identification of the officer, employee or agent most closely connected with the subject matter of that Interrogatory and of the officer who is responsible for supervising that officer or employee with regard to the subject matter of that Interrogatory.

j. The words "describe" and "identify" when referring to a document are defined to require that you set forth the following information:

(1.) The nature (e.g., letter, handwritten note) of the document;
(2.) The title or heading that appears on the document;
(3.) The date of the document and the date of each addendum, supplement or other addition or change;
(4.) Identification of the author and of the signer thereof, and of the person on whose behalf or at whose request or direction the document was prepared or delivered;
(5.) Identification of the addressee or recipient thereof, if any; and
(6.) The present locations of the document, and the name, address, position or title, and telephone number of the person or persons having custody.

k. The words "describe" and "identify" when referring to an event, occurrence, act, transaction or conversation are defined to require that you set forth the following information:

(1.) The date and place of such event;
(2.) The persons involved; and
(3.) Description of the event.

l. The words "supervisor" and "supervisory" refer to persons within Defendant's management hierarchy who were considered by the Defendant to be or have been Plaintiff's superior. This includes any individual from whom Plaintiff received direction or, guidance or, instruction or to whom Plaintiff reported her activities for evaluation, and those who were authorized by the Defendant to formally evaluate the quality of Plaintiff's performance, to recommend or decide questions of promotion, payment of bonuses, increases or decreases in compensation, and changes in job duties and responsibilities.

m. "Director" and "directors" refer to persons within Defendant's management hierarchy who were considered by the Defendant to be or

have been a comparable colleague of Plaintiff. This includes any individual who performed equal work compared to the Plaintiff and who required equal skill, effort, and responsibility, and whose work is performed under similar conditions.

n. The words "job description:" when referring to a job or position require that for each such description, in addition to an itemization of job duties, include any exceptional authority granted to the position and/or exercised by the person occupying the position, the level of supervisory authority he/she exercised, the rate of pay, the authority he/she had to hire, fire, or promote, or otherwise affect the terms and conditions of other employees including the Plaintiff, and the offices over which he/she had supervisory responsibility.

o. The word "compensation" shall mean base salary, bonus scheduled or unscheduled, incentive payments, retirement package, deferred compensation, money market or other saving or investment vehicles offered by Defendant, whether or not Defendant contributed to such offerings, or any other forms and methods of remuneration employed by the Defendant.

Where necessary, the above information shall be supplemented in sufficient detail to allow a determination that such document, when produced, is in fact the document so described.

## Instructions

1. Separately answer each part of each Interrogatory.

2. For each document or other requested information asserted to be privileged or otherwise excludable from discovery, identify that document or other requested information. State the specific basis for such claim of privilege or other ground for exclusion. For each such document, state the date of the document, the name, job title and address of the person who prepared it; the name, address, and job title of the person to whom it was addressed or circulated or who saw it; the name, job title and address of the person now in possession of the document; and, a description of the subject matter of the document.

3. For any requested document no longer in existence, or which cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located and the reasons therefore, and identify each person having knowledge concerning such disposition or loss and each document evidencing its prior existence and/or the fact concerning such document's nonexistence or loss.

4. Whenever you are requested to give specific information, such as a date or figure, and you cannot give the exact information, state that you cannot give the exact information and give your best estimate thereof.

5. In response to each interrogatory, identify each person who participated in the preparation of the response, including without limitation, all persons who drafted proposed or actual responses or who provided information or documents to be used in the preparation of responses, and identify and describe each file and each document consulted or referred to in the preparation of the answer.

6. Unless otherwise specified, each Interrogatory requires a continuing response, and you are requested to reasonably and promptly supplement or amend your responses to these Interrogatories based upon any and all information and documents obtained after filing such responses.

7. Capitalization or non-capitalization of defined terms is irrelevant.

8. The term "and" and the term "or" shall be construed either conjunctively or disjunctively, whichever shall render the discovery request more inclusive.

