**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No. 06-748C** |
| | ) **Judge Thomas C. Wheeler** |
| **THE UNITED STATES OF AMERICA,** | ) |
| **Defendant.** | ) |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Plaintiff Marjorie Murtagh Cooke ("Plaintiff" or "Mrs. Murtagh Cooke"), by and through counsel and pursuant to Rule 56 of the Court of Federal Claims, hereby submits her Proposed Findings of Uncontroverted Fact.

The Following Facts Are Uncontroverted:

1. Defendant is the United States of America, in the persons of the National Transportation Safety Board ("NTSB"), and NTSB Chairman Mark Rosenker ("Rosenker"). *See* Ex. 1 Amended Complaint, ¶ 3 and Ex. 2 Answer, ¶ 3.

2. In 1994, Plaintiff was the Chief of the Marine Division, a unit under the NTSB's Office of Surface Transportation Safety. *See* Ex. 1 Amended Complaint, ¶ 5 and Ex. 2 Answer, ¶ 5.

3. Beginning in 1997, and ending in 1998, the NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS"). *See* Ex. 1 Amended Complaint, ¶ 6 and Ex. 2 Answer, ¶ 6.

4. Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status. The Director and Deputy Director of the Office of Surface Transportation Safety also had SES status. *See* Ex. 1 Amended Complaint, ¶ 7 and Ex. 2 Answer, ¶ 7.

5. The core functions required for the Director of OMS, OHS, OAS and ORPH were all the same. *See* Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2f at 1.

6. Each modal office director was responsible for ordering an investigation into the facts, conditions, and circumstances of accidents that the Board has the authority to investigate. *See* Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2f at 1.

7. Each modal office director was responsible to disclose factual information pertinent to all accidents or incidents as provided for in part 801 of 49 CFR Ch. VIII. *See* Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2f at 1.

8. Each modal office director was responsible to determine the probable causes of accidents. *See* Ex. 3 EEO Investigative Report Produced by Defendant F2f at 1.

9. Each modal office director was responsible to investigate accidents as provided under Sec. 304(a) of the Independent Safety Board Act of 1974 as amended (49 U.S.C. 1131(a)). *See* Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2f at 1.

10. In 1997, as the result of a restructuring, Plaintiff was named the Director of OMS. *See* Ex. 1 Amended Complaint, ¶ 9 and Ex. 2 Answer, ¶ 9.

11. 1999 the Agency requested OPM authorize SES slots for all the Modal Office Directors. *See* Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F3 at 2.

12. After the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"). Bob Chipkevich ("Chipkevich") became the Director of ORPH. *See* Ex. 1 Amended Complaint, ¶ 10 and Ex. 2 Answer, ¶ 10.

13. In early 2003, the NTSB was once again reviewing an available SES slot. This SES slot went to Joe Osterman ("Osterman"), the Director of OHS. After Osterman was awarded the SES slot, Plaintiff became the only Director of the four modal safety offices without SES status. *See* Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F3 at 3.

14. Plaintiff was paid significantly less than her male counterparts, John Clark ("Clark"), who was the new Director of OAS, Osterman and Chipkevich. *See* Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2i.

15. Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872 and Chipkevich received a salary of $142,022, Plaintiff received a salary of $121,583. Currently John Spencer ("Spencer"), the new OMS Director, who replaced Plaintiff, is paid at the SES level for performing equal work to that of Plaintiff. *See* Ex. 1 Amended Complaint, ¶ 17, Ex. 2 Answer, ¶ 17.

16. In addition, in 2004, while Clark received a salary of $142,022, Osterman received a salary of $140,797 and Chipkevich received a salary of $142,022, Plaintiff received a salary of $126,963. *See* Ex. 1 Amended Complaint, ¶ 18, Ex. 2 Answer, ¶ 18.

17. Plaintiff has requested and is awaiting Defendant's disclosure of the 2005 NTSB salary and monetary award compensation for Clark, Osterman and Chipkevich. *See* Ex. 11 ¶ 5 and Ex. 12 ¶ 2.

