Plaintiff objects to this Interrogatory based on the general objections above and on the grounds that it is overbroad, unduly vague and burdensome. Subject to and without waiving any objection, Plaintiff states the effort(s) required for OAS, OMS, ORPH and OHS were all similar. The list of efforts included but were not limited to those involved with each of the responsibilities cited in Interrogatories 1, 6 and 10: effectively managing large volumes of information related to accident investigation; assessing and evaluating issues; evaluating resources necessary and available; juggling multiple priorities; dealing with contingencies and uniqueness of each investigation; decision making, including under pressure; supervising and evaluating staff both in the office and in the field; providing support and essential information for internal personnel including Board members, the Managing Director and other executives and managerial staff , supervisors, investigators, report writers, and administrative personnel and external personnel including the transportation mode regulator (e.g. FAA and USCG), Party representatives (e.g. Cruise ship owners) Congressional staff, and, in the case of international/foreign investigations, State Department and foreign government officials, and in the case of public/non public investigations, Department of Defense officials; developing, establishing, and assuring fulfillment through supervision and oversight of multiple processes for accident investigation from accident/incident notification through report development; reviewing, assessing, and writing justifications for the agency's plans, goals and objectives to fulfill its mission, communication of results, collaboration with internal and external professionals; complying with all rules, regulations, and guidelines that apply to human and monetary resource management; and conducting business on a year round 24 hour/ 7 day schedule.

Plaintiff reserves the right to modify, amend or supplement her responses to this Interrogatory accordingly.

**Interrogatory No. 10**

For each employee you identified in response to Interrogatory No. 5, provide a detailed description of the same or similar responsibilities required for that employee's position as compared to the responsibilities required for your position as the Director of OMS.

**Plaintiff's Answer to Interrogatory No. 10:** Plaintiff objects to this Interrogatory based on the general objections above and on the grounds that it is overbroad, unduly vague and burdensome. Subject to and without waiving any objection, Plaintiff states the responsibilities(s) required for OAS, OMS, ORPH and OHS were all similar. Each Modal Office Director and, where applicable, Haueter, was responsible for managing a major modal program for the agency: conducting accident investigations to determine their cause and preparing justifications for safety recommendations to prevent accident repetition in the future; overseeing the analysis, development and preparation of detailed reports and proposing probable cause determinations of major and field accidents and incidents; preparing accident investigation reports in a timely manner; preparing Special Investigations, responses to proposed rulemakings, responses to requests for technical support, and Public Hearings. Each Modal Office Director, and, where applicable, Haueter, was responsible for "getting it right." The impact of each investigation, report, probable cause determination, and safety recommendations was of such a high profile, with serious implications for every aspect of the public's safety and the modal industry's corporate health that not "getting it right" was not an option.

Each Modal Director and, where applicable, Haueter was also responsible for exercising his/her delegated authority to determine the probable cause of selected accidents. This unique authority was delegated by the Board only to the Modal Office Directors.

OAS and OMS also conduct international investigations, and represent the United States and NTSB at United Nations conferences. OMS was also responsible for preparing international

accident investigation reports. OAS and OMS were each responsible for comparable accident investigation and report preparation for military/public accidents. OMS was additionally responsible for assuring that standing subpoena authority, which was issued only to OMS investigators, was judiciously and effectively exercised. Moreover, Plaintiff carried out the duties and responsibilities of MacIntosh, including the coordinating responses to international accidents, participating in international non-governmental organizations, working with other federal agencies, international coordination work, and maintaining liaison with the international transportation industry.

Additionally, the list of responsibilities included but was not limited to management responsibilities related to internal and external communications (e.g. keeping the Chairman, other Board members, the Managing Director, other agency executives and managers, Party representatives and Congressional members and staff, informed either verbally and/or in writing.) human resources (e.g. managing modal professionals, recruiting and hiring personnel, supervising, training and tracking career goals and progression, developing performance standards and evaluating personnel; tracking leave and overtime); budget management (e.g. exercising budget authority, using funds for training, travel, overtime, and on-scene investigation support); project tracking and quality control of all Modal Office products.

Plaintiff reserves the right to modify, amend or supplement her responses to this Interrogatory accordingly.

**Interrogatory No. 11**

For each employee you identified in response to Interrogatory No. 5, provide a detailed description of the same or similar working conditions required for that employee's position as compared to the working conditions required for your position as the Director of OMS.

