# EXHIBIT NO. 1

ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
NOV 14 2006
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No. 06-748C** → By leave of the Judge |
| | ) **Judge Thomas C. Wheeler** |
| **THE UNITED STATES OF AMERICA,** | ) |
| **Defendant.** | ) |

**FIRST AMENDED COMPLAINT**

1. This action arises out of Defendant the United States of America's agency, the National Transportation Safety Board's ("NTSB"), unlawful employment actions against Plaintiff Marjorie Murtagh Cooke ("Cooke"). Specifically, Cooke alleges that the NTSB failed to justly compensate her in violation of the Equal Pay Act (EPA), as amended 29 U.S.C. § 206(d) *et seq*., when it paid other similarly situated NTSB male directors larger salaries and compensation than Cooke for similar work performed.

**Parties**

2. Plaintiff Cooke is resident of the city of Clifton, County of Fairfax, in the State of Virginia.

3. Defendant is the United States of America, in the persons of the NTSB, and NTSB Chairman Mark Rosenker ("Rosenker"). Rosenker is the Chairman of the NTSB and is the delegated administrator of the NTSB and is responsible for the lawful administration of the NTSB.

## Jurisdiction

4. This Honorable Court has jurisdiction over the claim presented herein pursuant to 28 U.S.C. § 1346, 28 U.S.C. § 1491, and 29 U.S.C. § 216(b).

## Factual Allegations

5. In 1994, Cooke was the Chief of the Marine Division, a unit under the NTSB's Office of Surface Transportation Safety.

6. Beginning in 1997, and ending in 1998, the NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS").

7. Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status.

8. Each surface office had similar responsibilities, with the exception of OMS, which had two additional responsibilities: conducting accident investigations involving military and commercial vessels, and conducting international accident investigations. The latter was similar to the additional responsibility handled by the Office of Aviation Safety. The Office of Aviation Safety had an additional senior level (SL) position to handle international investigations.

9. In 1997, as the result of a restructuring, Cooke was named the Director of OMS.

10. Soon after the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"). Bob Chipkevich ("Chipkevich") became the Director of ORPH.

11. In 2000, when the NTSB was reviewing an available SES slot, the Managing Director, Dan Campbell ("Campbell") suggested to then Agency Chairman, James Hall ("Hall") that Chipkevich be given the SES slot.

12. Campbell suggested that Chipkevich be given the SES slot because Chipkevich had supposedly the most seniority of the three directors and because ORPH was the most complex of the three offices.

13. Hall agreed with Campbell's suggestion, and Chipkevich, the Director of ORPH, applied, interviewed, and was awarded SES status.

14. In early 2003, the NTSB was once again reviewing an available SES slot. The Agency's leadership, then Chairman Ellen Engleman-Conners ("Conners") and Campbell assigned this SES slot to Joe Osterman ("Osterman"), the Director of OHS.

15. After Osterman was awarded the SES slot, Cooke became the only Director of the three safety offices without SES status.

16. Ostensibly because Cooke's Director Position did not have SES status, Cooke was paid significantly less than her male counterparts, John Clark ("Clark"), who was the new Director of OAS, Osterman and Chipkevich.

17. Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872, and Chipkevich received a salary of $142,022, Cooke received a salary of $121,583.

18. In addition, in 2004, while Clark received a salary of $142,022 Osterman received a salary of $140,797 and Chipkevich received a salary of $142,022, Cooke received a salary of $126,963.

19. Ostensibly because Cooke's Director Position did not have SES status, Cooke was granted lower monetary awards than her male counterparts, Clark, Osterman and Chipkevich.

20. Specifically, in 2003, while Clark received an award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Cooke received an award of $5,400.

21. In addition, in 2004, while Clark received an award of $17,000, Osterman received an award of $9,500 and Chipkevich received an award of $16,000, Cooke received an award of $3,400.

22. Cooke, in her position as Director of OMS, performed work substantially equal to Clark in his position as Director of OAS, Chipkevich in his position as Director of OPHRMS and Osterman in his position as Director of OHS.

23. Cooke performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of OPHRMS and Osterman performed his work as Director of OHS.

24. Due to this inequality, in April of 2004, Cooke met with Conners and informed Conners that she was the only Director of the four modal investigation offices without SES status.

25. Further, Cooke informed Conners that the other three modal safety directors, all of whom are male, earned salaries much higher than hers because she lacked SES status.

