# EXHIBIT NO. 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **MARJORIE MURTAGH COOKE,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No. 06-748C** |
| | ) **Judge Thomas C. Wheeler** |
| **THE UNITED STATES OF AMERICA,** | ) |
| **Defendant.** | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Marjorie Murtagh Cooke ("Plaintiff" or "Mrs. Murtagh Cooke") files this motion for summary judgment against Defendant, United States of America, in the persons of the National Transportation Safety Board ("NTSB") and NTSB Chairman Mark Rosenker ("Rosenker") (collectively, "Defendant"). As a matter of law, Defendant has violated the Equal Pay Act, 29 U.S.C. § 206 ("EPA") with respect to Mrs. Murtagh Cooke. Defendant has raised no affirmative defenses. Therefore, Mrs. Murtagh Cooke requests this Court award Mrs. Murtagh Cooke summary judgment on all issues in the case and order a damages hearing before the Court.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................3

INTRODUCTION........................................4

FACTUAL BACKGROUND........................................5

STANDARD OF REVIEW........................................15

ARGUMENT........................................16

I. MRS. MURTAGH COOKE HAS ESTABLISHED A PRIMA FACIE CASE UNDER THE EQUAL PAY ACT AS A MATTER OF LAW........................................16

CONCLUSION........................................19

REQUEST FOR ORAL ARGUMENT........................................20

# TABLE OF AUTHORITIES

## CASES

*Allison v. U.S.*, 39 Fed. Cl. 471 (1997) ........ 15, 16
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........ 15, 16
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........ 15, 16
*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974) ........ 16
*County of Wash. v. Gunther*, 452 U.S. 161 (1981) ........ 16
*Ellison v. United States*, 25 Cl. Ct. 481 (1992) ........ 17
*Goodrich v. Int'l Bhd. of Elec. Workers*, 815 F.2d 1519 (D.C. Cir.1987) ........ 17
*Hauschild v. U.S.*, 53 Fed. Cl. 134 (2002) ........ 15, 16
*Lissak v. United States*, 49 Fed. Cl. 281 (2001) ........ 16
*Mansfield v. U.S.*, 71 Fed. Cl. 687 (2006) ........ 16
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........ 15
*Molden v. United States*, 11 Cl. Ct. 604 (1987) ........ 16
*Pearce v. Wichita County, etc., Hosp. Bd.*, 590 F.2d 128 (5th Cir.1979) ........ 17
*Raymond v. United States*, 31 Fed. Cl. 514 (1994) ........ 16
*Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560 (Fed.Cir.1987) ........ 15

## RULES

Fed.R.Civ.P. 56(e) ........ 15
RCFC 56(c) ........ 15

## STATUTES

29 C.F.R. § 1620.14(a) ........ 17
29 C.F.R. § 1620.15(a) (2001) ........ 17
29 U.S.C. § 206 ........ 16
29 U.S.C. § 206(d) ........ 14
29 U.S.C. § 215(a)(3) ........ 14
49 C.F.R. § 800.2 ........ 18
49 C.F.R. § 800.25 ........ 18

## INTRODUCTION

Mrs. Murtagh Cooke filed this action alleging that Defendant violated the EPA.

Plaintiff has established as a matter of law that all of her comparators, all men, received substantially higher compensation than her over a period of several years. All of her comparators possessed equal job duties, and their work required virtually identical skills, effort and responsibility under virtually identical working conditions. Defendant has raised no affirmative defenses.

Because there are no remaining issues of fact regarding Mrs. Murtagh Cooke's prima facie case under the EPA, Mrs. Murtagh Cooke is entitled to judgment as a matter of law. Therefore, for the reasons discussed below, Plaintiff's Motion for Summary Judgment should be granted in its entirety and this Court should order a hearing on damages.

## FACTUAL BACKGROUND

Defendant is the United States of America, in the persons of the NTSB and Rosenker. *See* Plaintiff's Proposed Findings of Uncontroverted Facts ("PFUF") at ¶ 1.

In 1994, Plaintiff was the Chief of the Marine Division, a unit under the NTSB's Office of Surface Transportation Safety. *See id*. at ¶ 2. Beginning in 1997, and ending in 1998, the NTSB's Office of Surface Transportation Safety was divided into four separate offices: Highway Safety ("OHS"); Railroad Safety ("ORS"); Marine Safety ("OMS"); and Pipeline and Hazardous Materials Safety ("OPHMS"). *See id*. at ¶ 3.

Each surface office had a director who was paid at a GS-15 level and who reported to the Managing Director. The Managing Director had Senior Executive Service ("SES") status. The Director of the Office of Aviation Safety ("OAS"), Dr. B. Loeb, also had SES status. The Director and Deputy Director of the Office of Surface Transportation Safety also had SES status. *See id*. at ¶ 4. The core functions required for the Director of OMS, OHS, OAS and ORPH were all the same. *See id*. at ¶ 5.

Each modal office director was responsible for ordering an investigation into the facts, conditions, and circumstances of accidents that the Board has the authority to investigate. *See id*. at ¶ 6. Each modal office director was responsible to disclose factual information pertinent to all accidents or incidents as provided for in part 801 of 49 CFR Ch. VIII. *See id*. at ¶ 7. Each modal office director was responsible to determine the probable causes of accidents. Id. at ¶ 8. Each modal office director was responsible to investigate accidents as provided under Sec. 304(a) of the Independent Safety Board Act of 1974 as amended (49 U.S.C. 1131(a)). Id. at ¶ 9.

In 1997, as the result of a restructuring, Plaintiff was named the Director of OMS. *See id*. at ¶ 10. In 1999 the Agency requested OPM authorize SES slots for all the Modal Office Directors. *See id*. at ¶ 11. After the restructuring, ORS and OPHMS merged to become the Office of Railroad, Pipeline and Hazardous Materials Safety ("ORPH"). Bob Chipkevich ("Chipkevich") became the Director of ORPH. *See id*. at ¶ 12. In early 2003, the NTSB was once again reviewing an available SES slot. This SES slot went to Joe Osterman ("Osterman"), the Director of OHS. After Osterman was awarded the SES slot, Plaintiff became the only Director of the four modal safety offices without SES status. *See id*. at ¶ 13.

Plaintiff was paid significantly less than her male counterparts, John Clark ("Clark"), who was the new Director of OAS, Osterman and Chipkevich. *See id*. at ¶ 14.

Specifically, in 2003, while Clark received a salary of $142,022, Osterman received a salary of $136,872 and Chipkevich received a salary of $142,022, Plaintiff received a salary of $121,583. Currently John Spencer ("Spencer"), the new OMS Director, who replaced Plaintiff, is paid at the SES level for performing equal work to that of Plaintiff. *See id*. at ¶ 15.

In addition, in 2004, while Clark received a salary of $142,022, Osterman received a salary of $140,797 and Chipkevich received a salary of $142,022, Plaintiff received a salary of $126,963. *See id*. at ¶ 16.

Plaintiff received lower monetary awards than her male counterparts, Clark, Osterman and Chipkevich. Specifically, in 2003, while Clark received an award of $16,080, Osterman received an award of $5,900, and Chipkevich received an award of $16,056, Plaintiff received an award of $5,400. And in 2004, while Clark received an award of $17, 000, Osterman

received an award of $9,500, and Chipkevich received an award of $16,000, Plaintiff received an award of $3,400. *See id*. at ¶ 18.[1]

As the Director of the Office of Highway Safety, Osterman had virtually the same duties and responsibilities as Plaintiff when she was the director of OMS. *See id*. at ¶ 19.

Osterman's position at OHS and Plaintiff's position at OMS had virtually the same job description as follows:

- Planned, managed and evaluated the work of the OHS.
- Exercised important policy making and policy determining decision that impacted highway safety at international organizations, federal agencies, and international and domestic industries.
- Provided for overall direction and technical accuracy of the investigation and reporting process for major highway safety accidents.
- Developed overall requirements and schedules to accomplish the highway safety program.
- Reviewed, approved and promulgated schedules and milestones for assigned activities.
- Reviewed, evaluated and approved, disapproved or modified requests for changes to milestones in schedules.
- Developed overall program review documentation and provided status reports on a regular basis.
- Determined the level of response and resources allocation for the NTSB highway safety program.

---

[1] Mrs. Murtagh Cooke is awaiting Defendant's disclosure of 2005 NTSB salary and monetary award compensation, which she expects will show similar discrepancies. *See id*. at ¶ 17.

- Notified NTSB's chairman and managing director, federal and international agencies and managing director of the accident.
- Notified foreign embassies and/or flag representatives as appropriate.
- Coordinated the allocation of staff resources with other office directors involved in the investigation.
- Resolved differences between modal and support staff views regarding accident investigation, scope, required resources and analysis.
- Ensured through the completed and comprehensive review of the draft report that essential issues were adequately addressed.
- Ensured reviewed of the draft report that all findings and recommendations are supported by analysis and that the board and that the draft sent forward is of the best quality.
- Ensured the proper presentation of the draft report before the board at board hearings.
- Reviewed work product of other modal and support offices.
- Ensured that the quality is commensurate, the quality of work product of other modal and support offices is commensurate with NTSB standards to promote success of NTSB highway safety program, including investigations, reports, safety recommendations and highway safety advocacy.
- Established and maintained liaison with international and domestic industry, safety groups, labor organizations, associations, societies, Congress, and Federal regulators.

- Provided authoritative advice and expertise to these groups in the development of industry standards and regulations and new applications of existing technology.
- Provided Congressional testimony.
- Participated in international meetings on highway safety issues as a representative of the NTSB.
- Developed and justified estimates for staff resources requirements including personnel funding, equipment, and office, space.
- Justified and defended budgets on all levels of management.
- Implemented concepts to get results through people and make selections assign work, train and reward employees.
- Corrected poor performance in a manner that maximizes the use of staff skills and achieving organizational skills.
- Monitored work status through formal and informal means and procedures.
- Ensured appropriate results are achieved and that OHS's policies and priorities are effectively understood and communicated.
- Responsible for the creation and maintenance of an atmosphere that promotes positive human relations and open communications between employees and their supervisors.
- Ensure that employees are given real and continuing opportunity to influence their work environment and ensure that employees are given a real and continuing opportunity to be able to participate in discussions related to methods of work accomplishments.

- Ensured reasonable equity within OHS of performance standards and rating techniques developed by subordinates and ensure equity in the subordinates' assessment of the adequacy of contractor capabilities and contractor completed work.
- Evaluate subordinate supervisors and senior nonsupervisory managers and serve as the reviewing official in evaluation of nonsupervisory employees rated by subordinate supervisors.
- Evaluated program accomplishments and their overall effectiveness.
- Identified program problem areas and solicit from the division chiefs and senior technical staff their recommendations concerning alternative courses or corrective actions as needed.
- Worked closely with human resources in approving their recruitment, placement and retention of a high quality OHS work force.
- Ensured that crucial training courses needed to keep pace with today's technological improvements in highway transportation safety are provided to staff for their technical and operational currency.
- Ensured crucial training sessions needed to keep pace with today's technological improvements in highway transportation safety are provided to the staff for their technical and operational currency.
- Provide effective management training to maintain a highway motivated and cohesive force.
- Relate equal employment opportunity concepts to overall responsibilities.
- Support affirmative action plan while performing assigned responsibilities.
- Available 24 hours a day 7 days a week.

- Support board members, agency initiatives, and meetings with regard to agency staff awards.

*See id*. at ¶ 20.

The skills required for the Director of OAS, OMS, ORPH and OHS were all virtually identical. Those skills included, essentially, technical expertise in their transportation mode; knowledge of, and expertise in, accident investigation processes and procedures from the investigation stage through report completion, leadership and supervisory skills; logic and analytical process skills; a fundamental knowledge of their respective modal industries; the ability to communicate both written and orally and to coordinate and collaborate with other professionals both internally within the NTSB and externally as part of the investigations or other advocacy work for each respective office. *See id*. at ¶ 21.

The efforts required for the Director of OAS, OMS, ORPH and OHS were all virtually identical. Those efforts included: effectively managing large volumes of information related to accident investigation; assessing and evaluating issues; evaluating resources necessary and available; juggling multiple priorities; dealing with contingencies and uniqueness of each investigation; decision making; supervising and evaluating staff both in the office and in the field; providing support and essential information for internal personnel including Board members, the Managing Director and other executives and managerial staff, supervisors, investigators, report writers, and administrative personnel and external personnel including the transportation mode regulator (e.g. FAA and USCG), party representatives (e.g. Cruise ship owners) Congressional staff, and, in the case of international/foreign investigations, State Department and foreign government officials, and in the case of public/non public investigations, Department of Defense officials; developing, establishing, and assuring

fulfillment through supervision and oversight of multiple processes for accident investigation from accident/incident notification through report development; reviewing, assessing, and writing justifications for the agency's plans, goals and objectives to fulfill its mission, communication of results, collaboration with internal and external professionals; complying with all rules, regulations, and guidelines that apply to human and monetary resource management; and conducting business on a year round 24 hour/ 7 day schedule. *See id.* at ¶ 22.

The responsibilities required for the Director of OAS, OMS, ORPH and OHS were all virtually identical. Those skills include but are not limited to managing a major modal program for the agency which included: conducting accident investigations to determine their cause and preparing justifications for safety recommendations to prevent accident repetition in the future; overseeing the analysis, development and preparation of detailed reports and proposing probable cause determinations of major and field accidents and incidents; preparing accident investigation reports in a timely manner; preparing Special Investigations, responses to proposed rulemakings, responses to requests for technical support, and Public Hearings. *See id*. at ¶ 23.

Additionally, the list of responsibilities included management responsibilities related to internal and external communications (e.g. keeping the Chairman, other Board members, the Managing Director, other agency executives and managers, party representatives and Congressional members and staff, informed either verbally and/or in writing.) human resources (e.g. managing modal professionals, recruiting and hiring personnel, supervising, training and tracking career goals and progression, developing performance standards and evaluating personnel; tracking leave and overtime); budget management (e.g. exercising

budget authority, using funds for training, travel, overtime, and on-scene investigation support); project tracking and quality control of all Modal Office products. *See id*.

Plaintiff performed her work as Director of OMS under similar conditions as Clark performed his work as Director of OAS, Chipkevich performed his work as Director of ORPH and Osterman performed his work as Director of OHS. Each worked primarily in an office environment using electronic devices, computers and telephones for communication. The critical nature of each Director's work requires him/her to be available 24 hours a day/ seven days a week (24/7) in case of an accident that requires an investigation. Each Office Director was expected to deal effectively with the pressure of accident launches, the on-scene investigation phase including coordination and collaboration with internal and external staff, subsequent analysis and report preparation stage, preparation of written and oral communications and presentation to the Board and to the public. Each director reported directly to the Managing Director, their second level supervisor was the Chairman. Each of the Office Directors was relatively independent to do their work. *See id*. at ¶ 24.

In July 2004, and in early 2005, NTSB advertised Plaintiff's position for SES status. Each time, Plaintiff submitted an application for the position. In May 2005, NTSB's Managing Director notified Plaintiff of her non-selection for the same position that she performed since 1997. Shortly thereafter, in June 2005, NTSB transferred Plaintiff to the Office of Safety Recommendation and Communication. Plaintiff later retired. *See id*. at ¶ 26.

On April 28, 2006, Plaintiff filed a complaint in the United States District Court for the District of Columbia against Defendant, asserting claims for violations of the Equal Pay Act, 29 U.S.C. § 206(d) and the retaliation provision contained in the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). *See id*. at ¶ 27. On October 26, 2006, the District Court

transferred the Equal Pay Act claim to this Court. On November 9, 2006, this Court accepted for filing the case as transferred from the District Court. *See id*. at ¶ 28.

On January 8, 2007, Defendant filed an Answer to the Complaint, which contained no affirmative defenses. *See id*. at ¶ 29.

## STANDARD OF REVIEW

The standard of review on a motion for summary judgment was set forth by this Court in *Allison v. U.S.*, 39 Fed. Cl. 471 (1997):

> Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of establishing that there are no genuine material issues in dispute and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-movant must raise " 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).
>
> To meet its burden, "[t]he non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit from one with knowledge of specific facts, what specific evidence could be offered at trial." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562-63 (Fed.Cir.1987). "If the evidence [of the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted).

*Allison*, 39 Fed. Cl. at 474-75. *See also*, *Hauschild v. U.S.*, 53 Fed. Cl. 134, 137 (2002) ("The summary judgment 'standard mirrors the standard for a directed verdict ..., which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.", quoting, *Anderson, 477 U.S.* at 250, 106 S.Ct. 2505).

## ARGUMENT

### I. MRS. MURTAGH COOKE HAS ESTABLISHED A PRIMA FACIE CASE UNDER THE EQUAL PAY ACT AS A MATTER OF LAW

The Equal Pay Act, 29 U.S.C. § 206 ("EPA") provides as follows:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1).

Mrs. Murtagh Cooke establishes a prima facie case under the EPA by showing that Defendant paid different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Mansfield v. U.S.*, 71 Fed. Cl. 687, 692-93 (2006), quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). See also, *Hauschild*, 53 Fed. Cl. at 138; *Lissak v. United States*, 49 Fed. Cl. 281, 284 (2001); Alison, 39 Fed. Cl. at 475; *Raymond v. United States*, 31 Fed. Cl. 514, 518 (1994); *Molden v. United States*, 11 Cl. Ct. 604, 610 (1987).[2]

---

[2] Ordinarily, once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show the application of one of four affirmative defenses under 29 U.S.C. § 206(d)(1). *See Hauschild v. U.S.*, 53 Fed. Cl. 134, 138 (2002), citing *Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. 2223, *County of Wash. v. Gunther*, 452 U.S. 161, 170, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); *Mansfield*, 71 Fed. Cl. at 693; *Alison*, 39 Fed. Cl. at 475-76. Here, however, Defendant raised no affirmative defenses and acknowledged in its discovery responses having waived them. *See* PFUF at ¶ 29. Thus, the only relevant inquiry on this motion is whether Mrs. Murtagh Cooke has established a prima facie case under the EPA as a matter of law.

To establish a prima facie case, it is not necessary to prove that the work of plaintiff's comparator(s) is identical in every aspect, but only that it requires equal skill, effort, and responsibility, and that it is performed under similar working conditions. *See Corning Glass Works*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.E. 2d 1 (1974); *Hauthschild*, 53 Fed. Cl. at 138 ("In the context of the Equal Pay Act, "equal" work does not mean "identical" work. 29 C.F.R. § 1620.14(a). 'Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable.' *Ellison v. United States*, 25 Cl. Ct. 481, 487 (1992)").

There is no dispute here that Mrs. Murtagh Cooke was paid less than every other modal director at NTSB, Clark, Osterman and Chipkevich during the relevant time period – all of whom are male, and all of whom are comparators in this case. *See* PFUF at ¶¶ 15-17. In fact, on average, Mrs. Murtagh Cooke's salary was approximately $14,000 lower per year than any other comparator, and her monetary awards were also lower than any other comparator. *See id*.

"The only legal issue for purposes of plaintiff's motion, therefore, is whether plaintiff and [her comparators] performed equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions. *The focus of this inquiry is on the primary duties of each job*." *Hauthschild*, 53 Fed. Cl. at 138 (emphasis added), citing 29 C.F.R. § 1620.15(a) (2001), *Goodrich v. Int'l Bhd. of Elec. Workers,* 815 F.2d 1519, 1524 (D.C. Cir.1987), *Pearce v. Wichita County, etc., Hosp. Bd.*, 590 F.2d 128, 133 (5th Cir.1979) ("[T]he controlling factor under the Equal Pay Act is job content - the actual duties that the respective employees are called upon to perform.").

In this case, as described in detail above, Mrs. Murtagh Cooke's duties were not just similar – they were *completely identical* – to the duties of her comparators. *See* PFUF at ¶¶ 18-19. In fact, under the Code of Federal Regulations implementing the modal director positions for NTSB, the positions held by Ms. Murtagh Cooke and her comparators (Clark, Osterman and Chipkevich) are all described as having virtually identical job duties and descriptions. *See* 49 C.F.R. § 800.2; 49 C.F.R. § 800.25.

Further, As Mr. Osterman acknowledged in his deposition, his job duties exactly matched, with almost no exception, Mrs. Murtagh Cooke's job duties as modal directors. *See id*. As Defendant's own witnesses, including the 30(b)(6) deponent and Ellen Engleman Conners, former Chairman of the NTSB, who was ultimately responsible for all modal directors testified, the skills, effort, and responsibility required of all of Mrs. Murtagh Cooke's comparators were virtually identical, and their work was performed under virtually identical working conditions. *See* PFUF at ¶¶ 20-24.[3]

Therefore, Mrs. Murtagh Cooke has established a prima facie case that Defendant has violated the EPA as a matter of law.

[3] In fact, when asked if the duties of the modal office directors are identical, and require the same skill, effort and responsibility under the same working conditions, Ms. Conners responded under oath stating "I agree". *See* PFUF at ¶ 25.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment should be GRANTED and this Court should order a hearing on damages.

Marjorie Murtagh Cooke
By Counsel

/s/ Brian Lowinger

R. Scott Oswald
Brian M. Lowinger
The Employment Law Group, PC
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
*Counsel for Plaintiff Marjorie Murtagh Cooke*

**REQUEST FOR ORAL ARGUMENT**

Mrs. Murtagh Cooke requests oral argument prior to the Court's ruling on her motion.

/s/ Brian Lowinger
Brian Lowinger