IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARJORIE MURTAGH COOKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-748C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
RELATED TO SENIOR EXECUTIVE SERVICE POSITIONS, AND
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*
TO INTRODUCE EVIDENCE OF INTENT AND ANIMUS TOWARD PLAINTIFF

On August 6, 2008, plaintiff, Marjorie Murtagh Cooke, filed a motion in limine to introduce evidence of intent and animus toward plaintiff. Defendant, the United States, respectfully files this opposition to that motion in limine and moves to exclude any evidence related to either: (a) the process by which the agency selected certain positions for inclusion in the Senior Executive Service ("SES"); or (b) plaintiff's non-selection for an SES position. Indeed, as a matter of law, a General Schedule ("GS") employee cannot base an Equal Pay Act ("EPA") complaint upon SES comparators. For that reason, and because Ms. Cooke has stipulated that the SES is fundamentally different from the GS, her putative evidence regarding the SES is irrelevant, is prejudicial, and should not be admitted.

## ARGUMENT

### I. Fundamental, Legal Differences Between The SES And The GS Preclude Ms. Cooke From Presenting Evidence At Trial Concerning SES Positions

Federal Rule of Evidence 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the act more probable or less probable than it would be without the evidence." Fed. R. Evid. 401

(emphasis added). Because Ms. Cooke held a GS position – and never held an SES position – any evidence that Ms. Cooke proffers relating to SES positions is irrelevant and should be excluded. See Magnivision, Inc. v. Bonneau Co., 115 F.3d 956, 961 (Fed. Cir. 1997) ("As provided in Rules 401-403, admissible evidence must be relevant in that it must tend to make a consequential fact more or less probable.").

Ms. Cooke has stipulated that, during the relevant period covered by her complaint, she held only a GS position. See Joint Stipulations of Fact ("JSOF") at ¶¶ 17, 189. Accordingly, Ms. Cooke may only present evidence regarding so-called comparators who held GS positions. For this Court to allow otherwise would be

> to compar[e] apples and oranges: SES and non-SES employees are two very different pools of employees and, from a management point of view, constitute very different types of resources for the staffing and efficient operation of the agency. Moreover, SES members are covered by different personnel regulations and policies than non-SES members. The two groups are not comparable.

Mintzmyer v. Babbitt, No. 93-07731995 WL 25342, at *15 (D.D.C. Jan. 12, 1995) (emphasis added) , aff'd, 72 F.3d 920 (D.C. Cir. 1995) (unpublished).

SES and non-SES employees are part of two, distinct employment systems. In that regard, the district court in Mintzmyer explained:

> The Senior Executive Service is an elite management classification within the federal government. The SES, established under the Civil Service Reform Act of 1978, Pub.L. No. 96-330, 94 Stat. 1036-37 (1980) (codified at 5 U.S.C. § 3131), rewards high-ranking government employees with a high pay scale and generous benefits. The SES also provides greater authority to agencies in managing their organizations including the ability to assign executives where they would be most effective in accomplishing the agency's mission . . . . Career SES members may be reassigned to other SES positions for which they qualify in order to meet the needs of the Department and to promote the efficiency of the [agency]. Career SES members may also be detailed to another SES position.

Id. at *3; see also Shenwick v. Dep't of State, 92 M.S.P.R. 289, 295 (2002) ("The legislative history of the Civil Service Reform Act of 1978 [("CSRA")] . . . reveals that Congress intended the SES to be a mobile corps of managers who may be expeditiously reassigned to meet shifting agency priorities."); Squillacote v. United States, 739 F.2d 1208, 1210 (7th Cir. 1984) (discussing various Federal pay systems, including the creation of the SES).

Thus, while there may be greater pecuniary rewards for SES members, those benefits are not without a price. In addition to the fact that – as the district court noted in Mintzmyer – an SES member may be reassigned, "the legislative history [of the CSRA] evidenced an intent that 'members of the Senior Executive Service be subject to fewer protections than non-SES members in order to add management flexibility to the top echelons of the federal government.'" Shenwick, 92 M.S.P.R. at 295 (quoting Acting Special Counsel v. Equal Employment Opportunity Commission, 5 M.S.P.R. 19, 22-23 (1981), and explaining that "Congress designed the SES for the express purpose of increasing flexibility in the staffing of the top management of government agencies").

First, for example, "in contrast to adverse actions taken against non-SES employees for failure to accept a directed reassignment, the agency is not required to demonstrate before the [Merit Systems Protection] Board that an SES employee's removal promotes the efficiency of the service in order to support its removal action." Shenwick, 92 M.S.P.R. at 296. Indeed, rather than having to "demonstrate that its decision to reassign an SES employee was a bona fide determination based on legitimate management considerations in the interest of the service in order to support its removal of an SES employee for refusing a reassignment[,]" an "agency must only prove that it removed the employee for a cause authorized by section 7543(a), one of which

is failure to accept a directed reassignment." Id. (holding that "the burden of proof appropriate to general-schedule employees removed for failure to accept a directed reassignment . . . is not appropriate to SES members"). Second, "SES members are not entitled to appeals from performance-based removals from the SES, but, instead, are afforded a hearing pursuant to 5 U.S.C. § 3592(a) . . . ." Acting Special Counsel, 5 M.S.P.R. at 22. There are number of other drawbacks to being a member of the SES, in comparison to the GS. See Senior Executives Assoc. v. United States, 576 F. Supp. 1207, 1213 n.18 (D.D.C. 1983) (noting, e.g., that "SES employees have no right to regular step increases based upon time in grade" and that, "while their salaries may be increased based on performance, they may also be decreased based on poor performance").

In any event, as another district court has explained:

> it is important to understand the mission of the . . . SES. The comedian and film director Woody Allen is said to have remarked, "Eighty per cent of success is showing up." Not so the SES. The SES is not the next step on the career ladder for successful GS-15's. One does not merely progress GS-13, 14, 15 and SES. When an employee is promoted into the SES, he is taken into a whole other realm of responsibility and expectation.

Csicseri v. Bowsher, 862 F. Supp. 547, 569 (D.D.C. 1994) (internal citations omitted).

Given that the SES is an entirely different employment and compensation system from the GS, any testimony relating to particular SES employees is irrelevant and should be excluded. See EEOC v. Aetna Ins. Co., 616 F.2d 719, 723-26 (4th Cir. 1980) (pay differential "attributable to the existence of two distinct salary programs" permissible under the Equal Pay Act). Indeed, the Joint Stipulations of Fact in this case foreclose any argument that such testimony is relevant. For example, Ms. Cooke has stipulated both that she "has never held a career SES appointment" and that "SES-level positions, because they are at the highest level of civil service, require a

certain level of professionalism, abilities, qualifications, and skills not necessary for GS-level positions." JSOF at ¶¶ 17, 187; see also Magnivision, 115 F.3d at 961 (factual "issue . . . resolved pre-trial" renders "proffered evidence" on the same issue "irrelevant" and thus inadmissible). Accordingly, Ms. Cooke should be limited to offering testimony regarding GS comparators, of which she has identified none.

II. The Evidence Plaintiff Seeks To Admit Is Relevant Only To Her Pretext Argument

As we demonstrated above, either a GS employee cannot use an SES employee as a comparator – because, by definition, the two types of employees are materially different – or the SES constitutes a distinct employment and compensation system that is not gender-based. In either case, testimony regarding the allocation of SES positions and Ms. Cooke's non-selection for an SES position is irrelevant and, therefore, inadmissible.[1]

In her motion, however, Ms. Cooke argues that her proffered exhibits are relevant to her allegation that "[d]efendant passed up several SES slots, refused to allocate them to the Director of OMS, and instead assigned them to unnecessary positions." Pl. Mot. at 3. In Barnette v. Ridge, however, the district court – in rejecting a plaintiff's Title VII discrimination claim upon the Government's motion for summary judgment – held that a position's classification within the GS "is a decision that must be left to the [agency] to determine without micromanagement by the Court." 2004 WL 3257071, at *5 (D.D.C. 2004) (noting that "[t]he agency does not have enough assigned SES slots for all such Directors to hold that rank"), aff'd, sub nom. Barnette v. Chertoff, 453 F.3d 513, 519 (D.C. Cir. 2006).

---

[1] We hereby withdraw our hearsay objections to Plaintiff's Exhibits 0001-0004 based upon plaintiff's invocation of Fed. R. Evid. 803.

Ms. Cooke also argues that she should be permitted to "elicit witness testimony regarding the SES selection process at trial" to show than any affirmative defense "is false or pretextual." Pl. Mot. at 3. That is incorrect for the same reason that she cannot introduce evidence regarding specific SES employees. In other words, only if the Court first were to rule, as a matter of law, that an SES employee can serve as a comparator for a GS employee under the EPA, or that the SES system is not fundamentally different from the GS system, could the Court permit Ms. Cooke's pretext argument.

## CONCLUSION

For the foregoing reasons, defendant's motion in limine should be granted, and plaintiff's should be denied. In addition, we respectfully request that the Court hear oral argument on our motion prior to the start of trial.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ HAROLD D. LESTER, JR.
HAROLD D. LESTER, JR.
Assistant Director

/s/ MEREDYTH D. COHEN
MEREDYTH D. COHEN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-7978
Fax: (202) 514-8624

Of Counsel:
KATHLEEN SILBAUGH
Office of General Counsel
National Transportation Safety Board

August 12, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under that on this 12th day of August, 2008 a copy of the foregoing "DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO SENIOR EXECUTIVE SERVICE POSITIONS AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO INTRODUCE EVIDENCE OF INTENT AND ANIMUS TOWARD PLAINTIFF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ MEREDYTH D. COHEN