9. If you believe that any discovery request is overly broad or unduly vague you are instructed to respond to the discovery request and to indicate the limitation you have given to it and any definition you have given to obviate your objection.

10. References to masculine, feminine, or neutral gender shall be construed as either masculine, feminine, or neutral so as to render the discovery request meaningful.

11. Terms that are singular shall be construed as plural and terms that are plural shall be considered singular so as to render each discovery request as inclusive as possible.

12. The term "all" shall mean any and all or each and every, and shall be construed to render the discovery request as inclusive as possible.

**INTERROGATORIES**

1. Identify the person or persons answering or aiding in answering these Interrogatories.

2. Identify persons who have knowledge of Plaintiff's job performance, your practices regarding job evaluation, promotion, and discharges; meetings, conferences, or discussions where Murtagh-Cooke's interest in the 2004 opening

for the Director of the Office of Marine Safety position, and her desire to apply for that position were discussed; and the compensation, including fringe benefits, received by Murtagh-Cooke from 1994 through the present.

3. Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, including any claim for damages, and state the subject matter of the information possessed by that person.

4. Describe the basis for any contention by you that the jobs performed by Murtagh-Cooke and Bob Chipkevich the Director of the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"), during their mutual employment, did not involve substantially equal skill, equal effort, equal responsibility, and were not performed under similar working conditions.

5. Describe the basis for any contention by you that the jobs performed by Joe Osterman, the Director of the Office of Highway Safety ("OHS"), during their mutual employment, did not involve substantially equal skill, equal effort, equal responsibility, and were not performed under similar working conditions.

6. Describe the basis for any contention by you that the jobs performed by Bob Magladry, the Director of OHS did not involve substantially equal skill, equal effort, equal responsibility as the work performed by Ms. Murtagh-Cooke, and were not performed under similar working conditions as those by Ms. Murtagh Cooke.

7. Describe the basis for any contention by you that the jobs performed by male employees with SL status did not involve substantially equal skill, equal effort, equal responsibility as the work performed by Ms. Murtagh-Cooke, and were not performed under similar working conditions as those by Ms. Murtagh-Cooke.

8. Describe the basis for any contention by you that the jobs performed by John Spencer, the successor to Ms. Murtagh-Cooke and the Director of OMS did not involve substantially equal skill, equal effort, equal responsibility as the work performed by Ms. Murtagh-Cooke, and were not performed under similar working conditions as those by Ms. Murtagh-Cooke.

9. Identify persons who have knowledge of Plaintiff's job performance, your practices regarding job evaluation, promotion, and discharges; meetings, conferences, or discussions where Murtagh-Cooke's interest in the 2004 opening for the Director of the Office of Marine Safety position, and her desire to apply for that position were discussed; and the compensation, including fringe benefits, received by Murtagh-Cooke from 1994 through the present.

10. Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support

a position that you have taken or intend to take in this action, including any claim for damages, and state the subject matter of the information possessed by that person.

11. Describe Murtagh-Cooke's compensation arrangement, including but not limited to her salary, bonuses, health and dental benefit plan eligibility, retirement package, and any other employee benefits.

12. Describe the compensation arrangement, including but not limited to SES status, salary, bonuses, health and dental benefit plan eligibility, retirement package, and any other employee benefits of the Director of the Office of Highway Safety, the Director of Office of Railroad Safety, the Director of the Office of Pipelines and Hazardous Materials Safety, the Director of Aviation Safety, and other directors from 1997 to the present. Include if and when these compensation arrangements were changed.

13. Identify all of the NTSB positions that were granted SES status from 1997 to the present, if the positions became vacant due to that position acquiring SES status, if individuals who already held these positions had to re-apply and be re-interviewed for the position and identify which of these positions were identified as internal openings.

14. Describe the minimum work performed, skill, effort, responsibility and qualifications for the position of the Director of the Office of Marine Safety when that position was initially advertised in 2004 and filled in 2005 and after the position was filled.

15. For each director position, other than the Director of the Office of Marine Safety provide a job description, including the current minimum work performed, skill, effort, responsibility, and qualifications for the position of the director, and indicate whether, and how, those qualifications may have changed since 1997 to the present, and when those qualifications changed.

16. Identify all female employees who applied or attempted to apply for promotion or pay raise for any director position or any position identified as having SES status from 1997 to the present.

17. Identify all female employees who applied or attempted to apply for promotion or pay raise for any position identified as having SL status from 1997 to the present.

18. For any requested document no longer in existence, or which cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located and the reasons therefore, and identify each person having knowledge concerning such disposition or loss and each document evidencing its prior existence and/or the fact concerning such document's nonexistence or loss.

19. Identify any and all policies on creating and maintaining data backups performed on all computer systems currently or previously in use. Identify the following:

 a. All procedures and devices used to back up the software and the data, including but not limited to name(s) of backup software used, the frequency of the backup process, and type of tape backup drives, including name and version number, type of media (i.e. DLT, 4mm, 8mm, AIT). State the capacity (bytes) and total amount of information (gigabytes) stored on each tape.
 b. Describe the tape or backup rotation and explain how backup data is maintained and state whether the backups are full or incremental including all rotation schedules.
 c. State whether backup storage media is kept off-site or on-site. Include the location of such backup and a description of the process for archiving and retrieving on-site media.
 d. The individual(s) who conducts the backup and the individual who supervises this process.
 e. Provide a detailed list of all backup sets, regardless of the magnetic media on which they reside, showing current location, custodian, date of backup, a description of backup content and a full inventory of all archives.
 f. Identify all extra-routine backups applicable for any servers identified in response to these interrogatories, such as quarterly archival backup, yearly backup, etc. and identify the current location of any such backups.

20. Describe the basis for any denial by you in response to Plaintiff's First Set of Admissions.

Marjorie Murtagh Cooke
By Counsel

R. Scott Oswald, D.C. Bar #458859
Brian M. Lowinger
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Plaintiff Marjorie Murtagh-Cooke's First Requests for Production of Documents to Defendant United States of America, was served via electronic mail and U.S. mail, postage pre-paid this 6th day of March, 2007 upon:

Meredyth D. Cohen, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530
Phone: (202) 353-7978
Fax: (202) 514-8624
meredyth.cohen@usdoj.gov

Brian M. Lowinger

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARJORIE MURTAGH COOKE<br>v.<br><br>MARK ROSENKER, CHAIRMAN, NATIONAL TRANSPORTATION SAFETY BOARD, et al.<br><br>Defendant. | Case No. 1:06CV01928<br>Judge John D. Bates |

**PLAINTIFF MARJORIE MURTAGH-COOKE'S FIRST SET OF INTERROGATORIES TO DEFENDANT MARK ROSENKER, CHAIRMAN, NATIONAL TRANSFPORTATION SAFETY BOARD**

These Interrogatories are served pursuant to Rule 33 of the Federal Rules of Civil Procedure. You are requested to make answer within thirty (30) days after service.

Answer each Interrogatory separately, in writing and under oath. In answering the interrogatories, please furnish all information available to you, including information possessed by any agent, employee, or attorney representing you.

**Definitions**

For the purposes of these Interrogatories, the terms used herein shall have the following meanings unless the context requires otherwise:

a. "You," "Your," "Defendant," or "NTSB" means Defendant Mark Rosenker, Chairman, sued in his capacity as the Chairman of the National Transportation Safety Board ("NTSB"), the NTSB, and all other persons acting on behalf of Defendant.

b. "Murtagh-Cooke," or "Plaintiff" means Plaintiff Marjorie Murtagh-Cooke.

c. "Report" means any formal or informal reports resulting in investigation or disciplinary action by the Defendant regarding its employees.

d. "OMS" means NTSB's Office of Marine Safety.

e. "Report" means the written, oral, formal or informal communication by aggrieved individuals who contact the Defendant to notify it of sexual discrimination, sexual harassment, or retaliation for unequal pay for similarly situated employees, or any form of adverse action related to reporting sexual discrimination, or any other type of grievance.

d. "Communication" means all oral conversations, discussions, e-mail and/or "IM" messages, letters, telegrams, voicemail, facsimile, instant message, memoranda, and any other electronically stored information in any other form, both oral and written.

e. "Documents" mean all written, typed or printed matter, and electronically stored information, or other records or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, electronic mail, e-mail, IM messages, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you.

f. "File" means any collections or group of documents maintained, held, stored or used together, including, without limitations, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

g. "Person" or "persons" means all individuals, entities associated with you, including without limitation, all predecessors in interest, associates, groups, organizations, joint ventures, corporations, trusts, estates, partnerships and public agencies.

h. "Relating to" and "relate to" means, without limitation embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the interrogatory.

i. The words "describe" and "identify" when referring to a person are defined to require that you set forth the following information:

(1.) Full Name;
(2.) Present or last known residential address;
(3.) Present or last known telephone number;
(4.) Present occupation, job title, employer, and employer's address;
(5.) Occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular interrogatory; and
(6.) In the case of any person other than an individual, identification of the officer, employee or agent most closely connected with the subject matter of that Interrogatory and of the officer who is responsible for supervising that officer or employee with regard to the subject matter of that Interrogatory.

j. The words "describe" and "identify" when referring to a document are defined to require that you set forth the following information:

(1.) The nature (e.g., letter, handwritten note) of the document;
(2.) The title or heading that appears on the document;
(3.) The date of the document and the date of each addendum, supplement or other addition or change;
(4.) Identification of the author and of the signer thereof, and of the person on whose behalf or at whose request or direction the document was prepared or delivered;
(5.) Identification of the addressee or recipient thereof, if any; and
(6.) The present locations of the document, and the name, address, position or title, and telephone number of the person or persons having custody.

k. The words "describe" and "identify" when referring to an event, occurrence, act, transaction or conversation are defined to require that you set forth the following information:

(1.) The date and place of such event;
(2.) The persons involved; and
(3.) Description of the event.

l. The words "supervisor" and "supervisory" refer to persons within Defendant's management hierarchy who were considered by the Defendant to be or have been Plaintiff's superior. This includes any individual from whom Plaintiff received direction or, guidance or, instruction or to whom Plaintiff reported her activities for evaluation, and those who were authorized by the Defendant to formally evaluate the quality of Plaintiff's performance, to recommend or decide questions of promotion, payment of bonuses, increases or decreases in compensation, and changes in job duties and responsibilities.

m. "Director" and "directors" refer to persons within Defendant's management hierarchy who were considered by the Defendant to be or have been a comparable colleague of Plaintiff. This includes any individual who performed equal work compared to the Plaintiff and who required equal skill, effort, and responsibility, and whose work is performed under similar conditions.

n. "Job description:" for each such description, in addition to an itemization of job duties, include any exceptional authority granted to the position and/or exercised by the person occupying the position, the level of supervisory authority he/she exercised, the rate of pay, the authority he/she had to hire, fire, or promote, or otherwise affect the terms and conditions of other employees including the Plaintiff, and the offices over which he/she had supervisory responsibility.

o. The word "compensation" shall mean base salary, bonus scheduled or unscheduled, incentive payments, retirement package, deferred compensation, money market or other saving or investment vehicles offered by Defendant, whether or not Defendant contributed to such offerings, or any other forms and methods of remuneration employed by the Defendant.

Where necessary, the above information shall be supplemented in sufficient detail to allow a determination that such document, when produced, is in fact the document so described.

**Instructions**

1. Separately answer each part of each Interrogatory.

2. For each document or other requested information asserted to be privileged or otherwise excludable from discovery, identify that document or other requested information. State the specific basis for such claim of privilege or other ground for exclusion. For each such document, state the date of the document, the name, job title and address of the person who prepared it; the name, address, and job title of the person to whom it was addressed or circulated or who saw it; the name, job title and address of the person now in possession of the document; and, a description of the subject matter of the document.

3. For any requested document no longer in existence, or which cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located and the reasons therefore, and identify each person having knowledge concerning such disposition or loss and each document evidencing its prior existence and/or the fact concerning such document's nonexistence or loss.

4. Whenever you are requested to give specific information, such as a date or figure, and you cannot give the exact information, state that you cannot give the exact information and give your best estimate thereof.

5. In response to each interrogatory, identify each person who participated in the preparation of the response, including without limitation, all persons who drafted proposed or actual responses or who provided information or documents to be used in the preparation of responses, and identify and describe each file and each document consulted or referred to in the preparation of the answer.

6. Unless otherwise specified, each Interrogatory requires a continuing response, and you are requested to reasonably and promptly supplement or amend your responses to these Interrogatories based upon any and all information and documents obtained after filing such responses.

7. Capitalization or non-capitalization of defined terms is irrelevant.

8. The term "and" and the term "or" shall be construed either conjunctively or disjunctively, whichever shall render the discovery request more inclusive.

9. If you believe that any discovery request is overly broad or unduly vague you are instructed to respond to the discovery request and to indicate the limitation you have given to it and any definition you have given to obviate your objection.

10. References to masculine, feminine, or neutral gender shall be construed as either masculine, feminine, or neutral so as to render the discovery request meaningful.

11. Terms that are singular shall be construed as plural and terms that are plural shall be considered singular so as to render each discovery request as inclusive as possible.

12. The term "all" shall mean any and all or each and every, and shall be construed to render the discovery request as inclusive as possible.

**Interrogatories**

1. Describe the factual basis for each and every affirmative defense you allege in your Answer and Affirmative Defenses to Plaintiff's Amended Complaint.

2. Describe the basis for each and every denial you assert in response to Plaintiff's First Set of Requests for Admissions.

3. Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, including any claim for damages, and state the subject matter of the information possessed by that person.

4. Identify the date in 2004 when the review of applications and resumes for the position as Director of OMS was completed, the dates in 2004 when interviews begun and were completed, and when and why a decision was made not to fill the position.

5. Describe the basis for not granting Murtagh-Cooke an interview for the position of Director of the OMS from in or around 2004, and identify all documents and communications related to that decision.

6. Describe the criteria used to determine which applicants for the Director of OMS position were granted an interview for that position from in or around 2004 through in or around 2005.

7. Identify the individuals who reviewed resumes and candidates' qualifications, the individuals who determined whether to grant an individual an interview, the individuals who conducted interviews, and the individuals who determined who to appoint for the position of Director of the OMS from in or around 2004 through in or around 2005.

8. For the period of 2005, identify the deadline until when NTSB was accepting applications for the position of Director of OMS were posted, the deadline for when applications were to be submitted, the date(s) that interviews took place, the dates the results of the interviews were considered, and the date that NTSB decided to award the position to John Spencer.

9. Identify each individual who interviewed for the position of Director of OMS from in or around 2004 through in or around 2005, and describe the qualifications that each individual possessed for that position.

10. Describe the basis for not granting Murtagh-Cooke an interview for the position of Director of the OMS from in or around 2005, and identify all documents and communications related to that decision.

11. Describe the basis for not providing Murtagh-Cooke an evaluation for her work in 2004 and for her work in 2005.

12. Identify and describe all communications among or between NTSB employees, including, but not limited to supervisors, directors, managers, assistants, deputies, etc., concerning Murtagh-Cooke's April 2004 meeting with Chairman Engleman-Conners, and identify all documents that relate or pertain to those communications.

13. Identify and describe all efforts to remediate the conduct alleged in Murtagh-Cooke's April 2004 meeting with Chairman Engleman-Conners, and identify all documents and communications that relate or pertain to those efforts.

14. Identify and describe all communications among or between NTSB employees, including, but not limited to supervisors, directors, managers, assistants, deputies, etc., concerning Murtagh-Cooke's EEO complaint filed in February 2005, and identify all documents that relate or pertain to those communications.

15. Describe all efforts to remediate the conduct alleged in Murtagh-Cooke's EEO complaint that was filed in February 2005, and identify all documents and communications that relate or pertain to those efforts

16. Describe the disposition of any and all complaint(s) made to you by Murtagh-Cooke relating to your alleged discriminatory conduct, and explain the reason(s) for the disposition.

17. Identify all written or verbal reprimands, warnings, suspensions or other disciplinary measures given to Plaintiff since her date of hire, identify the date and nature of offenses and supervisor involved, and identify all documents that relate or pertain to those reprimands, warnings, suspensions or other disciplinary measures.

18. Identify and describe the communications between your directors, supervisors, and management officials had concerning Murtagh-Cooke's transfer to the Office of Safety Recommendations and Communication; when and where the conversations where held; who was present; and what was said, and identify all documents that relate or pertain to those communications.

19. Identify Murtagh-Cooke's title, provide a job description, and describe her responsibilities for the position in the Office of Safety Recommendations and Communication that Murtagh-Cooke was transferred to in 2005.

20. Identify and describe the communications between your directors, supervisors, deputies, assistants, employees, and management officials had concerning Murtagh- Cooke's transfer to the Office of the Managing Director; when and where the conversations where held; who was present; and what was said, and identify all documents that relate or pertain to those communications.

21. Identify Murtagh-Cooke's title, provide a job description, and describe her responsibilities for the position in the Office of Managing Director that Murtagh-Cooke was transferred to in 2005.

22. Identify and describe Defendant's data and document systems, including but not limited to Defendant's email system, SPAM, or other security or content filters, hardware configuration, software configuration, network configuration, server configuration, internet structure from 1997 to the present.

23. Identify and describe any and all policies on creating and maintaining backups of documents, including electronically stored information, and communications, performed on all computer systems currently or previously in use from 1997 to the present, including the following:

    a. All procedures and devices used to back up the software and the data, including but not limited to name(s) of backup software used, the frequency of the backup process, and type of tape backup drives, including name and version number, type of media (i.e. DLT, 4mm, 8mm, AIT). State the capacity (bytes) and total amount of information (gigabytes) stored on each tape.
    b. Describe the tape or backup rotation and explain how backup data is maintained and state whether the backups are full or incremental including all rotation schedules.
    c. Identify where backup storage media is kept. Include the location of such backup and a description of the process for archiving and retrieving on-site media.
    d. Identify the individual(s) who conducts the backup and the individual who supervises this process.
    e. Provide a detailed list of all backup sets, regardless of the magnetic media on which they reside, showing current location, custodian, date of backup, a description of backup content and a full inventory of all archives.
    f. Identify all extra-routine backups applicable for any servers identified in response to these interrogatories, such as quarterly archival backup, yearly backup, etc. and identify the current location of any such backups.

Marjorie Murtagh-Cooke
By Counsel

R. Scott Oswald, D.C. Bar #458859
Brian M. Lowinger, D.C. Bar # 472886
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing Plaintiff Marjorie Murtagh-Cooke's First Set of Interrogatories to Defendant Mark Rosenker, Chairman, National Transportation Safety Board, was served this 23rd day of March, 2007, via first-class mail, postage prepaid and e-mail, upon:

Quan K. Luong, Esq.
Special Assistant U.S. Attorney
U.S. Attorney's Office
Judiciary Center Building
555 4th Street, NW, Room E4417
Washington, DC 20530
quan.luong@usdoj.gov

Brian M. Lowinger