18. Plaintiff received lower monetary awards than her male counterparts, Clark, Osterman and Chipkevich. Specifically, in 2003, while Clark received an award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Plaintiff received an award of $5,400. And in 2004, while Clark received an award of $17, 000, Osterman received an award of $9,500, and Chipkevich received an award of $16,000, Plaintiff received an award of $3,400. *See* Ex. 1 Amended Complaint, ¶ 20 and ¶21, Ex. 2 Answer, ¶ 20 and ¶ 21.

19. As the Director of the Office of Highway Safety, Osterman had virtually the same duties and responsibilities as Plaintiff when she was the director of OMS. *See* Ex. 4 Osterman Deposition at 74-85.

20. Both Osterman's position at OHS and Plaintiff's position at OMS had the virtually the same job description as follows:

- Planned, managed and evaluated the work of the OHS. See Ex. 4 Osterman Deposition at 74; Exhibit 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 1;
- Exercised important policy making and policy determining decision that impacted highway safety at international organizations, federal agencies, and international and domestic industries. See Ex. 4 Osterman Deposition at 74; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 1;
- Provided for overall direction and technical accuracy of the investigation and reporting process for major highway safety accidents. See Ex. 4 Osterman Deposition at 75; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 1.

- Developed overall requirements and schedules to accomplish the highway safety program. See Ex. 4 Osterman Deposition at 75; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 1.
- Reviewed, approved and promulgated schedules and milestones for assigned activities. See Ex. 4 Osterman Deposition at 75; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 1.
- Reviewed, evaluated and approved, disapproved or modified requests for changes to milestones in schedules. See Ex. 4 Osterman Deposition at 75; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 1.
- Developed overall program review documentation and provided status reports on a regular basis. See Osterman Deposition at 75; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 1.
- Determined the level of response and resources allocation for the NTSB highway safety program. See Ex. 4 Osterman Deposition at 75; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 1.
- Notified NTSB's chairman and managing director, federal and international agencies and managing director of the accident. See Ex. 4 Osterman Deposition at 76; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 1-2.
- Notified foreign embassies and/or flag representatives as appropriate. See Ex. 4 Osterman Deposition at 77; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Coordinated the allocation of staff resources with other office directors involved in the investigation. See Ex. 4 Osterman Deposition at 76; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Resolved differences between modal and support staff views regarding accident investigation, scope, required resources and analysis. See Ex. 4 Osterman Deposition at 77; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Ensured through the completed and comprehensive review of the draft report that essential issues were adequately addressed. See Ex. 4 Osterman Deposition at 77 -78; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Ensured reviewed of the draft report that all findings and recommendations are supported by analysis and that the board and that the draft sent forward is of the best quality. See Ex. 4 Osterman Deposition at 78; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Ensured the proper presentation of the draft report before the board at board hearings. See Ex. 4 Osterman Deposition at 78; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Reviewed work product of other modal and support offices. See Ex. 4 Osterman Deposition at 76. See Ex. 4 Osterman Deposition at 78; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Ensured that the quality is commensurate, the quality of work product of other modal and support offices is commensurate with NTSB standards to promote success of NTSB highway safety program, including investigations, reports, safety

recommendations and highway safety advocacy. See Ex. 4 Osterman Deposition at 78-79; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Established and maintained liaison with international and domestic industry, safety groups, labor organizations, associations, societies, Congress, and Federal regulators. See Ex. 4 Osterman Deposition at 79; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Provided authoritative advice and expertise to these groups in the development of industry standards and regulations and new applications of existing technology. See Ex. 4 Osterman Deposition at 80; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Provided Congressional testimony. See Ex. 4 Osterman Deposition at 80; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Participated in international meetings on highway safety issues as a representative of the NTSB. See Ex. 4 Osterman Deposition at 81; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Developed and justified estimates for staff resources requirements including personnel funding, equipment, and office, space. See Ex. 4 Osterman Deposition at 81; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Justified and defended budgets on all levels of management. See Ex. 4 Osterman Deposition at 81; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Implemented concepts to get results through people and make selections assign work, train and reward employees. See Ex. 4 Osterman Deposition at 81; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Corrected poor performance in a manner that maximizes the use of staff skills and achieving organizational skills. See Ex. 4 Osterman Deposition at 82; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Monitored work status through formal and informal means and procedures. See Ex. 4 Osterman Deposition at 82; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Ensured appropriate results are achieved and that OHS's policies and priorities are effectively understood and communicated. See Ex. 4 Osterman Deposition at 82; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Responsible for the creation and maintenance of an atmosphere that promotes positive human relations and open communications between employees and their supervisors. See Ex. 4 Osterman Deposition at 82; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Ensure that employees are given real and continuing opportunity to influence their work environment and ensure that employees are given a real and continuing opportunity to be able to participate in discussions related to methods of work accomplishments. See Ex. 4 Osterman Deposition at 83; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Ensured reasonable equity within OHS of performance standards and rating techniques developed by subordinates and ensure equity in the subordinates'

assessment of the adequacy of contractor capabilities and contractor completed work. See Ex. 4 Osterman Deposition at 83; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Evaluate subordinate supervisors and senior nonsupervisory managers and serve as the reviewing official in evaluation of nonsupervisory employees rated by subordinate supervisors. See Ex. 4 Osterman Deposition at 83-84; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Evaluated program accomplishments and their overall effectiveness. See Ex. 4 Osterman Deposition at 84; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Identified program problem areas and solicit from the division chiefs and senior technical staff their recommendations concerning alternative courses or corrective actions as needed. See Ex. 4 Osterman Deposition at 84; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Worked closely with human resources in approving their recruitment, placement and retention of a high quality OHS work force. See Ex. 4 Osterman Deposition at 84; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Ensured that crucial training courses needed to keep pace with today's technological improvements in highway transportation safety are provided to staff for their technical and operational currency. See Ex. 4 Osterman Deposition at 84; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.

- Ensured crucial training sessions needed to keep pace with today's technological improvements in highway transportation safety are provided to the staff for their technical and operational currency. See Ex. 4 Osterman Deposition at 84; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Provide effective management training to maintain a highway motivated and cohesive force. See Ex. 4 Osterman Deposition at 85; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Relate equal employment opportunity concepts to overall responsibilities. See Ex. 4 Osterman Deposition at 85; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Support affirmative action plan while performing assigned responsibilities. See Ex. 4 Osterman Deposition at 85; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 2.
- Available 24 hours a day 7 days a week. See Ex. 4 Osterman Deposition at 85.
- Support board members, agency initiatives, and meetings with regard to agency staff awards. See Ex. 4 Osterman Deposition at 86; Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F2d at 4.

21. The skills required for the Director of OAS, OMS, ORPH and OHS were all virtually identical. Those skills included, essentially, technical expertise in their transportation mode; knowledge of, and expertise in, accident investigation processes and procedures from the investigation stage through report completion, leadership and supervisory skills; logic and analytical process skills; a fundamental knowledge of their respective modal

industries; the ability to communicate both written and orally and to coordinate and collaborate with other professionals both internally within the NTSB and externally as part of the investigations or other advocacy work for each respective office. *See* Ex. 5 30(b)(6) Deposition 39-48 and 49-50.

22. The efforts required for the Director of OAS, OMS, ORPH and OHS were all virtually identical. Those efforts included: effectively managing large volumes of information related to accident investigation; assessing and evaluating issues; evaluating resources necessary and available; juggling multiple priorities; dealing with contingencies and uniqueness of each investigation; decision making; supervising and evaluating staff both in the office and in the field; providing support and essential information for internal personnel including Board members, the Managing Director and other executives and managerial staff, supervisors, investigators, report writers, and administrative personnel and external personnel including the transportation mode regulator (e.g. FAA and USCG), party representatives (e.g. Cruise ship owners) Congressional staff, and, in the case of international/foreign investigations, State Department and foreign government officials, and in the case of public/non public investigations, Department of Defense officials; developing, establishing, and assuring fulfillment through supervision and oversight of multiple processes for accident investigation from accident/incident notification through report development; reviewing, assessing, and writing justifications for the agency's plans, goals and objectives to fulfill its mission, communication of results, collaboration with internal and external professionals; complying with all rules, regulations, and guidelines that apply to human and monetary resource management; and conducting business on a year round 24 hour/ 7 day schedule. *See* Ex. 4 Osterman Deposition 74-86 and Ex. 5 30(b)(6) Deposition 77-80.

23. The responsibilities required for the Director of OAS, OMS, ORPH and OHS were all virtually identical. Those skills include but are not limited to managing a major modal program for the agency which included: conducting accident investigations to determine their cause and preparing justifications for safety recommendations to prevent accident repetition in the future; overseeing the analysis, development and preparation of detailed reports and proposing probable cause determinations of major and field accidents and incidents; preparing accident investigation reports in a timely manner; preparing Special Investigations, responses to proposed rulemakings, responses to requests for technical support, and Public Hearings. *See* Ex. 6 Clark Deposition 60-75, Ex. 4 Osterman Deposition 74-86, Ex. 5 30(b)(6) Deposition 77-81, 98-100 and 114-119. Additionally, the list of responsibilities included management responsibilities related to internal and external communications (e.g. keeping the Chairman, other Board members, the Managing Director, other agency executives and managers, party representatives and Congressional members and staff, informed either verbally and/or in writing.) human resources (e.g. managing modal professionals, recruiting and hiring personnel, supervising, training and tracking career goals and progression, developing performance standards and evaluating personnel; tracking leave and overtime); budget management (e.g. exercising budget authority, using funds for training, travel, overtime, and on-scene investigation support); project tracking and quality control of all Modal Office products. *See* Ex. 6 Clark Deposition 60-75 and Ex. 5 30(b)(6) Deposition 77-80.

24. Plaintiff performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of ORPH and Osterman performed his work as Director of OHS. Each worked primarily in an

office environment using electronic devices, computers and telephones for communication. The critical nature of each Director's work requires him/her to be available 24 hours a day/ seven days a week (24/7) in case of an accident that requires an investigation. Each Office Director was expected to deal effectively with the pressure of accident launches, the on-scene investigation phase including coordination and collaboration with internal and external staff, subsequent analysis and report preparation stage, preparation of written and oral communications and presentation to the Board and to the public. Each director reported directly to the Managing Director, their second level supervisor was the Chairman. Each of the Office Directors was relatively independent to do their work. *See* Ex. 4 Osterman Deposition 74-86 and Ex. 5 30(b)(6) Deposition 80-82 and 130-131.

25. When asked if the duties of the modal office directors are identical, and require the same skill, effort and responsibility under the same working conditions, Ellen Engleman Conners, former Chairman of the NTSB, and ultimately responsible for all modal directors, responded under oath stating "I agree". *See* Ex. 3 EEO Investigative Report Produced by Defendant Exhibit F4 at 2.

26. In July 2004, and in early 2005, NTSB advertised Plaintiff's position for SES status. Each time, Plaintiff submitted an application for the position. In May 2005, NTSB's Managing Director notified Plaintiff of her non-selection for the same position that she performed since 1997. Shortly thereafter, in June 2005, NTSB transferred Plaintiff to the Office of Safety Recommendation and Communication. Plaintiff later retired. *See* Ex. 1 Amended Complaint, ¶ 34, 36, 41, 44, and 45; Ex. 2 Answer, ¶ 34, 36, 41, 44, and 45**.**

27. On April 28, 2006, Plaintiff filed a complaint in the United States District Court for the District of Columbia against Defendant, asserting claims for violations of the

Equal Pay Act, 29 U.S.C. § 206(d) and the retaliation provision contained in the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). *See* Ex. 7**.**

28. On October 26, 2006, the District Court transferred the Equal Pay Act claim to this Court. On November 9, 2006, this Court accepted for filing the case as transferred from the District Court. *See* Ex. 8 and Ex**.** 9.

29. On January 8, 2007, Defendant filed an Answer to the Complaint, which contained no affirmative defenses. *See* Ex. 2 Answer and Ex. 10, ¶ 6.

Respectfully Submitted,
By Counsel

_____/s/ Brian M. Lowinger_______
R. Scott Oswald
Brian M. Lowinger
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
blowinger@employmentlawgroup.net
*Counsel for Plaintiff*