**Plaintiff's Answer to Interrogatory No. 11:** Plaintiff objects to this Interrogatory based

on the above general objections, and on the grounds that it is overbroad, unduly vague, and burdensome. Subject to and without waiving the objections, Plaintiff states that the working conditions required for Osterman, Haueter, MacIntosh, Chipkevich, Spencer, and Clark were all the same or similar. Each worked primarily in an office environment using electronic devices, computers and telephones for communication. The critical nature of each Director's work requires him/her to be available 24 hours a day; seven days a week in case of an accident that requires an investigation. Each Office Director was expected to deal effectively with the pressure of accident launches, the on-scene investigation phase including coordination and collaboration with internal and external staff, subsequent analysis and report preparation stage, preparation of written and oral communications and presentation to the Board and to the public.

With the exception of Haueter who reported to Clark, each Director reported directly to the Managing Director; their second level supervisor was the Chairman. Each of the Office Directors was relatively independent to do their work, which encompassed each of the items cited in Plaintiff's Answer to Interrogatories 7, 8, 9 and 10.

Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

**Interrogatory No. 12**

For each employee you identified in response to Interrogatory No. 5, identify all NTSB officials or employees who you contend were responsible for setting his rate of pay during the time period of your tenure as the Director of OMS.

**Plaintiff's Answer to Interrogatory No. 12:** Plaintiff objects to this Interrogatory based on the general objections above, and on the grounds that it is overbroad, unduly vague as it is unclear what is meant by "officials." Subject to and without waiving this General and aforementioned objections, Plaintiff states that she believes the financial compensation,

including the pay classifications, pay rates and awards for modal office directors is determined by the NTSB Chairman, in consultation with the managing director.

Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

**Interrogatory No. 13**

Identify all NTSB officials or employees who you contend were responsible for setting your rate of pay during your tenure as the Director of OMS. Include in your response what you contend you should have been paid during your tenure as the Director of OMS and every fact you rely upon to support this contention.

**Plaintiff's Answer to Interrogatory No. 13:** Plaintiff objects to this Interrogatory based on the general objections above, and on the basis that it is vague. Subject to and without waiving any objection Plaintiff incorporates her response to Interrogatory No. 12 and refers to Dan Campbell and Ellen Engleman Conners. Plaintiff also states that she should have been paid and compensated the same as the other male comparators, however that should be accomplished through the rules pertaining to civil servant employees, e.g. through awards, by providing SES status to the OMS position when SES slots became available, by using an SL position, as they had in the past to compensate other senior level employees, for pay over the GS-15 salary level, by providing overtime to reflect the work she did as director which was similar to her male counter parts that were being paid more for doing work that required the same skills, effort and responsibilities, bonuses and awards, or any other appropriate mechanism. Plaintiff refers Defendant to her expert witness's report pursuant to Rule 26(a)(2). Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

**Interrogatory No. 14**

Describe and identify each and every conversation (oral or written) you had with any NTSB employees or officials regarding your compensation, including, but not limited to, your allegations of unequal pay. For each oral or written communication you had, include in your response the date oral or written communication occurred, a detailed description of the oral or written communication, and who, if anyone, saw the communication (if written), or heard the communication (if oral).

**Plaintiff's Answer to Defendant's Interrogatory No. 14:** Plaintiff objects to this Interrogatory based on the general objections above, and on the grounds that it is overbroad, unduly vague and calls for information that is protected by the attorney-client privilege and/or work product doctrine and that was prepared in anticipation of litigation. Subject to and without waiving this objection Plaintiff states that the following individuals, and those that they would have communicated with about Plaintiff's concerns, were aware of Plaintiff's compensation and unequal pay based on the investigation to her EEO complaint and their position as managers and human resources officers with access to this information, plaintiff also incorporates all previous interrogatories in her answer to this interrogatory:

1. Chester Fisher after February of 2005 - NTSB EEO counselor with whom plaintiff communicated about unequal pay and other discriminatory practices at the NTSB.
2. Collette Magwood – former Assistant Director of Human Resources with whom Plaintiff spoke, beginning in April of 2004, regarding her compensation and unequal pay. Lisa Love was present. (301) 713-6364. Colette.Magwood@noaa.gov.
3. Gary Halbert – NTSB General Counsel with whom Plaintiff spoke in the early part of 2006. Halbert has knowledge of the basis for Plaintiff's equal pay and discrimination claim.

4. Ellen Engleman Connors, former Chairman, NTSB, with whom Plaintiff spoke on April 9, 2004, at the meeting in which she requested equal pay. Federal Communications Commission, 445 12th Street SW, Washington, DC 20554.
5. David Clark, Special Assistant to Ellen Engleman Connors, was present at the meeting with Ellen Engleman Conners on April 9, 2004, during which Plaintiff notified Englemen Conners of the lack of Equal Pay.
6. Daniel Campbell, Managing Director, NTSB, with whom Plaintiff spoke in 2003 and 2004 regarding the disparity in pay between Plaintiff and her male counterparts. Joe Osterman was present.
7. Lisa Love, Director, Human Resources Division, with whom Plaintiff spoke as early as 2003 and throughout 2004 regarding her unequal pay. In follow-up to the meeting with Englemen Conners, Plaintiff met with Lisa Love and Colette Magwood regarding the possibility of obtaining overtime pay and the re-advertisement of the OMS Director position at the SES level.
8. Fara Guest, EEO Officer, in 2003 and throughout 2004 and 2005 regarding Plaintiff's unequal pay.
9. Joe Osterman, former Director, OHS and current Managing Director, NTSB. Osterman shared Plaintiff's concerns regarding pay for comparable work. Plaintiff met with Campbell on several occasions prior to 2004 to discuss the inequity of her situation. During one such meeting with Campbell and Osterman, Osterman raised the issue of pay for doing the same job as Clark and Chipkevitch. Campbell said that they were requesting SES positions. Osterman stated he didn't care about being an SES; it was the money he was concerned with. Plaintiff concurred with Osterman. Campbell indicated he understood. Plaintiff also

spoke to Osterman shortly after the recruitment closed for the SES – OHS Director Position. Osterman stated that he had been promised the position but agreed that OMS was also an SES level position.

10. Ron Battocchi, former General Counsel, NTSB with whom Plaintiff spoke on January 3 of 2005. 5900 Fourth Road North, Arlington, VA 22203.
11. Carol Carmody – Former Member of the Board, former acting chairman of the Board, in 2005. Spoke with Plaintiff regarding treatment of Plaintiff at the agency. Telephone number: (202) 686-5579.
12. Julie Beale. 981 Bay Dr., Deale, MD 20751. Spoke with Plaintiff at various times from 2003 to 2006 regarding her lack of equity with her male counterparts. Spoke with Plaintiff in 2005 regarding her status at NTSB.
13. Bruce Magladry, current Director, OHS. Spoke with Plaintiff in 2005 when he was serving as the Acting Director, OHS and complained that he was not being paid as an SES. Plaintiff told him "welcome to the club".
14. Barry Strauch, currently an NTSB employee in OMS. Spoke with Plaintiff in 2004 regarding his desire to become an SES employee and seeking Plaintiff's advice. Plaintiff clarified her status as a non-SES and non-SES earning employee.
15. Don Tyrrell, retired from OMS and NTSB. Telephone number 703-670-8851. Spoke with Plaintiff in 2005 regarding her status.
16. Jim Scheffer, current manager in OMS. Spoke with Plaintiff in 2005 regarding her status.
17. Chris Julius, current manager in OMS. Spoke with Plaintiff in the 2003 – 2004 time periods during the Staten Island Ferry accident investigation, when he

referred to her as an SES employee. Plaintiff clarified her status as a non-SES and non-SES earning employee.

Plaintiff incorporates responses to Interrogatories 3 and 4.

All responsive documents were produced with Plaintiff's initial disclosures.

Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

**Interrogatory No. 15**

Identify each and every fact to support any contention by you that the position of Director of OMS should have been an SES-level position.

**Plaintiff's Answer to Interrogatory No. 15:** Plaintiff objects to this Interrogatory on the on the general objections above, and grounds that it is overbroad, unduly vague and calls for information that is protected by the attorney-client privilege and/or work product doctrine and that was prepared in anticipation of litigation.

Subject to and without waiving any objections herein, Plaintiff states that Dan Campbell's letter dated July 17, 2001 to the Office of Personal Management also explains why the OMS director position should be an SES level position. See also the affidavit of Ellen Engleman Conners. The documents are contained in the EEOC Investigative Report produced by Defendant. See also the July 18, 2003 letter by Mr. Campbell to the Office of Personnel Management asserting the basis for making the OMS director position an SES level position. Further, numerous SES slots have been allocated to NTSB since 1998 and the agency decided not to designate the slot to the Office of Marine Safety for unclear reasons. See also the Senior Executive Service Chart included with the documents that are contained in the EEOC Investigative Report produced by Defendant.

Plaintiff hereby incorporates her response to Interrogatories 2, 5, 6, 7, 8, 9, 10, and 11.

Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

**Interrogatory No. 16**

Identify each and every fact to support any contention by you that the position of Director of OMS should have become an SES-level position prior to the positions of Director of ORPH or Director of OHS.

**Plaintiff's Answer to Interrogatory No. 16:** Plaintiff objects to this Interrogatory based on the general objections above. Subject to and without waiving the objections, Plaintiff states that information related to 2000, when ORPH was awarded SES status has not yet been produced by Defendant. However, with regard to OHS, The Safety Board had additional SES slots available several years earlier than the 2004 announcement for an SES Director. NTSB chose to assign them to new positions rather than to the OMS. See the Senior Executive Service Chart included with the documents that are contained in the EEOC Investigative Report produced by Defendant. Subject to and without waiving any objections herein, Plaintiff states that Dan Campbell's letter dated July 17, 2001 to the Office of Personal Management also explains why the OMS director position should be an SES level position. See also the affidavit of Ellen Engleman Conners. The documents are contained in the EEOC Investigative Report produced by Defendant. See also the July 18, 2003 letter by Mr. Campbell to the Office of Personnel Management asserting the basis for making the OMS director position should be an SES level position.

Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

**Interrogatory No. 17**

Identify each and every fact to support any contention by you that the NTSB could or should have promoted you to SL or provided you with overtime pay.

__Plaintiff's Answer to Interrogatory No. 17:__ Plaintiff objects to this Interrogatory based on the general objections above, and on the grounds that it is overbroad, unduly vague and calls for information that is protected by the attorney-client privilege and/or work product doctrine and that was prepared in anticipation of litigation. Plaintiff further objects because these are two separate interrogatories that are not related and should be counted as such. Subject to and without waiving this objection Plaintiff incorporates her responses all of her previous interrogatories in this answer.

Subsequent to meeting with Ellen Engleman Conners in April 2004, Plaintiff met with Lisa Love in Human Resources who verified that Plaintiff was eligible for overtime. Moreover, as noted in her affidavit to the EEOC, Engleman Conners refused to meet with Plaintiff regarding this issue. Additionally, plaintiff was eligible for overtime based on 5 U.S.C. § 5547 (a) and 5 CFR § 550 et seq. Support for the matters addressed in this paragraph have been provided in Plaintiff's initial disclosures and in the EEOC Investigative Report produced to Plaintiff by Defendant.

The agency had used the 'SL' position in the past to compensate GS-15's for compensation above the GS-15 level. Moreover, the agency had discretion to seek and determine the qualifications for the SL position. See 5 C.F.R. §§ 319.301-02. This position is further supported by NTSB's Merit Systems Plan, which Defendant produced to Plaintiff. Plaintiff's extensive naval architecture background, ship-based experience, extensive accident investigation experience, negotiating and international experiences, and other key experiences qualified her for a SL slot. Further, Osterman even suggested it in 2005.

Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

**Interrogatory No. 18**

Identify each and every fact to support your contention in paragraph 12 of the complaint that Dan Campbell suggested to James Hall that Robert Chipkevich "be given the SES slot because Chipkevich supposedly had the most seniority of the three directors and because ORPH was the most complex of the three offices."

**Plaintiff's Answer to Interrogatory No. 18:**

Plaintiff states see Dan Campbell's signed affidavit page 2 of 8 of the EEOC Investigative Report, which defendant produced for Plaintiff.

Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatories accordingly.

**Interrogatory No. 19**

Identify all NTSB officials and employees who you contend were responsible for allocating available SES slots between 2000 and 2006.

**Plaintiff's Answer to Interrogatory No. 19:** Plaintiff objects to this Interrogatory based on the general objections above and on the grounds that it is overbroad, unduly vague and calls for information that is protected by the attorney-client privilege and/or work product doctrine and that was prepared in anticipation of litigation. Subject to and without waiving this objection Plaintiff states that the NTSB Chairman, in consultation with the managing director, and employees in the office of human resources, were responsible for allocating available SES slots between 2000 and 20006. Additionally, Plaintiff incorporates her response to Interrogatory No. 15.

Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

**Interrogatory No. 20**

Identify each and every investigative report completed by OMS from 2000-2004.

**Plaintiff's Answer to Interrogatory No. 20:** Plaintiff objects to this Interrogatory based on the general objections above and based on the grounds that it is overbroad, unduly vague, and burdensome. For example, it is unclear what is meant by "investigative report" and "completed." Further, only some of the information is publicly available, while other information, which is not accounted for below, is not.

Subject to and without waiving the General and this aforementioned objection, Plaintiff states that she does not have access to the Board's intranet or notation files to properly respond to this question. This is the subject of a Discovery request from Plaintiff. Plaintiff further states as follows:

- **Title:** Marine Accident Report: Fire On Board U.S. Small Passenger Vessel Express Shuttle II, Pithlachascotee River Near Port Richey, Florida, October 17, 2004 **NTSB Report Number:** MAR-06-02, adopted on 4/4/2006

- **Title:** Marine Accident Report: Capsizing of U.S. Small Passenger Vessel Lady D, Northwest Harbor, Baltimore, Maryland, March 6, 2004 **NTSB Report Number:** MAR-06-01, adopted on 3/7/2006

- **Title:** Sinking of Uninspected Small Passenger Vessel *Sydney Mae II* in Pacific Ocean at Entrance to Winchester Bay, Oregon, September 19, 2005 **NTSB Report Number:** MAB-05-04, adopted on 12/15/2005

- **Title:** Heavy-Weather Damage to Bahamas-Flag Passenger Vessel *Norwegian Dawn*, Atlantic Ocean, 120 Miles East of Charleston, South Carolina, April 16, 2005 **NTSB Report Number:** MAB-05-03, adopted on 11/30/2005

- **Title:** Grounding of the Alaska Marine Highway System Ferry *LeConte* Near Sitka, Alaska, May 10, 2004 **NTSB Report Number:** MAB-05-02, adopted on 7/28/2005

- **Title:** Collision between the U.S. Navy Submarine USS *Greeneville* and Japanese Motor Vessel *Ehime Maru* Near Oahu, Hawaii, February 9, 2001 **NTSB Report Number:** MAB-05-01, adopted on 9/29/2005

- **Title:** Marine Accident Report: Capsizing of U.S. Small Passenger Vessel *Taki-Tooo*, Tillamook Bay Inlet, Oregon, June 14, 2003 **NTSB Report Number:** MAR-05-02,

adopted on 6/28/2005

- **Title:** Allision of Staten Island Ferry *Andrew J. Barberi*, St. George, Staten Island, New York, October 15, 2003 **NTSB Report Number:** MAR-05-01, adopted on 3/8/2005

- **Title:** Highway/Marine Accident Report: U.S. Towboat *Robert Y. Love* Allision With Interstate 40 Highway Bridge Near Webbers Falls, Oklahoma May 26, 2002 **NTSB Report Number:** HAR-04-05, adopted on 8/31/2004

- **Title:** Marine Accident Brief: Engineroom Fire on the U.S. Passenger Vessel *Columbia* in Wrangell Narrows Near Wrangell, Alaska, May 28, 2003 **NTSB Report Number:** MAB-04-02, adopted on 4/19/2004

- **Title:** Grounding and Sinking of U.S. Passenger Vessel *Safari Spirit*, Kisameet Bay off Fisher Channel, about 20 miles Southeast of the Towns of Bella Bella and Shearwater, Denny Island, British Columbia, Canada on May 8, 2003 **NTSB Report Number:** MAB-04-01, adopted on 4/22/2004

- **Title:** Sinking of the U.S. Small Passenger Vessel *Panther* Near Everglades City, Florida, December 30, 2002 **NTSB Report Number:** MAR-04-01, adopted on 3/9/2004

- **Title:** Collision Between the U.S. Coast Guard Patrol Boat *CG242513* and the U.S. Small Passenger Vessel *Bayside Blaster*, Biscayne Bay, Florida, January 12, 2002 **NTSB Report Number:** MAR-02-05, adopted on 12/17/2002

- **Title:** Grounding of the Small Passenger Vessel *Finest* at Sandy Hook, New Jersey, January 4, 2001. **NTSB Report Number:** MAR-02-03, adopted on 9/17/2002

- **Title:** Fire On Board the Small Commuter Vessel *Seastreak New York* at Sandy Hook, New Jersey, September 28, 2001. **NTSB Report Number:** MAR-02-04, adopted on 9/17/2002

- **Title:** Marine Accident Report: Fire on Board the Small Passenger Vessel *Port Imperial Manhattan*, Hudson River, New York City, New York, November 17, 2000 **NTSB Report Number:** MAR-02-02, adopted on 6/11/2002

- **Title:** Marine Accident Report: Sinking of the Amphibious Passenger Vessel *Miss Majestic*, Lake Hamilton Near Hot Springs, Arkansas, May 1, 1999 **NTSB Report Number:** MAR-02-01, adopted on 4/2/2002

- **Title:** Marine Accident Report: Fire On Board the U.S. Passenger Ferry *Columbia*, Chatham Strait near Juneau, Alaska, June 6, 2000 **NTSB Report Number:** MAR-01-02, adopted on 9/18/2001

- **Title:** Marine Accident Brief Report: Fire on Board the Netherlands-Registered Passenger Ship *Nieuw Amsterdam* at Glacier Bay, Alaska, May 23, 2000 **NTSB Report Number:** MBR-01-01, adopted on 7/24/2001

- **Title:** Marine Accident Brief: Collision of U.S. Towboat *Christine Cenac*, U.S. Tank Barge *CTCO 211*, and U.S. Towboat *American Heritage*, Lower Mississippi River near Donaldsonville, Louisiana, January 28, 1998 **NTSB Report Number:** MAB-01-03, adopted on 8/21/2001

- **Title:** Marine Accident Brief: Collision of Liberian Containership *Columbus Canada* and U.S. Fishing Vessel *Black Sheep*, Gulf of Mexico near Galveston, Texas, December 21, 1998 **NTSB Report Number:** MAB-01-04, adopted on 8/22/2001

- **Title:** Marine Accident Brief: Sinking of the U.S. fishing vessel *Miss Penelope*, South of Montauk, New York, January 28, 1998 **NTSB Report Number:** MAB-01-02, adopted on 8/3/2001

- **Title:** Marine Accident Report: Fire On Board Liberian Passenger Ship *Ecstasy*, Miami, Florida, July 20, 1998 **NTSB Report Number:** MAR-01-01, adopted on 5/1/2001

- **Title:** Marine Accident Brief: Collision of Two Recreational Motorboats on the St. Croix River near Bayport, Minnesota, July 3, 1999 **NTSB Report Number:** MAB-01-01, adopted on 5/9/2001

- **Title:** Marine Accident Report: Ramming of the Eads Bridge by Barges in Tow of the M/V *Anne Holly* with Subsequent Ramming and Near Breakaway of the *President Casino on the Admiral*, St. Louis Harbor, Missouri, April 4, 1998 **NTSB Report Number:** MAR-00-01, adopted on 9/8/2000

Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

**Interrogatory No. 21**

Identify each and every document retained by you related to your employment with the NTSB, including, but not limited to, personnel, accident, mission, and project-related documents.

**Plaintiff's Answer to Interrogatory No. 21:** Plaintiff objects to this Request on the grounds that it is overbroad, unduly vague and calls for information that is protected by the attorney-client privilege and/or work product doctrine and that was prepared in anticipation of litigation, and is burdensome. Subject to and without waiving this objection, Plaintiff states see her initial disclosures provided to Defendant's on April 5, 2007 and responses to Defendant's

first set of requests for production of documents. Plaintiff reserves the right to modify, amend or supplement her response to this Interrogatory accordingly.

Respectfully Submitted,
By Counsel

/s/ Brian M. Lowinger

R. Scott OswaldBrian M. LowingerThe Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
blowinger@employmentlawgroup.net
*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 19, 2007, the foregoing Responses to Defendant's First Set of Interrogatories was served electronically upon the following attorney of record and by United States Mail:

Meredyth D. Cohen, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L St., N.W., Room 12016
Washington, D.C. 20530
Phone: (202) 353-7978
Fax: (202) 514-8624
meredyth.cohen@usdoj.gov

/s/ Brian M. Lowinger
Brian M. Lowinger

VERIFICATION

I, Marjorie Murtagh Cooke, declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge, information and belief.

Marjorie Murtagh Cooke