26. Cooke explained to Conners that her concern was not the SES status *per se*, but rather she wanted equitable pay for similar work.

27. Conners responded by telling Cooke that if the NTSB acquired another SES slot, the slot would be assigned to the Director of OMS. However, Conners also stated that when the OMS Director position received SES status, the position would be advertised and that Cooke would have to apply and compete for the position.

28. Cooke suggested to Conners that she be allowed to receive overtime pay as one option for reducing the gap between her salary and that of the three male modal safety Directors.

29. Conners replied that she was not aware if that was a possible solution, but told Cooke she would look into it.

30. After the meeting Cooke met with Lisa Love ("Love") from Human Resources. Love confirmed for Cooke that she could receive overtime pay; however she needed approval from Conners, the NTSB Chairman.

31. After meeting with Love, Cooke made several attempts to meet with Conners to seek her approval for overtime pay.

32. Despite Cooke's efforts Conners refused to meet with her to discuss this subject.

33. Thus, Cooke continued to work as Director of OMS, doing substantially similar work to Clark, Osterman and Chipkevich, the other three Directors, and making significantly less money.

34. In July, 2004, the NTSB advertised the OMS Director position with SES status.

35. As instructed by Conners, Cooke applied for this position, but the advertisement was cancelled and she was not granted an interview.

36. In early 2005, the OMS Director position was re-advertised as having SES status.

37. Cooke applied for this position, but she was not granted an interview.

38. In response to years of unequal pay for similar work to that of her male counterparts, and not even being granted an interview for a position she held for eight years, Cooke filed a sexual discrimination complaint with the NTSB EEO Director on February 7, 2005, using the established NTSB protocol for lodging formal complaints of Equal Pay Act violations.

39. In her complaint, Cooke alleged that she received unequal pay as the Director of OMS because of her gender.

40. Cooke's discrimination complaint was investigated from August of 2005 through December of 2005.

41. In May, 2005, the new Managing Director, Joe Osterman ("Osterman"), notified Cooke of her non-selection for the Director of OMS position. Cooke noted that she had not been paid for the position during her tenure as Director of OMS. Osterman then offered her an SL position to compensate if she would submit bulleted responsibilities for a position description.

42. NTSB has used SL positions in the past to compensate senior level employees for pay over the GS-15 salary level.

43. In response, Cooke submitted the requested document. Osterman subsequently informed her that Conners and Campbell would not permit him to use an SL position for her.

44. In June, 2005, the NTSB transferred Cooke to the Office of Safety Recommendations and Communication.

45. In July, 2006, Cooke retired from the NTSB.

**Count I**
**The Equal Pay Act (EPA)**
**29 U.S.C. § 206(d)**
**Unequal Pay**

46. Plaintiff incorporates the allegations in paragraphs 1 through 46 as though alleged herein.

47. Plaintiff is a an "employee" as the terms are defined at 29 U.S.C. § 203(e)(2)(ii) and Defendant the United States of America in the person of the NTSB is an "employer" as the term is defined at 29 U.S.C. § 203(d).

48. Defendant failed and/or refused to compensate Plaintiff comparable to employees who were of the opposite sex, worked in the same "establishment" as Plaintiff, performed work that was equal to the work performed by Plaintiff, and retained positions that required equal skill, effort, responsibility and was performed under similar conditions as compared to Plaintiff.

49. As the direct and proximate result of Defendant's violation of 29 U.S.C. § 206(d), Plaintiff was caused to suffer damages.

50. For violations of 29 U.S.C. § 206(d), Plaintiff demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

a. Reinstatement;
b. Promotion;
c. Economic damages including front and back pay;
d. Reasonable attorney's fees and costs;
e. Liquidated Damages; and
f. Any other relief that this Court deems just and equitable.

**Prayer for Relief**

WHEREFORE, Cooke prays this Honorable Court for Judgment against the Defendant, in the amount of economic damages and compensatory damages to be determined at trial, plus attorneys' fees, costs of this action, equitable relief (including upgrading Plaintiff's employment status) and any other relief this Honorable Court deems just and proper to award.

Marjorie Murtagh Cooke
By Counsel

Date: November 9, 2006

R. Scott Oswald
Employment Law Group, P.C.
888 17th Street, N.W.
Suite 900
Washington, D.C. 20006-3307
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff*